# EXHIBIT 3



August 20, 2021

VIA ELECTRONIC SUBMISSION

The Honorable Martin J. Walsh
Secretary
U.S. Department of Labor
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

Amy DeBisschop
Director
Division of Regulations, Legislation, and Interpretation
Wage and Hour Division
U.S. Department of Labor
Frances Perkins Building
200 Constitution Avenue, NW
Room S-3502
Washington, DC 20210

Re: Tip Regulations Under the Fair Labor Standards Act (FLSA); Partial Withdrawal, 86 Fed. Reg. 32818

Dear Secretary Walsh and Ms. DeBisschop:

The U.S. Small Business Administration's Office of Advocacy (Advocacy) submits the following comments to the Department of Labor's Wage and Hour Division (DOL) on its proposed rule, which adds restrictions to the use of the tip credit under the Fair Labor Standards Act (FLSA).[1]

Advocacy is concerned that the DOL's certification that the rule will not have a significant economic impact on a substantial number of small entities lacks an adequate factual basis. DOL

---

[1] Tip Regulations Under the Fair Labor Standards Act (FLSA); Partial Withdrawal, 86 Fed. Reg. 32818 (June 23, 2021) (hereinafter "2021 Proposed Rule").



improperly certified this proposed rule because it omitted some and underestimated other compliance costs of this rule for small employers.  Small businesses have told Advocacy that the proposed rule will be costly and burdensome to implement in their busy restaurants, hotels, nail salons and other workplaces, as it will require businesses to track their workers' tasks minute to minute to utilize the tip credit wage.  Small businesses have commented that these new restrictions for the use of the tip credit are complex and unworkable for small operations, who are already facing staff shortages and are just recovering from pandemic losses.

Advocacy recommends that DOL prepare and make available for public comment an Initial Regulatory Flexibility Analysis (IRFA) that adequately assesses the small business compliance costs from this regulation and includes consideration of significant alternatives that would accomplish the objectives of the regulation while minimizing the economic impacts to small entities.

## I.   Background

### A.  The Office of Advocacy

Congress established Advocacy under Pub. L. 94-305 to represent the views of small entities before Federal agencies and Congress. Advocacy is an independent office within the U.S. Small Business Administration (SBA); as such the views expressed by Advocacy do not necessarily reflect the views of the SBA or the Administration.  The Regulatory Flexibility Act (RFA),[2] as amended by the Small Business Regulatory Enforcement Fairness Act (SBREFA),[3] gives small entities a voice in the rulemaking process.  For all rules that are expected to have a significant economic impact on a substantial number of small entities, the RFA requires federal agencies to assess the impact of the proposed rule on small entities and to consider less burdensome alternatives.

The Small Business Jobs Act of 2010 requires agencies to give every appropriate consideration to comments provided by Advocacy.[4] The agency must include, in any explanation or discussion accompanying the final rule's publication in the *Federal Register*, the agency's response to these written comments submitted by Advocacy on the proposed rule, unless the agency certifies that the public interest is not served by doing so.[5]

Advocacy's comments are consistent with Congressional intent underlying the RFA, that "[w]hen adopting regulations to protect the health, safety, and economic welfare of the nation, federal agencies should seek to achieve statutory goals as effectively and efficiently as possible without imposing unnecessary burdens on the public." [6]

---

[2] 5 U.S.C. §601 et seq.

[3] Pub. L. 104-121, Title II, 110 Stat. 857 (1996) (codified in various sections of 5 U.S.C. §601 et seq.).

[4] Small Business Jobs Act of 2010 (PL. 111-240) §1601.

[5] *Id*.

[6] 5 U.S.C. Sec. 601 note.

### B. The Proposed Rule

The FLSA generally requires employers to pay employees at least the federal minimum wage, which is currently $7.25 per hour.[7] Section 3(m) of the FLSA allows an employer that meets certain requirements to count a limited amount of the tips earned by tipped employees as a credit towards its federal minimum wage obligation, known as a tip credit.[8]

DOL has issued various guidance documents and rulemakings for over 30 years to deal with the "dual jobs" provision of the tip credit under the FLSA, seeking to address a situation where a tipped employee performs multiple jobs. The FLSA discusses one situation where an individual works in two occupations, as a maintenance man performing non-tipped work in a hotel while also serving as a waiter performing tipped work. This is distinguished from a situation where a worker performs multiple tasks in one occupation, such as tip-producing work and work related to tip-producing work. This is a situation where a "waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses."[9]

In 1988, DOL released sub-regulatory guidance (often referred to as the 80/20 guidance) which explained "that an employer could continue to take a tip credit for the time an employee spent performing duties that are related to the employee's tipped occupation but that do not produce tips, but only if that time did not exceed 20 percent of the employee's workweek."[10] In 2018, DOL released guidance rescinding the 80/20 guidance. In 2018 and 2019, the Department issued new sub-regulatory guidance "providing that the department would no longer prohibit an employer from taking a tip credit for the time a tipped employee performs related, non-tipped duties, as long as those duties are performed contemporaneously with, or a reasonable time immediately after, tipped duties."[11] On December 30, 2020, DOL published the 2020 Tip final rule incorporating this guidance, and it stated that it would also use the Occupational Information Network (O*Net) to determine whether a tipped employee's duties are related to their tipped occupation.[12] In the December 2020 final rule, DOL explained that the 80/20 guidance "has proved difficult to enforce and resulted in widespread compliance issues; it has also generated extensive, costly litigation." [13] In 2021, DOL released multiple rulemakings extending the effective date of this final rule.[14]

---

[7] 29 U.S.C. § 206 (a)(1).

[8] *See* 29 U.S.C. § 203(m)(2)(a).

[9] 29 U.S.C. § 531.56 (e).

[10] *See* WHD Field Operations Handbook (FOH) 30d00(e), Revision 563 (Dec. 9, 1988).

[11] *See* WHD Opinion Letter FLSA 2018-27 (Nov. 8, 2018); Field Assistance Bulletin (FAB) 2019-2 (Feb. 15, 2019); FOH 30d00(f) (2018-2019 guidance).

[12] Tip Regulations Under the Fair Labor Standards Act (FLSA); 85 Fed. Reg. 86771 (June 23, 2021) (hereinafter "2020 Tip Final Rule").

[13] *See* 2020 Tip Final Rule, at 85 Fed. Reg. at 86761.

[14] *See* 86 Fed. Reg. 11632, 86 Fed. Reg. 15811, 86 Fed. Reg. 22597.

On June 23, 2021, DOL released a proposed rule that rescinds the "dual jobs" portion of the 2020 Tip Final Rule; and adopts a new version of the prior 80/20 guidance, with an additional restriction of a 30-minute limit.[15] The new "dual jobs" provision in this proposed rule states that an "employee is engaged in a tipped occupation when they either perform work that produces tips or perform work that directly supports the tip-producing work, provided that the directly supporting work is not performed for a substantial amount of time." The proposal provides examples of tasks that are considered tip-producing work, directly supporting tip-producing work and non-tipped work. "Substantial amount of time" is defined as work that: 1) exceeds 20 percent of the hours worked during the employee's workweek or 2) any continuous period of time that exceeds 30 minutes.

## II. Advocacy is Concerned that the Proposed Rule Will Have a Significant Economic Impact on a Substantial Number of Small Businesses; DOL Should Revise Its Cost Estimates and Produce an Initial Regulatory Flexibility Analysis with Regulatory Alternatives

The Regulatory Flexibility Act (RFA) requires that regulatory agencies either certify that a proposed regulation will not have a significant economic impact on a substantial number of small entities or prepare an Initial Regulatory Flexibility Analysis (IRFA) to accompany every proposed rule.[16] If an agency certifies the rule, it must provide a statement providing a factual basis for this certification. An agency's certification is subject to judicial review.[17]

A proper IRFA must describe the impact of the proposed rule on small entities and contain the following information: (1) a description of the reasons why the agency's action is being considered; (2) a succinct statement of the objectives of, and the legal basis for, the proposed rule; (3) a description of small entities to which the rule will apply; (4) a description of the projected reporting, recordkeeping, and other compliance requirements of the proposed rule; and (5) an identification, to the extent practicable, of all relevant federal rules that may duplicate, overlap, or conflict with the proposed rule.[18]

Agencies must present significant alternatives for regulatory relief as part of an IRFA as required by § 603(a). At a minimum, the agency should consider: (1) the establishment of different compliance or reporting requirements for small entities; (2) clarification, consolidation, or simplification of compliance and reporting requirements for small entities; (3) use of performance rather than design standards; and (4) exemption for certain or all small entities from coverage of the rule, in whole or in part.[19]

Advocacy is concerned that the DOL's certification lacks an adequate factual basis. DOL's certification is improper because the agency omitted some and underestimated other compliance

---

[15] *See* 2021 Proposed Rule, 86 Fed. Reg. 32818.

[16] 5 U.S.C. § 603, 605.

[17] 5 U.S.C. § 611.

[18] 5 U.S.C. § 603.

[19] *Id.*

costs of this rule.  DOL must complete an IRFA to reassess and update their estimates to fully reflect the economic impact of this rule on small entities and consider significant regulatory alternatives.  DOL should also consider significant alternatives proposed by stakeholders whose comments are published on the proposed rule's public docket.

DOL's examination of these higher cost burdens and significant regulatory alternatives will hopefully lead the agency to adopt an alternative that will accomplish the stated objectives of applicable statutes while minimizing the proposed rule's economic impact on small entities.

According to the Census Bureau's Statistics of U.S. Businesses, a vast majority of businesses in industries that utilize the tip credit provision are small businesses, including over 98 percent of restaurants and drinking places and nail salons, and 83 percent of hotels.[20]  Advocacy held a virtual Small Business Roundtable with participation by DOL officials to obtain public feedback on this rule, attended by over 75 small businesses representatives from 21 states and one territory.  This roundtable included representatives from small restaurants, small hotels, bars, catering companies, passenger vessel operators, and the beauty industry.  The following comments are reflective of the issues raised in this roundtable and in subsequent conversations.

### A. DOL Should Assess Changes to Wage Costs in an IRFA

The Department's RFA analysis provides this estimate:

> The Year 1 per-entity cost for small employers is $477.56, which is the regulatory familiarization cost of $50.60 (1 hour of time), plus the adjustment cost of $50.60 (1 hour of time), plus the management cost of $376.36 (10 minutes per week).  For each subsequent year, costs only consist of the management cost.[21]

Advocacy believes that DOL's certification is flawed because it fails to estimate small business compliance costs for increased wages under this regulation. DOL has omitted these employer wage costs that are listed in another section of the rule: "the Department believes that this proposed rule would result in transfers from employers to employees, but at a fraction of the upper bound of transfers [$714 million]."[22]   DOL must analyze these compliance costs in an IRFA for this rule.  Small businesses at Advocacy's Roundtable detailed potential wage costs from this rule, such as not being able to utilize the tip credit at all and paying the full minimum wage, extra wage costs from the 30-minute increments of non-tipped work, and extra staffing needed to cover non-tipped wages.   Small businesses were also concerned that the onerous requirements in the proposed rule will result in employers not being able to utilize the tip credit.

---

[20] SBA Size Standards, at 13 C.F.R. § 121.201 (2017).  Restaurants include Full-Service Restaurants, Limited Service Restaurants, Snack and Nonalcoholic Beverage Bars, and Drinking Places.

[21] *See* 2021 Proposed Rule, at 86 Fed. Reg. at 32839. (Regulatory Flexibility Act Section).

[22] 2021 Proposed Rule, 86 Fed. Reg. at 32838.

Switching tipped employees into minimum wage employees may also result in both reduced income for employees and costs to the employer.

For example, Advocacy spoke to a passenger vessel operator in Kentucky with 35 tipped workers. This business stated that they will not be able to use the tip credit under this proposed rule and will pay their tipped workers the Kentucky minimum wage of $7.25 instead of the tipped wage of $2.13. This will cost the business over $286,000 in one year. In another example, a restaurant owner in Maine with 58 tipped workers (40 waiters and 18 bartenders) believes that they may have two possible options under this proposed rule. In one scenario, the tipped workers will spend two hours a day on non-tipped work; the business will spend almost $150,000 a year to pay for these hours. In another scenario, the tipped workers will make the Maine minimum wage of $12.15 for every hour they work instead of the tipped wage; the business will spend over $500,000 a year to cover the difference.[23]

### B. DOL Has Underestimated the Costs of Regulatory Familiarization

Advocacy believes that DOL underestimates the regulatory familiarization costs of this rule, which is the direct cost for the small business to review and understand this new regulation.[24] The proposed rule is complex, and most small businesses do not have human resources staff or in-house attorneys to help understand these regulations. Advocacy recommends that DOL take into consideration the full small business compliance cost for familiarization in an IRFA. Small business owners during Advocacy's roundtable on this rule reaffirmed that more time would be needed than the hour estimated to read and become familiarized with the rule.

Small businesses at Advocacy's Roundtable were particularly concerned about the rigidity of DOL's three classifications of workers' tasks—*tipped* work, work that *directly supports* tipped work and *non-tipped* work. These categories do not represent the reality of busy environments such as a restaurant. The proposed rule lists a waiter's only tip-related task as waiting on tables. Other work that directly supports tipped work that would have to be limited (to less than 20 percent and under 30 minutes) are cleaning tables, preparing for new customers, folding napkins, preparing silverware, and garnishing plates. A representative from the National Retail Federation commented that it would take the level of understanding of a wage and hour attorney to understand how to categorize these tasks correctly, but the agency expects small businesses

---

[23] In the Kentucky example, a passenger vessel operator has 35 staff members who work 8 hours a day, 5 days a week, 40 weeks per year. They currently earn a tip wage of $2.13 per hour but under the new regulation would earn $7.25 per hour; the restaurant will have to spend an extra $286,720 a year. The Maine restaurant has 58 tipped staff members who work 7 hours per day, 5 days a week, 50 weeks per year; 40 are waiters who make $6.08 per hour and 18 are bartenders who make $9 per hour. Paying each minimum wage for 2 hours each day would increase wage costs by $149,750 per year: [40 waiters * ($12.15 minimum wage - $6.08 tipped wage) + 18 bartenders * ($12.15 minimum wage - $9 tipped wage)] * 2 hours * 5 days * 50 weeks. Increasing this from 2 to 7 hours per day leads to an increase of $524,125.

[24] *See* 2021 Proposed Rule, at 86 Fed. Reg. at 32840.

- 6 -

and their staff to make these determinations and track these activities throughout their hectic workday.

One owner of a small passenger vessel with dinner service stated that "all hands were on deck" when a waitress or bartender comes in for their busy shift, as everything they do is part of customer service and part of their tip-making income. Employees trying to classify these tasks in real time may take away from providing customers the best experience possible, which may decrease their tips.

Small businesses also point out that there are employees who perform tipped work and directly supporting tipped work simultaneously, such as a bartender serving drinks and cleaning and stocking the bar area. Restaurant operators also point out that DOL is providing inconsistent guidance between different occupations such as waiter, bartender, and busser; some tasks such as cleaning tables and preparing food and garnishes can be considered a tipped job, directly supporting tipped work, or a non-tipped job depending on the employee's job type. Working out the differences between current systems of work classifications and DOL's proposed classifications, as well as resolving ambiguities and inconsistencies in the rule and guidance from DOL, will cost well in excess of the estimate provided by DOL.

`         **C.      DOL Should Revise Its Estimate of Adjustment Costs**

To utilize the tip credit, employers will have to monitor employees' activity to ensure that at least 80 percent of a worker's duties are tipped duties, and no more than 20 percent of the duties are directly supporting tipped duties, and that employees spend no more than 30 minutes at a time performing these duties. DOL lists these adjustment tasks that it believes businesses can complete in one hour in its preamble: changing schedules to minimize extra wage costs, categorizing and tracking employee tasks, re-assigning duties to non-tipped staff, adjusting payroll software to account for these changes and training their managers and staff to learn about the changes and how to implement them. Small businesses at Advocacy's roundtable have commented that the cost to adjust their business practices will be in the thousands of dollars. Advocacy recommends that DOL reassess their estimates for these costs.

Small businesses have told Advocacy that this type of minute-to-minute tracking is onerous and not realistic in such businesses as restaurants, bars, hair salons and nail salons. The National Federation of Independent Business commented that "small businesses need flexibility in using their relatively small number of employees, including tipped employees, to accomplish the work that makes the business a success."[25] Small restaurants commented that a typical workday there may include a wave of customers, followed by a slowdown. It is difficult to imagine how a busy waiter or bartender would be able to track how many minutes they were waiting on customers vs. wiping off tables or a myriad of other tasks. As DOL noted in its preamble, small businesses

---

[25] Comment letter from the National Federation of Independent Business to the U.S. Department of Labor (July 21, 2021).

would have to provide many hours of training to their managers and staff to learn about and implement these changes to their workflow.

A wage and hour attorney at the roundtable commented that this rule does not provide certainty or clarity, but just adds extra burdens and liability. She noted that only larger employers can purchase sophisticated time-keeping software programs that costs thousands of dollars to differentiate these tasks, but even this would not be a perfect system because employees would still have punch in and punch out of this system.

A representative for the National Restaurant Association commented that larger restaurants have more staff to change schedules and re-assign duties to non-tipped staff, but a smaller restaurant has less staff and has fewer staffing options to adapt and adjust to these rule changes.  A representative from the Virginia Beach Restaurant Association, that represents 150 restaurants, stated that restaurants are current facing major staffing issues and many restaurants have cut days and hours of service.  This lack of available staff increases the difficulty of compliance with this regulation and imposes extra costs.  Small business also commented that this was a difficult time to add these additional costs and burdens, as their operations were just surviving from pandemic financial losses.

### D.     DOL Should Revise Its Estimate of Management Costs

Advocacy believes that DOL underestimates the costs for small businesses in management costs at $376.36 per entity a year or 10 minutes per week.  The agency also states that this management cost will be incurred for each subsequent year.  Advocacy believes that the cost is much higher than estimated and recommends that DOL analyze these costs in an IRFA.   As noted above, the proposed rule states that to take a tip credit, managers will have to make sure that their tipped employees are not spending more than 20 percent of their time on directly supporting work per workweek or more than 30 minutes continuously performing such duties.  The analysis states that "the Department does not believe that these costs will be substantial, because if employers are able to make upfront adjustments to scheduling, there is no need for ongoing monitoring."[26]

Due to the lack of adequate staffing, it may be difficult for managers at small establishments to have a fixed staff schedule and they may have to make schedules every week and perform ongoing monitoring of staff schedules.  A roundtable participant stated that while it may be possible to set aside 30 minutes at the beginning or end of a shift for non-tipped work with adequate or extra staffing, it will be hard to control or monitor the other hours of the day to minimize costs.  Small restaurants stated that these restrictions would also affect the level of customer service at their restaurant, if their employees were constantly limited in the tasks they could perform to help their customers.  An HR manager for a restaurant group estimated at least 15 hours a week for restaurant managers to comply with this regulation.  She commented, "The majority of our costs would be spent in auditing, correcting and backpay when servers and utility

---

[26] *See* 2021 Proposed Rule, at 86 Fed. Reg. at 32833.

staff do not clock in and out correctly by job task.  This would open us up to litigation and fines quickly."

### III. Conclusion

Advocacy is concerned that the DOL's certification lacks an adequate factual basis.  DOL's certification is improper because the agency omitted some and underestimated other compliance costs of this rule.  DOL must complete an Initial Regulatory Flexibility Analysis (IRFA) to reassess and update their estimates to fully reflect the economic impact of this rule on small entities and consider significant regulatory alternatives.  Small businesses have told Advocacy that it will be difficult and confusing for employers and employees to make minute-to-minute determinations and track job tasks in busy restaurants, hotels, nail salons and other workplaces.  DOL's examination of these higher cost burdens and significant regulatory alternatives will hopefully lead the agency of adopting an alternative that accomplish the stated objectives of applicable statutes while minimizing the proposed rule's economic impact on small entities.

If you have any questions or require additional information, please contact me or Assistant Chief Counsel Janis Reyes at (202) 619-0312 or by email at Janis.Reyes@sba.gov.

    Sincerely,

    //s//
    Major L. Clark, III
    Acting Chief Counsel
    Office of Advocacy
    U.S. Small Business Administration

    //s//
    Janis C. Reyes
    Assistant Chief Counsel
    Office of Advocacy
    U.S. Small Business Administration

Copy to:     Sharon Block, Acting Administrator
              Office of Information and Regulatory Affairs
              Office of Management and Budget