# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

RESTAURANT LAW CENTER, *et al.*,

        Plaintiffs,

     v.

UNITED STATES DEPARTMENT OF LABOR, *et al.*,

        Defendants.

Civil Action No. 1:21-cv-01106-RP

---

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR
EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND
REQUEST FOR EXPEDITED CONSIDERATION AND ORAL ARGUMENT**

ANGELO I. AMADOR (admitted *pro hac vice*)
RESTAURANT LAW CENTER
2100 L. Street, N.W., Suite 700
Washington, D.C. 20036
Tel:   202.331.5913
Fax:   202.973.3952
AAmadaor@restaurant.org

GRETA RAVITSKY
EPSTEIN BECKER & GREEN, P.C.
700 Louisiana Street
Suite 3950
Houston, Texas  77002
Tel:   713.300.3215
Fax:   713.300.3235
GRavitsky@ebglaw.com

PAUL DECAMP (admitted *pro hac vice*)
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W, Suite 700
Washington, D.C.  20037
Tel:   202.861.1819
Fax:   202.861.3571
PDeCamp@ebglaw.com

KATHLEEN BARRETT (admitted *pro hac vice*)
EPSTEIN BECKER & GREEN, P.C.
227 West Monroe Street, Suite 3250
Chicago, Illinois  60606
Tel:   312.499.1400
Fax:   312.845.1998
KBarrett@ebglaw.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

**Page**

1.      The Department of Labor has no authority to promulgate the Final Rule....................1

2.      Congress spoke directly to the precise issue of the tip credit application by defining "tipped employee" using the unambiguous term "engaged in an occupation," and the Final Rule conflicts with this definition........................................................................3

3.      *Fast*, *Marsh*, and *Rafferty* do not control this case. .....................................................6

4.      The Final Rule is arbitrary and capricious. ..................................................................7

5.      Plaintiffs have demonstrated that they will suffer irreparable harm and that the balance of harms favors an injunction. .....................................................................................9

6.      The irreparable harm alleged is sufficient for a nationwide injunction. ......................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Builders and Contractors of Southeast Texas V. Rung*,
    No. 1:16-cv-00425-MAC, 2016 WL 8188655 (E.D. Tex. Oct. 24, 2016) .................15, 16

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ...........................................................................14

*Chacon v. Granata*, 515 F.2d 922 (5th Cir. 1975)...................................................................12

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)....................3, 6, 7

*Contender Farms, L.L.P. v. USDA*, 779 F.3d 258 (5th Cir. 2015) ...........................................3

*Feds for Medical Freedom v. Biden*,
    No. 3:21-CV-00356, 2022 WL 188329 (S.D. Tex. Jan. 21, 2022)...................................15

*Hyder v. Keisler*, 506 F.3d 388 (5th Cir. 2007) .......................................................................6

*Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007)................................................2

*Marsh v. J. Alexander's LLC*,
    905 F.3d 610 (9th Cir. 2018) ....................................................................................5, 6, 7

*Michigan v. EPA*, 135 S. Ct. 2699 (2015) ................................................................................6

*Motor Vehicle Manufacturers Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983).........................................................................................................7, 8

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*,
    No. 21A244, 2022 WL 120952 (U.S. Jan. 13, 2022) ...................................................1, 3

*Nat'l Fed'n of Indep. Bus. v. Perez*, 2016 WL 3766121 (N.D. Tex. 2016)............................14

*Nevada v. Dep't of Lab.*, 218 F. Supp. 3d 520 (E.D. Tex. 2016) .......................................3, 14

*Off. of Commc'n of United Church of Christ v. FCC*, 707 F.2d 1413 (D.C. Cir. 1983)...........7

*Schreve v. First Nat'l Collection Bureau, Inc.*,
    No. SA-14-CA-208-OLG, 2014 WL 12538689 (W.D. Tex. June 27, 2014) ....................6

*Superior Oil Co. v. FERC*, 563 F.2d 191 (5th Cir. 1977).........................................................7

*Texas v. EPA*,
   829 F.3d 405 (5th Cir. 2016) ...............................................................................7, 8, 9, 11

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......................................................12

**Statutes**

Fair Labor Standards Act

   Section 3(m), 29 U.S.C. § 203(m) ..............................................................................3, 8

   Section 3(m)(2), 29 U.S.C. § 203(m)(2).....................................................................8, 14

   Section 3(t), 29 U.S.C. § 203(t) .....................................................................................3

   Section 13(a)(15), 29 U.S.C. § 213(a)(15)......................................................................2

Public Law 89-601, § 602 ..................................................................................................1

**Other Authorities**

29 C.F.R. § 531.59 ......................................................................................................8, 14

86 Fed. Reg. 60,114 .........................................................................................................13

86 Fed. Reg. at 60,143 ..............................................................................................9, 10, 15

S. Rep. No. 89-1487 (Aug. 23, 1966) ...................................................................................3

Plaintiffs have demonstrated that they are likely to prevail on their claims, that they will suffer imminent and irreparable harm, and the balance of interests favors an injunction. The Department's opposition (ECF 20) confirms that it improperly assumed legislative authority in promulgating the Final Rule, which inserts a brand new test for the tip credit into the plain text of the FLSA. As shown below, Plaintiffs' motion for preliminary injunction (ECF 12) should be granted.

**1.     The Department of Labor has no authority to promulgate the Final Rule.**

The Department attempts to defend the Final Rule by claiming that a general delegation of rulemaking authority coupled with undefined terms in a statute confer upon the Department virtually unfettered discretion to impose any requirements the Department chooses, no matter how removed those choices are from the statutory text. *See* ECF 20 at 22-24[1]. As the Supreme Court recently reminded the Secretary of Labor, that is not how the law works. *See Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.,* No. 21A244, 2022 WL 120952, at *3 (U.S. Jan. 13, 2022) (the Secretary of Labor lacked the authority to impose the vaccine mandate, which was promulgated without clear congressional authorization).

The Department's only source of authority for the Final Rule is a "miscellaneous" provision in the FLSA that generally authorizes the Department "to promulgate necessary rules, regulations or orders with regard to the" 1966 FLSA amendments that created the tip credit. *See* ECF 20 at 22-24 (citing Public Law 89-601, § 602). According to the Department, this provision supplies it with unlimited authority and discretion "to work out the details" of what the term "engaged in an occupation" means in the definition of "tipped employee", which is a question that Congress never asked the Department to answer. *Id*. at 24-25. A case the Department cites in its opposition,

---

[1]     All page references for filed documents are to the ECF-generated pagination rather than to original internal document pagination.

*Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), squarely shows the Department's lack of authority here to promulgate the Final Rule and to interpret unambiguous terms of the FLSA that Congress never asked the Department to define.  *See* ECF 20 at 24, 27.

In *Long Island Care at Home*, the Department of Labor had the authority to fill in gaps as to the scope and definition of statutory terms through a regulation when the text of the FLSA, section 13(a)(15), explicitly authorized the Department to define the statutory terms.  551 U.S. 158 at 162.  Specifically, section 13(a)(15) exempts from the FLSA's minimum wage and maximum hours rules "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves **(as such terms are defined and delimited by regulations of the Secretary [of Labor])**."  *See id.* (citing 29 U.S.C. § 213(a)(15) (emphasis added)).  The court concluded that the Department had the authority to promulgate a regulation that defined "domestic service employment" and "companionship services" because in the statutory language of section 13(a)(15) Congress "expressly instructs the agency to work out the details of those broad definitions."  *Id*. at 167.

Unlike in *Long Island Care at Home*, Congress did not grant any authority to the Department in sections 3(m) and 3(t) of the FLSA to work out any details of the definition of "tipped employee" and the application of the tip credit.  As *Long Island Care at Home* confirms, had Congress wanted to grant the Department authority to "work out the details" of the definition of "tipped employee" and the application of the tip credit, it would have done what it has done elsewhere—specifically delegate this authority to the Department in the statutory language in sections 3(m) and 3(t).  Instead, without authority and in the guise of interpreting what it mischaracterizes as "ambiguous" terms of the statute, the Department creates a completely new test for when an employer can exercise its statutory right to take a tip credit that conflicts with the plain text of the

FLSA.  ECF 20 at 25-27.  The Department has improperly assumed legislative authority that Congress never delegated to it and exceeded its power in promulgating the Final Rule.  *See Nat'l Fed'n of Indep. Bus.,* No. 21A244, 2022 WL 120952 at *3-4 ("Administrative agencies are creatures of statute.  They accordingly possess only the authority that Congress has provided.").  Thus, the Final Rule fails at *Chevron* step zero and is unlawful.

2.    **Congress spoke directly to the precise issue of the tip credit application by defining "tipped employee" using the unambiguous term "engaged in an occupation," and the Final Rule conflicts with this definition.**

Contrary to the Department's contention, the FLSA is not, in fact, ambiguous with regard to the issue of the tip credit application.  *See Nevada v. Dep't of Labor,* 218 F. Supp. 3d 520, 528 (E.D. Tex. 2016) ("A statute is ambiguous if it is susceptible to more than one reasonable interpretation or more than one accepted meaning.").  When Congress first extended the FLSA to apply to restaurants in 1966, it designed the tip credit "to permit the continuance of existing practices with respect to tips."  *See* S. Rep. No. 89-1487, at 12 (Aug. 23, 1966).  The statutory concept is simple.  Under section 3(m) of the FLSA an employer may take a tip credit with respect to a "tipped employee".  29 U.S.C. § 203(m).  Congress then specifically defined "tipped employee" in section 3(t) as meaning "any employee **engaged in an occupation** in which he **customarily and regularly receives more than $30 a month in tips**."  29 U.S.C. § 203(t) (emphasis added).  Thus, so long as the employee is engaged in an occupation from which he or she customarily and regularly receives tips in excess of $30 a month, the tip credit is available.

The Department claims that the tip credit application is ambiguous simply because the terms "occupation" and "engaged" are "undefined."  *See* ECF 20 at 24-27.  As Plaintiffs explained in their opening Memorandum, undefined terms do not automatically render a statute ambiguous.  Instead, at the first step of the *Chevron* analysis, the Court must "give all undefined terms their

ordinary meaning." *See* ECF 12 at 27-28 (citing *Contender Farms, L.L.P. v. USDA*, 779 F.3d 258, 269 (5th Cir. 2015)).  The Department does not dispute that the Court should refer to contemporaneous dictionary definitions to determine the ordinary meaning of undefined terms.  Plaintiffs' contemporaneous dictionary definitions define "engaged" (as "occupied; employed") and occupation (as "the principal business of one's life:  a craft, trade, profession or other means of earning a living").  *See* ECF 12 at 30-32.  There is nothing ambiguous about these terms.  After reading the ordinary meanings together with the statute, it is clear Congress intended the term "engaged in an occupation" to mean the field of work and job as a whole, not the mix of specific tasks within a job or the elimination of the tip credit based on the time spent on different tasks.  *Id.*

Rather than giving the terms "occupation" and "engaged" their ordinary meaning, however, the Department replaces these terms with its own new test in the Final Rule that it admits focuses on "the mix of tasks" and whether these duties directly and immediately produce tips.  *See* ECF 20 at 26-27.  In so doing, the Department stands the statutory text on its head: rather than attempting to determine what Congress meant by the term "occupation" as used in the FLSA for purposes of identifying which employees regularly receive sufficient tips to qualify for the tip credit, the Department chooses to view the concept of an occupation through the extrastatutory distorting lens of what tasks do and do not supposedly lead to tips.  Rather than giving "occupation" a normal and commonsense meaning consistent with the FLSA, the Department focuses on tips and works backwards, deconstructing every employee's job into a potential multitude of "occupations" based on each discrete task performed and its relation to tips.  While such an endeavor might be an interesting frolic and detour in a graduate seminar on occupational engineering, it simply has nothing to do with the law Congress enacted.  Nothing in the statute purports to limit the availability of the tip credit to whether or not an employee performs specific job duties or tasks that directly and

immediately produce tips; if the employee regularly receives at least $30 a month in tips from his or her job, regardless of how or why the employee gets those tips, the employee is a "tipped employee," and the employer may take the tip credit under the plain text and ordinary meaning of the terms in the statute.  That is the law Congress wrote, and it precludes the approach the Department has chosen in the Final Rule.

The Department's opposition confirms that the Final Rule is not based on the text, history, or purpose of the FLSA, but it is instead the Department's unlawful attempt to address the Department's own dissatisfaction with Congress allowing employers to pay tipped employees a reduced cash wage of $2.13 to satisfy a portion of their minimum wage obligations.  *See* ECF 20 at 27-29. The Department states that the Final Rule fits with the statutory purpose of ensuring "that tipped employees do not have the value of their tips diluted by being paid a reduced direct wage while performing substantial work that does not produce tips."  *Id*. at 27-29, 32.  However, this is not the purpose of the tip credit or the FLSA; instead, this is the Department's policy preference separate and apart from the statute, a preference that drove the adoption of the Final Rule, which has no force and effect of law.  *See Marsh v. J. Alexander's LLC*, 905 F.3d 610, 637-41, 645-50, 652 (9th Cir.) (Ikuta, J., dissenting).  In addition, nothing in any of the tip credit legislative history suggests a congressional intent to allow the tip credit for only certain duties, disallow the tip credit for certain side work duties if performed more than 20% of the workweek or for 30 continuous minutes, and disallow the tip credit for yet other side work duties.[2]

---

[2]    The Department also argues that the legislative history surrounding the 1974 amendments to the FLSA supports its new test in the Final Rule.  *See* ECF 20 at 28.  As Plaintiffs argue in their opening Memorandum, this legislative history demonstrates that consistent with the plain meaning of "occupation," an intent for the tip credit analysis to focus on the principal duties performed "over the entire workweek."  ECF 12 at 34-35 (citing S. Rep. No. 93-690 at 43).  The Final Rule, however, creates a directly contradictory analytic framework that eliminates the tip credit based on certain side work duties that are performed for 30 continuous minutes, and further disallows the tip credit altogether for other duties that the Department labels as work that is not part of the tipped occupation.  *Id*.

Here, the statutory language of the tip credit provision is clear and illustrates Congress's intent.  The Final Rule's approach to the tip credit—limiting the tip credit based on whether duties directly and immediately produce tips—directly conflicts with the approach required by the ordinary meaning of the statutory definition of "tipped employee."  As a result, the Final Rule fails *Chevron* step one and is unlawful.[3]

### 3.  *Fast*, *Marsh*, and *Rafferty* do not control this case.

The Department primarily relies on the majority decisions in *Fast*, *Marsh*, and *Rafferty* to support its new approach to the tip credit in the Final Rule.  *See* ECF 20 at 13, 32-34.  These rulings by the Eighth, Ninth, and Eleventh Circuits are not binding on a federal court sitting in Texas.  *See, e.g.*, *Hyder v. Keisler*, 506 F.3d 388, 393 (5th Cir. 2007) (refusing to adopt the Ninth Circuit's interpretation of "crime involving moral turpitude" for purposes of applying cancellation of removal statute); *see also Schreve v. First Nat'l Collection Bureau, Inc.*, No. SA-14-CA-208-OLG, 2014 WL 12538689, at *6 (W.D. Tex. June 27, 2014) (refusing to adopt the Seventh Circuit's interpretation of the Fair Debt Collection Practices Act).  In addition, Plaintiffs respectfully submit that the majority decisions in *Fast*, *Marsh*, and *Rafferty* are wrong, as the 20% limitation promulgated in the Department's subregulatory guidance at issue in those cases is inconsistent with the plain text of the FLSA.  The Department's reliance on decisions upholding an unfounded departure from the plain text of the FLSA is not persuasive.  The only opinion in these decisions that this

---

[3]     As Plaintiffs argue in their opening Memorandum, even if section 3(t) is ambiguous, the Department's Final Rule does not deserve deference at *Chevron* step two.  *See* ECF 12 at 36-37.  The Final Rule is not "based on a permissible construction of the statute" because it is contrary to clear congressional intent.  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).  The statutory term "occupation" does not mean how often a person performs a task.  The Final Rule, however, bases the tip credit analysis entirely on whether tasks and duties directly and immediately produce tips, which is a completely different approach to the tip credit from what the FLSA requires.  Because the Final Rule is contrary to the statutory text and Congress's intent, the Final Rule's tip credit approach is "not one that Congress would have sanctioned" and consequently fails *Chevron* step two.  *See Chevron*, 467 U.S. at 845; *see also Michigan v. EPA*, 135 S. Ct. 2699, 2707-08 (2015) (even if some ambiguity exists in a statute, an agency's interpretation of a statute must stay within the boundaries of the words chosen by Congress).

Court should rely on is the dissent in *Marsh*, which engages in a thorough analysis of the Department's departure from the plain text of the FLSA that aligns with the Final Rule's fundamental flaws here.  *See* ECF 12 at 36-37.

**4.      The Final Rule is arbitrary and capricious.**

Plaintiffs demonstrated in their opening Memorandum that the Final Rule is arbitrary and capricious, and thus fails *Chevron* step two, because the Department fails the reasoned-decision-making requirement of the APA.  As the Supreme Court stated in *Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co*., 463 U.S. 29, 43 (1983), "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  The Department does not dispute that it conducted no evaluation of the real world duties of occupations in which employees receive tips.  *See* ECF 20 at 35.  The Department insists, instead, that it need not suffer the indignity of having to base its rulemaking in actual facts.[4]  *See id*.  By labeling the Final Rule as a "policy judgment," the Department claims that it "need not make findings of fact in the conventional sense" and its decision does not require "complete factual support."  ECF 20 at 35-36 (citing *Superior Oil Co. v. FERC*, 563 F.2d 191, 200 (5th Cir. 1977); *Off. of Commc'n of United Church of Christ v. FCC*, 707 F.2d 1413, 1437 (D.C. Cir. 1983)).  The only facts the Department points to are "several" conclusory comments by tipped employees.  *See id*.  However, a cursory review of comments does not remedy the Department's failure to conduct any evaluation, study, survey, or data analysis of occupations in which employees receive tips to determine

---

[4]      The Department also claims that Plaintiffs' argument is not supported by legal authority.  The Department is incorrect.  Plaintiffs' opening brief expressly cites Fifth Circuit authority to support its argument that the Final Rule is arbitrary and capricious.  *See* ECF 12 at 37 (citing *Texas v. EPA*, 829 F.3d 405, 425 (5th Cir. 2016)).

whether the problem it purports to address through the Final Rule even exists.[5]  *See State Farm*, 463 U.S. 29 at 43.

The Department's reasons and choices for the Final Rule also do not conform to even minimal standards of rationality.  *See* ECF No. 20 at 36.  The Department states the reason for the Final Rule is "because tipped employees can receive as little as $2.13 per hour in direct cash wages, they earn relatively low wages" and, "to ensure that workers do not receive a reduced direct cash wage when they are not engaged in a tipped occupation."  *Id*.  This reason, however, is the Department's disingenuous attempt to connect the tip credit to the cause of low wages to justify the Final Rule, which flies in the face of the text of the FLSA.  The tip credit does not operate to reduce an employee's pay below minimum wage, but instead recognizes as "wages" certain tips that employees earn for their work and credits those tips toward the minimum wage those employees must receive.  *See* 29 U.S.C. § 203(m)).  The FLSA also still requires employees for whom an employer takes a tip credit to receive at least minimum wage for all hours worked.  *See* 29 U.S.C. § 203(m)(2); 29 C.F.R. § 531.59.  If the employee's tips are insufficient, when added to the required cash wage, to satisfy the minimum wage, then the FLSA requires employers to pay additional wages to make up the difference.  *Id*.  Because there is no conceivable connection between the Final Rule and the wages earned by tipped employees, as tipped employees already receive the full protection of the federal minimum wage, the Final Rule is arbitrary and capricious.  *See Texas*

---

[5]    Plaintiffs also establish in their opening Memorandum that the Department's failure to engage in any fact-finding is particularly inexcusable here because the Department itself maintains "the nation's primary source of occupational information": the O*NET.  *See* ECF 12 at 38-39.  The Department defends its failure to consider O*NET by claiming that "O*NET only reflects what tipped employees are required to do for their employers, not the tasks that make up their tipped occupation" and there is "a delay in updating O*NET."  ECF 20 at 37.  These excuses do not justify the Department's deliberate decision to ignore its own real-world data showing the actual job duties of tipped employees, which conflict with how the Department has defined "tipped employees" in the Final Rule.  This renders the Final Rule arbitrary and capricious.

*v. EPA*, 829 F.3d at 425 (agency action is arbitrary and capricious if the agency "offered an explanation for its decision that runs counter to the evidence before the agency").

The Department also does not adequately consider the Final Rule's cost to employers. The Department acknowledges in its opposition that "the Department's goal was to examine changes in wages from 2018 to 2019 guidance whereas wage data from 2020 would obviously be distorted with the much more impactful changes associated with the pandemic[.]" ECF 20 at 38. But the Department did not try to account for these "impactful" pandemic changes, which the SBA Advocacy also expressed to the Department. *Id*. at 38-39. The Department's perfunctory attempt to consider important costs to employers render the Final Rule arbitrary and capricious. *See Texas v. EPA*, 829 F.3d at 42 (agency action is arbitrary and capricious if the agency "relied on factors which Congress has not intended it to consider").[6]

**5.      Plaintiffs have demonstrated that they will suffer irreparable harm and that the balance of harms favors an injunction.**

The Department claims that the irreparable harms described in Plaintiffs' declarations "have already been incurred (or *substantially incurred*)," and therefore there is no irreparable harm to prevent. *See* ECF 20 at 43-44 (emphasis added). The Department is incorrect. It should be said, first, that this is not a case where the Department denies harm. The Final Rule acknowledges that it will cost businesses $224,882,399 in familiarization costs, adjustment costs, and management costs during the first year alone. *See* Final Rule, 86 Fed. Reg. at 60,143. The Final Rule further acknowledges for the following years, the Final Rule will impose management costs of

---

[6]      Plaintiffs also argue in their opening Memorandum that the Final Rule is arbitrary and capricious because the Final Rule is so internally inconsistent as to render its artificial distinction so unworkable as to be implausible. *See e.g.* ECF 12 at 41-42 (noting the irreconcilable treatment of bussers and service bartenders, who do not engage in any of the direct customer servicing work the Final Rule's test would consider to directly and immediately produce tips, yet who apparently remain properly tipped employees under the Final Rule). The Department's main response is: "it makes sense." *See* ECF 20 at 40-41. This is not a satisfactory explanation.

$177,227,926.  *Id.*  And, over the next ten years, the Final Rule states that businesses will expend an additional $183.6 million in annual costs.  *Id.*  The Department cannot credibly deny the fact of harm—hundreds of millions of dollars of harm—resulting from the costs imposed upon businesses (which, includes members of RLC and TRA) to comply with the Final Rule.

Plaintiffs' declarations are from experienced restaurant industry professions who have personal knowledge of the actual harms TRA and RLC members are suffering as a result of the Final Rule.  *See* ECF 12-1 at 55-66 (Amador Decl. ¶¶ 1-3, 8, 13-14, 19-23); *id.* at 5-8, 9-16  (Knight Decl. ¶¶ 1-5, 7-8, 10-17); *id.* at 73-76 (Vaught Decl. ¶¶ 1-2, 10-11).  The declarations are consistent with the Department's own concession in the Final Rule that businesses are incurring ongoing, substantial costs to comply with the Final Rule.  *See* Final Rule, 86 Fed. Reg. at 60,143.  While a portion of the harm has been inflicted on the RLC and TRA members—such as regulatory familiarization costs—members nevertheless suffer continuous and irreparable harm each day the Final Rule is in effect by expending significant monies on increased wage costs, adjustment costs, staffing costs, management costs, compliance costs, and record keeping costs.  *See* ECF 12-1 at 59, 61-66 (Amador Decl. ¶¶ 13, 19-22); *id.* at 9-16 (Knight Decl. ¶¶ 10-12, 16); *id.* at 74-75 (Vaught Decl. ¶¶ 5-9).

The Final Rule has also forced many TRA and RLC members to reluctantly discontinue their use of the tip credit altogether, which increases labor costs and wipes out already-thin profit margins.  *See* ECF 12-1 at 62-66 (Amador Decl. ¶ 19(c)-(g), 20-22); *id.* at 10-13, 14, 16 (Knight Decl. ¶ 10(c)-(g), 12, 16); *id.* at 74 (Vaught Decl. ¶ 5).  For example, a small restaurant owner in Virginia "will have to expend an extra $286,720 *per year*" to comply with the Final Rule.  *See* ECF 12-1 at 62 (Amador Decl. ¶ 19(c)) (emphasis added).  Another restaurant owner in Texas "will spend close to one million dollars extra *per year* on labor" to comply with the Final Rule.

*See* ECF 12-1 at 74 (Vaught Decl. ¶ 5) (emphasis added).   "Once [the] restaurant group spend these monies, [they] cannot get the million dollars back."   *Id.*

The Department next claims that Plaintiffs' declarations "overstate the ongoing compliance cost associated with the rule."   ECF 20 at 44.   The Department critiques the fact that restaurant managers will need to spend substantially more than just one hour to come into compliance with their Final Rule, because the Department believes compliance with its Final Rule is an easy one-time reassignment of work.   *Id.*   The Department is wrong.   Not only is the Final Rule internally inconsistent, which makes it difficult if not impossible to comply with, but the Final Rule also sets forth a new test of task and time limitations that requires ongoing auditing and monitoring to ensure compliance.   The Department cites only its own unfounded assumption that close monitoring is not required, yet the Department admittedly failed to conduct any surveys or evaluations to reach this conclusion.   Contrary to the Department's baseless speculation, Plaintiffs' declarants have actual knowledge of the ongoing, substantial compliance costs that RLC and TRA members are actually suffering to comply with the Final Rule.   *See* ECF 12-1 at 59, 61-66 (Amador Decl. ¶¶ 13, 19-22); *id.* at 9-14, 16 (Knight Decl. ¶¶ 10-12, 16); *id.* at 73-75 (Vaught Decl. ¶¶ 1, 5-9).   If the Final Rule is later invalidated on the merits, RLC and TRA members cannot recover these compliance costs from the Department, which in the Fifth Circuit, is an irreparable injury.   *See Texas v. EPA*, 829 F.3d at 433 ("complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs") (emphasis in original, citation omitted).

The Department also argues that the Plaintiffs' declarants' monitoring costs are inflated because the 80/20 subregulatory guidance already imposed a 20 percent limitation.   ECF 20 at 45. However, the Final Rule is a completely new test for the tip credit, which for the first time, divides tasks into three inconsistent categories of work that it deems to fall within (or outside of) the non-

statutory term "tipped occupation," while also imposing a new 30-minute limitation on certain tasks.  Thus, Plaintiffs and their members will continue to expend additional resources to ensure compliance with the Final Rule's new test and nuances.[7]

The Department further proclaims that if harm has not already been incurred, then it has been "substantially incurred." ECF 20 at 43.  The Department cites not a single case that would support the use of the term "substantially incurred" in the irreparable harm analysis.  *Id.*  It is well established that, to satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent.  *See Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008); *Chacon v. Granata,* 515 F.2d 922, 925 (5th Cir. 1975).  Because RLC and TRA members confirm that the Final Rule causes ongoing increases in labor, operational expenditures, and compliance costs that will ultimately force their restaurants to close, Plaintiffs have satisfied this requirement.  *See* ECF 12-1 at 61-66 (Amador Decl. ¶¶ 19-22); *id.* at 9-14, 16 (Knight Decl. ¶¶ 10-12, 16); *id.* at 74-75 (Vaught Decl. ¶¶ 5-9).

The Department next claims that Plaintiffs' Motion "comes too late."  ECF 20 at 43.  The Department is incorrect.  The cases the Department relies on to support this assertion are distinguishable.  In the first case, *Gonannies, Inc. v. Goupair.Com, Inc.*, the court found that a *seven month* delay in seeking injunctive relief constituted an "undue delay . . . sufficient to rebut any

---

[7]     In an attempt to bolster their argument that the restaurant industry should make upfront adjustments rather than devote resources to monitoring employees' conduct, the Department states that in May of 2021, Paul DeCamp, who is counsel in the matter before this Court, offered three strategies for restaurants to comply with the 80/20 rule.  *See* ECF 20 at 45. This argument has no merit.  The Final Rule imposes new and different requirements that did not exist in May of 2021.  Moreover, offering an industry advice for how to make the most of a bad situation when a federal agency stubbornly presses forward with an unlawful rule is in no sense a concession that the rule is appropriate or that compliance is achievable at a cost consistent with the burden identified in the Final Rule.  The Department has, for all intents and purposes, offered restaurants the Hobson's choice of going out of business due to enhanced compliance and operating costs or going out of business as a result of class and collective action litigation stemming from tip credit claims.

possible presumption of irreparable harm." 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006). Similarly, in *Mylan Pharmaceuticals, Inc. v. Shalala*, a generic drug manufacturer filed a mandatory injunction for immediate approval of its new drug application *over eight months after* it believed it had a right to launch its drug and *over two month after* the market exclusivity period already expired, which undercut its allegation of irreparable harm. 81 F. Supp. 2d 30, 35-36, 43-44 (D.D.C. 2000). Unlike the plaintiffs in *Gonannies* and *Shalala*, Plaintiffs here did not delay in seeking injunctive relief. While the Department published its Final Rule on October 29, 2021, the Final Rule did not officially go into effect until December 28, 2021. *See* Final Rule, 86 Fed. Reg. 60,114. Therefore, Plaintiffs' Motion filed on December 17, 2021[8], was certainly timely as it occurred *before* the Final Rule's effective date. *See* ECF 11-1, 12.

Plaintiffs also established that the balance of hardships favors a preliminary injunction. On one side of the equation is the certainty that Plaintiffs' affected members will continue to spend substantial sums of unrecoverable funds to comply with the Final Rule, together with interference with the financial viability of many of Plaintiffs' members causing ongoing employee terminations and disrupting their ability to keep their doors open to the public. *See* ECF 12 at 36-38; *see also* ECF 12-1 at 59, 61-66 (Amador Decl. ¶¶ 13, 19-22); *id*. at 9-14, 16 (Knight Decl. ¶¶ 10-12, 16); *id*. at 74-75 (Vaught Decl. ¶¶ 5-9). On the other side are the vague and less substantial injuries advanced by the Department. The Department's only injury that it points to is the Economic Policy Institute's "estimated" loss of income to employees if the 2020 Tip Final Rule took effect. *See* ECF 20 at 47. However, the 2020 Tip Final Rule never took effect and it is not the Final Rule Plaintiffs seek to enjoin here. The Department also admittedly conducted no analysis of Covid-19

---

[8]    Plaintiffs filed their Emergency Motion for Preliminary Injunction as an exhibit to their Motion for Leave to File in Excess Page Limits on December 17, 2021. *See* ECF 11, 11-1. The Court entered the Emergency Motion for Preliminary Injunction as a separate docket entry on December 20, 2021. *See* ECF 12.

pandemic cost data and thus it cannot identify any current loss of income tipped employees would experience if the Final Rule was enjoined.  *See* ECF 20 at 38.  In addition, the Department again does not acknowledge the Plaintiffs' argument in their opening Memorandum that with or without the Final Rule, tipped employees *already* receive the full protection of the federal minimum wage. *See* ECF 12 at 45; s*ee also* 29 U.S.C. § 203(m)(2); 29 C.FR. § 531.59.  Furthermore, because the Department has improperly assumed legislative authority that Congress never delegated to it and acted outside of any legitimate authority in promulgating the Final Rule, the Department itself suffers no injury if the Final Rule is enjoined.  *See supra* p. 3.  Thus, the Department and the public will not suffer any harm from maintaining the status quo ante while the serious legal issues raised in this litigation are addressed.

**6.    The irreparable harm alleged is sufficient for a nationwide injunction.**

The Department suggests that any injunction can only apply to the Plaintiffs and its members who submitted affidavits.  *See* ECF 20 at 48.  The Department cites not a single case that supports this rule.  In fact, the proposition has been rejected about as often as it has been asserted. It is established law that the scope of the injunction turns on the nature of the violation, not the geographical extent of the plaintiff class that establishes it.  *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  A federal rule, like the one challenged in this suit, is usually meant to establish a national policy and therefore has a nationwide impact.  *See Nevada v. Dep't of Lab.*, 218 F. Supp. 3d 520, 534 (E.D. Tex. 2016) (issuing a nationwide injunction to bar implementation of the Department's new overtime salary threshold final rule); *see also Nat'l Fed'n of Indep. Bus. v. Perez,* 2016 WL 3766121, at *46 (N.D. Tex. 2016) (issuing a nationwide injunction to bar implementation of the Department's new rule on advice and exemption interpretation where the plaintiff was a nationwide organization with members located in states throughout the country).

The key issue is whether the type of harm alleged by the Plaintiffs that submitted affidavits is typical of that suffered by every other impacted RLC and TRA member.  The Plaintiffs' affidavits supply a robust, real-world sampling of this harm—harm that is hardly shocking in light of the Final Rule and the ongoing costs the Department concedes businesses will incur.  *See* ECF 12-1 at 56, 61-66 (Amador Decl. ¶¶ 3, 19-22); *id*. at 5-6, 9-14, 16 (Knight Decl. ¶ 3, 10-12, 16).  The Plaintiffs' declarations show what common sense would cause anyone to expect: while some restaurant members may be harmed more, and some less, all members who use the tip credit are harmed.  *See id*.  A member-by-member catalogue of harms, especially at this preliminary stage, would make sense only if there were any real doubt that most of the impacted members, if not all, might not suffer any harm.  There is no such doubt.  The Department cannot seriously contend that the overwhelming majority, if not every single one, of RLC and TRA members who use the tip credit are affected adversely and significantly by the Final Rule.  The Department's Final Rule, of course, did not undertake such an individualized analysis before laying a burden on businesses that, even by the Department's own estimate, imposes hundreds of millions of dollars in costs upon businesses over the next year.  *See* Final Rule, 86 Fed. Reg. at 60,143.  Plaintiffs should not face a double standard when challenging this harm.

Just last week, the Southern District of Texas entered a nationwide injunction against federal agency action where the plaintiffs were representative organizations with members throughout the United States, all of whom stood to suffer imminent and irreparable harm.  *See Feds for Medical Freedom v. Biden*, No. 3:21-CV-00356, 2022 WL 188329, at *7 (S.D. Tex. Jan. 21, 2022) (granting nationwide injunction where the plaintiff has members in every state throughout the nation); *see also Associated Builders and Contractors of Southeast Texas v. Rung*, No. 1:16-cv-00425-MAC, 2016 WL 8188655, at *14-15 (E.D. Tex. Oct. 24, 2016) (entering a nationwide preliminary

injunction and finding that two affidavits submitted by the business association plaintiffs on behalf of their members were enough to establish harm for all individuals within their groups).   Here, RLC is a national business association representing more than 500,000 restaurant members across the United States, and TRA is a business association representing 50,000 restaurants in Texas.  *See* ECF 12-1 at 56 (Amador Decl. ¶ 3); *id*. at 5-6 (Knight Decl. ¶ 3).  Because the Department's Final Rule is a federal rule meant to apply to all restaurants utilizing the tip credit nationwide, RLC and TRA restaurant members who rely on the tip credit are similarly situated and equally stand to face continuous, irreparable harm from the Final Rule.  *See* ECF 12-1 at 56, 59, 61-66 (Amador Decl. ¶¶ 3, 13, 19-22); *id*. at 5-6, 8-14, 16 (Knight Decl. ¶¶ 3, 8, 10-12, 16).  Accordingly, a nationwide injunction is proper and warranted in this case.

*   *   *

For these reasons, Plaintiffs respectfully request that this Court preliminary enjoin the Defendants from implementing and enforcing the Final Rule nationwide pending a full hearing on the merits and any review by the higher courts.

Respectfully submitted,

By: /s/ Paul DeCamp

ANGELO I. AMADOR (admitted *pro hac vice*)
RESTAURANT LAW CENTER
2100 L. Street, N.W., Suite 700
Washington, D.C. 20036
Tel:     202.331.5913
Fax:    202.973.3952
AAmadaor@restaurant.org

GRETA RAVITSKY
EPSTEIN BECKER & GREEN, P.C.
700 Louisiana Street
Suite 3950
Houston, Texas  77002
Tel:     713.300.3215
Fax:    713.300.3235
GRavitsky@ebglaw.com

PAUL DECAMP (admitted *pro hac vice*)
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W, Suite 700
Washington, D.C.  20037
Tel:     202.861.1819
Fax:    202.861.3571
PDeCamp@ebglaw.com

KATHLEEN BARRETT (admitted *pro hac vice*)
EPSTEIN BECKER & GREEN, P.C.
227 West Monroe Street, Suite 3250
Chicago, Illinois  60606
Tel:     312.499.1400
Fax:    312.845.1998
KBarrett@ebglaw.com

*Counsel for Plaintiffs*

January 26, 2022