IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RESTAURANT LAW CENTER and<br>TEXAS RESTAURANT ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>LABOR; MARTIN J. WALSH, *Secretary of the<br>United States Department of Labor, in his official<br>capacity;* and JESSICA LOOMAN, *Acting<br>Administrator of the Department of Labor Wage and<br>Hour Division, in her official capacity*,<br><br>Defendants. | §§§§§§§§§§§§§§§ | 1:21-CV-1106-RP |

## **ORDER**

Before the Court is Plaintiffs Restaurant Law Center ("RLC") and Texas Restaurant Association's ("TRA") (collectively "Plaintiffs") Emergency Motion for a Preliminary Injunction, (the "Motion"). (Dkt. 12). Defendants United States Department of Labor ("DOL"), Secretary Martin J. Walsh, and Administrator Jessica Loomin (collectively "Defendants") filed a response, (Dkt. 20), Plaintiffs filed a reply, (Dkt. 23), and the Court held a hearing on the Motion, (Dkt. 25). Having considered the briefing, the arguments made at the hearing, the evidence, and the relevant law, the Court will deny the Motion.

### **I. BACKGROUND**

This is a challenge to a DOL regulation regarding wages for employees who receive tips as part of their earnings. Under the Fair Labor Standards Act ("FLSA"), a "tipped employee" is an "employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). For such employees, an employer can take a "tip credit" that allows them to offset the employee's wages by the amount of tips, down to $2.13 per hour, so long

1

as the employee's total earnings—wages plus tips—add up to minimum wage. 29 U.S.C. § 203(m)(2)(A). The dispute in this case turns on the meaning of the statutory phrase "engaged in an occupation" and the term "occupation," both used in the definition of "tipped employee" but undefined in the FLSA.

Tipped employees, such as servers and bartenders, regularly engage in non-tipped work, including cleaning and preparation for service, which may complicate calculation of their wages. (Mot. Prelim. Inj., Dkt. 12, at 12). In 1967—the year after Congress amended the FLSA to include a tip credit—DOL promulgated regulations addressing such situations. *See* 29 C.F.R. § 531.50-60. These rules governed employees working in "dual jobs," where they perform both non-tipped and tipped labor, such as working in maintenance and as a server. The regulation distinguished working two separate jobs, where the top credit did not apply, from working one job with overlapping duties, where the credit did apply. In the latter category, all of an employee's activities were not required to be "directed toward producing tips." 29 C.F.R. § 531.56(e) (1967-2020). DOL claims that restaurants can use the tip credit and dual jobs regulation to subsidize non-tipped work and pay employees less across the board. (Resp., Dkt. 20, at 28). In response to this potential for exploitation, in 1988 DOL issued guidance, known as the 80/20 rule (not promulgated as a regulation), which built on statements in its previous opinion letters.[1] (*Id.* at 14; WHD Field Operations Handbook ("FOH") Rev. 563 § 30d00(e), Dkt. 20, at 57). The guidance allowed a tip credit for time spent on duties related to the tipped occupation, even if those duties were not directly related to tip-generating activities. However, it limited this allowance to up to twenty percent of the employee's time. (*Id.*). In other words, only up to twenty percent of an employee's work could be in non-tipped activities for the employer to be entitled to take the tip credit for that employee.

---

[1] *See* WHD Opinion Letter FLSA-895 (Aug. 8, 1979), Dkt. 20, at 52; WHD Opinion Letter WH-502 (Mar. 28, 1980), Dkt. 20, at 53; WHD Opinion Letter FLSA-854 (Dec. 20, 1985); Dkt. 20, at 54–56.

The 80/20 guidance remained in place largely undisturbed[2] until 2018. That year, DOL rescinded the rule through new guidance. (Resp., Dkt. 20, at 14; WHD Opinion Letter FLSA2018-27 (Nov. 8, 2018), Dkt 20, at 58; WHD FOH Rev. 767 (Feb. 15, 2019), Dkt. 20, at 62). The rescission was "met with near-universal rejection" in court. (Resp., Dkt. 20, at 2). In 2020, DOL finalized a rule codifying the rescission, but that rule never went into effect. (Resp., Dkt. 20, at 15; 85 Fed. Reg. 86756 (Dec. 30, 2020)). Instead, DOL withdrew the rule in 2021 and finalized a new rule effectively codifying the 80/20 guidance and adding new protections. (Resp., Dkt. 20, at 15). It issued a notice of proposed rulemaking on June 23, 2021. 86 Fed. Reg. 32818 (June 23, 2021). After making changes in response to comments from the restaurant industry and others, DOL issued a final rule (the "Rule") on October 29, 2021. 86 Fed. Reg. 60114 (Oct. 29, 2021). The Rule went into effect on December 28, 2021. (Resp., Dkt. 20, at 18).

The Rule has several provisions. First, it clarifies that the tip credit is only available for hours spent working in the tipped occupation. 86 Fed. Reg. at 60157 (codified at 29 C.F.R. § 531.56(e)). Second, it codifies the 80/20 guidance and adds a thirty-minute limitation on non-tipped work allowable when taking the tip credit. 86 Fed. Reg. at 60157 (codified at 29 C.F.R. § 531.56(f)). Third, it elaborates on who qualifies for the tip credit, stating that an employee is "engaged in a tipped occupation when the employee performs work that is part of the tipped occupation" and "may only take a tip credit for work performed by a tipped employee that is part of the employee's tipped occupation." 86 Fed. Reg. at 60157 (codified at 29 C.F.R. § 531.56(f)(1)). Further, it sets out a three-part framework to classify tipped work: (1) work that is part of the tipped occupation and produces tips; (2) work that is part of the tipped occupation and directly supports tip-producing work (subject to the 30-minute rule) though it is not directly tip-producing; and (3) other, non-tipped work that is

---

[2] The guidance was rescinded only once before 2018, for a period of less than three months, from January to March 2009. (Resp., Dkt. 20, at 14 n.1).

not subject to the tip credit. (*Id.*). Finally, the Rule adds examples to illustrate the above. (*See* Resp., Dkt. 20, at 18–19).

On December 3, 2021, Plaintiffs filed this action to permanently enjoin the Rule. (Compl., Dkt. 1). On December 20, 2021, Plaintiffs filed the instant Motion seeking a nationwide preliminary injunction to prohibit enforcement of the Rule. (Mot. Prelim. Inj., Dkt. 12). Plaintiffs claim that DOL impermissibly created a new definition of "tipped occupation" that lacks support in the FLSA. (*Id.* at 8). DOL counters that it acted rationally and within its authority in promulgating the Rule. (Resp., Dkt. 20, at 8).

## II. DISCUSSION

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). Irreparable harm "consists of harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." *Canon, Inc. v. GCC Int'l Ltd.*, 263 F. App'x 57, 62 (Fed. Cir. 2008). There is no longer any presumption of irreparable harm based on a finding of substantially likely infringement at this stage. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).[3] A movant cannot be granted a preliminary injunction unless it can establish

---

[3] Although the Court is skeptical of Plaintiffs' likelihood of success on the merits at this stage, it assumes for the purposes of this order that Plaintiffs are likely to succeed on the merits of their claims.

that it will suffer irreparable harm without an injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

The party seeking a preliminary injunction must prove that irreparable harm is likely, not merely possible. *Winter*, 555 U.S. at 22. "[C]onclusory and vague allegations are not sufficient to show entitlement to injunctive relief." *Bush v. Monroe*, No. 6:17CV541, 2017 WL 9989140, at *1 (E.D. Tex. Dec. 4, 2017), report and recommendation adopted, No. 6:17CV541, 2018 WL 3729765 (E.D. Tex. Aug. 5, 2018); *see, e.g.*, *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991) (conclusory allegations do not establish irreparable harm); *Coleman v. Bank of New York Mellon*, 2013 WL 1187158 at *8 (N.D. Tex. Mar. 4, 2013) ("[U]nsupported, conclusory statements are insufficient to demonstrate entitlement to the extraordinary relief of a . . . . preliminary injunction."); *Mitchell v. Sizemore*, 2010 WL 457145 at *3 (E.D. Tex. Feb. 5, 2010) ("[V]ague and conclusory allegation that [the plaintiff] is undergoing 'a number of problems' is insufficient to show entitlement to injunctive relief."); *Consol. Rest. Operations, Inc. v. Nat'l Processing Co., LLC*, No. CIV.A. 3:02CV1278G, 2002 WL 1432469, at *5 (N.D. Tex. June 28, 2002) (allegations of irreparable harm were conclusory in nature). Here, the Court's analysis begins and ends with its finding that Plaintiffs have not met their burden to show that they will be irreparably harmed in the absence of an injunction.

Plaintiffs claim the main source of harm from the Rule is the compliance costs it entails. (Mot. Prelim. Inj., Dkt. 12, at 43). At this point, however, these costs should have already been incurred. Because of Plaintiffs' timing in filing this suit and seeking this injunction, the rule has already been in place for more than a month. The remaining costs of compliance with the Rule are at best unspecific, and at worst purely speculative. The Court agrees with DOL that Plaintiffs overstate these costs. (Resp., Dkt. 20, at 47). As DOL notes, revisions to the Rule following notice and comment make clear that the Rule does not require the level of detailed monitoring of which Plaintiffs warn. (*Id.* at 39). Plaintiffs' claims that the Rule is unworkably burdensome are particularly

5

difficult to support given the Rule's similarity to the 80/20 guidance, which has governed the industry for decades. (*Id.*) That guidance has been repeatedly upheld in the face of legal challenges. (*Id.* at 14, 49). The Eighth, Ninth, and Eleventh Circuits have all found the 80/20 guidance to be within DOL's discretion and not inconsistent with the dual jobs regulation. *See Marsh v. J. Alexander's LLC*, 905 F.3d 610, 625 (9th Cir. 2018) (en banc); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 879–81 (8th Cir. 2011); *Raffery v. Denny's, Inc.*, 13 F.4th 1166, 1170 (11th Cir. 2021). Indeed, despite assertions of its challenged status, Plaintiffs could identify no cases that called into question the 80/20 rule's validity or declined to follow it. (*See* Minute Entry for Prelim. Inj. Hr'g., Dkt. 25).

Plaintiffs make only rough generalizations about the harms that their members will suffer from the continued operation of the Rule. Plaintiffs cite the declaration and testimony of Angelo Amador ("Amador"), Executive Director of RLC and Plaintiffs' counsel in this litigation, as evidence of the potential for harm from the Rule. (Amador Decl., Dkt. 12-1, at 55).[4] The declaration is devoid of specific facts on this score. Amador states opaquely that preparation for the Rule's implementation "has consumed a very significant portion of my time and some weeks it has consumed the vast majority of my (and my subordinate's) time" over the preceding six months. (*Id.* at 57). He adds, without elaboration, that he is "aware of numerous national restaurant chains and small business owners that would be subject to" the Rule. (*Id.* at 58). He claims to have spent "considerable time" discussing concerns of members, including at RLC Board of Directors meetings, at member conferences, and on phone calls. (*Id.*). Yet he mentions only one event occurring after the rule was promulgated in its final form, a November 3, 2021 RLC meeting, and still provides no details regarding the parties or specific concerns involved. (*Id.* at 58). Similarly, he

---

[4] Plaintiffs also attach the declaration of Emily Williams Knight, TRA President and CEO, which repeats the same information modified for the TRA context. (Knight. Decl., Dkt. 12-1, at 5).

speaks of a general diversion of resources away from other RLC programs but provides no specifics on the extent of the purported harm. (*Id.* at 60).

Amador alleges that "RLC members have informed me that they are concerned about the substantial increased wage costs, regulatory familiarization costs, preparation costs, adjustment costs, staffing costs, business management costs, and recordkeeping costs to prepare for and comply with the Final Rule." (*Id.* at 59). Yet almost nowhere does he provide concrete evidence, or even rough estimates of the costs themselves. The extent of his details are more vague assertions that "[w]orking out the differences between current systems of work classifications and the Final Rule's proposed classifications of tasks as well as resolving ambiguities and inconsistencies in the Final Rule will result in substantial costs," and that "[m]any small restaurant members have informed me that the costs required to adjust their restaurant business practices . . . will be in the thousands of dollars, which are significant costs that will ultimately lower their profits." (*Id.* at 61, 63). In the sole specific example he provides, he recalls speaking with an unnamed "small restaurant owner in Virginia" who had "made the cost calculation of switching 35 tipped employees working eight hours shifts, five days a week, for 50 weeks per year." (*Id.* at 62). For an undisclosed reasons, the owner allegedly "will not be able to use the tip credit under the Final Rule and will pay their tipped workers the Virginia minimum wage of $7.25 instead of the tipped wage of $2.13. The restaurant will have to spend an extra $286,720 per year." (*Id.* at 62). Not only are these "calculations" presented without explanation, but it is entirely unclear why the owner would be unable to continue using the tip credit with the modest changes made by the Rule. Moreover, the Court is hesitant to read in any unexplained harms from the obligation to pay a modest $7.25 minimum wage to employees.

Moreover, on cross-examination, Amador was repeatedly unable to articulate any dates, specific parties, or any more than the broad outlines of conversations he had purporting to

demonstrate the incredible burden on restaurants.[5] (Minute Entry for Prelim. Inj. Hr'g., Dkt. 25). In fact, across numerous conversations he claimed to remember, he could name only one restaurant and one restaurant group, both large corporations for which he was unable to identify any specific harms arising from compliance. As DOL noted, any discussion before the final version of the Rule was published could not have taken the final modifications into account and were carried out at a time when the parties could still have made comments to influence the Rule's final form. (*Id.*). The Court declines to rely on such speculative and self-serving testimony to make a finding of irreparable harm. *See Bush v. Monroe*, No. 6:17CV541, 2017 WL 9989140, at *2 (E.D. Tex. Dec. 4, 2017), *report and recommendation adopted*, No. 6:17CV541, 2018 WL 3729765 (E.D. Tex. Aug. 5, 2018) (declining to find irreparable harm where claims contain "no specifics, evidence, or support" and are "generalized, and speculative").

Plaintiffs offer only one declaration of a restaurant owner as support for their claims of imminent irreparable harm from the costs imposed by the Rule. (Vaught Decl., Dkt. 12-1, at 73). Tracy Vaught ("Vaught") owns five restaurants across Texas. She claims that the Rule "creates immediate harms, including huge burdens and costs to our restaurants, to prepare for and comply with the Final Rule." (*Id.* at 74). These alleged burdens amount to an assertion that "our restaurant group may not be able to take the tip credit at all, as it is impossible to comply with the Final Rule and keep track of exactly how much time our tipped employees spend on different tasks throughout a shift." (*Id.*). She claims that she will spend "close to one million dollars extra per year on labor" to comply with the Rule. (*Id.*).

---

[5] As DOL noted, judicial review of the Rule on the merits is limited to the administrative record as it existed before the agency. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). The Court thus confines its review of any additional evidence to the issue of irreparable harm and does not consider it as it may relate to the merits of the claims. (*See* Minute Entry for Prelim. Inj. Hr'g., Dkt. 25).

Vaught's assertions of irreparable harm are based on the untenable assumption that, in the face of the Rule, her restaurants would stop taking the tip credit altogether.[6] There is no reason to believe she or other owners would take this step, nor does the Court accept that it is the necessary consequence of the Rule's operation, particularly given the decades-long operation of the similar 80/20 guidance. Furthermore, the Court finds wholly uncredible Vaught's unsupported assertion that it would cost one million dollars across her five restaurants to comply with the Rule. (*Id.* at 74; *see* Minute Entry for Prelim. Inj. Hr'g., Dkt. 25). Pure conjecture, as the claims here appear to be, "will not suffice as support for a finding of irreparable injury." *Hunt v. Bankers Tr. Co.*, 646 F. Supp. 59, 63 (N.D. Tex. 1986) (citing *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir.1975), *reh. den.*, 522 F.2d 1280)). Thus, the Court finds Vaught's declaration is not credible and cannot suffice to support a claim of irreparable harm.

In a similar vein, DOL suggests that Plaintiffs waited too long here to seek injunctive relief, given the timing of the Rule's promulgation and the filing of this suit. (Resp., Dkt. 20, at 43). The Court does not wish to minimize the labor and time involved in preparing a lawsuit of this nature. However, with a record as devoid of detail as is currently before the Court, it is difficult to justify the delay. That Plaintiffs waited until the eve of the Rule's entry into force and still offer only meager support for their claims further detracts from the gravity of their claims.

As the Court noted at the hearing, regulations may be costly, but that does not make them unlawful. (Minute Entry for Prelim. Inj. Hr'g., Dkt. 25). On the whole, Plaintiffs' arguments and evidence of irreparable harm amount only to speculative concerns, conclusory claims, and uncredible assertions. These alone are insufficient to establish a substantial likelihood of irreparable

---

[6] To the extent that Vaught claims her restaurants will suffer from the costs of preparing for compliance with the Rule and implementing new systems to this end, (*Id.* at 74), the Court reiterates that the Rule has already gone into effect, meaning these costs should by now have been incurred and no longer be imminent. While such costs make be substantial, they are eminently calculable and, in this instance, cannot form the basis for a preliminary injunction.

harm. Indeed, "[t]he Court does not issue . . . an injunction on unsubstantiated fears of irreparable injury. Plaintiff[s] must affirmatively show a substantial threat of irreparable injury." *Henry v. Baker*, No. 300CV2046G, 2001 WL 1112441, at *2 (N.D. Tex. Sept. 13, 2001). Because Plaintiffs have failed to establish such a likelihood of harm, the Court must deny the Motion.

### III. CONCLUSION

For these reasons, **IT IS ORDERED** that Plaintiffs Restaurant Law Center and Texas Restaurant Association's Emergency Motion for a Preliminary Injunction, (Dkt. 12), is **DENIED**.

**SIGNED** on February 22, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE