UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

RESTAURANT LAW CENTER, *et al.*,

*Plaintiffs,*

v.

U.S. DEPARTMENT OF LABOR, *et al.*,

*Defendants.*

Civil Action No. 21-1106 (RP)

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## **C O N T E N T S**

*Page*

INTRODUCTION ................................................................................................................ 1

BACKGROUND .............................................................................................................. 3

    A.    Statutory Background ...................................................................... 3

    B.    Regulatory Background .................................................................. 4

        1.    The 1967 Rule ................................................................... 4

        2.    The 2020 Rule ................................................................... 8

        3.    The 2021 Rule ................................................................... 9

    C.    This Lawsuit ................................................................................. 12

STANDARDS .................................................................................................................. 12

    A.    The Administrative Procedure Act ............................................... 12

    B.    Summary Judgment ...................................................................... 14

ARGUMENT ................................................................................................................... 14

I.      THE TIP RULE IS NOT CONTRARY TO LAW. .......................................... 14

        1.    The Secretary of Labor has authority to regulate tipped employment ...................................................................... 16

        2.    The FLSA does not speak directly to the precise question of what it means to be engaged in a tipped occupation ............................................... 17

            a.    Text ........................................................................ 18

            b.    Structure and Purpose ............................................. 21

            c.    Legislative History ................................................. 23

        3.    The rule is a permissible construction of the FLSA. ................................ 25

II.     THE TIP RULE IS NOT ARBITRARY AND CAPRICIOUS. ....................... 29

CONCLUSION ................................................................................................................ 35

i

# AUTHORITIES

Cases

*Page(s)*

*Audler v. CBC Innovis Inc.*,
519 F.3d 239 (5th Cir. 2008) ................................................... 14

*Bellum v. PCE Constructors, Inc.*,
407 F.3d 734 (5th Cir. 2005) ................................................... 18

*Belt v. P.F. Chang's China Bistro, Inc.*,
401 F. Supp. 3d 512 (E.D. Pa. 2019) ......................................... 19

*BNSF Ry. Co. v. United States*,
775 F.3d 743 (5th Cir. 2015) ............................................. 13, 18

*Camp v. Pitts*,
411 U.S. 138 (1973) .......................................................... 13, 14

*Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) .......................................................... *passim*

*Citizens Coal Council v. Norton*,
330 F.3d 478 (D.C. Cir. 2003) ................................................ 13

*City of Arlington v. FCC*,
569 U.S. 290 (2013) ........................................................ 13, 25

*Exelon Wind 1, LLC v. Nelson*,
766 F.3d 380 (5th Cir. 2014) ................................................. 13

*Fast v. Applebee's Int'l, Inc.*,
638 F.3d 872 (8th Cir. 2011) ......................................... 7, 19, 26

*FCC v. Prometheus Radio Project*,
141 S. Ct. 1150 (2021) ........................................................ 34

*Garcia for Cong. v. Fed. Election Comm'n*,
22 F. Supp. 3d 655 (N.D. Tex. 2014) ........................................ 14

*Girling Health Care, Inc. v. Shalala*,
85 F.3d 211 (5th Cir. 1996) .................................................. 14

*Harris v. United States*,
19 F.3d 1090 (5th Cir. 1994) ................................................. 14

*Huawei Techs. USA, Inc. v. FCC*,
2 F.4th 421, 452 (5th Cir. 2021) ............................................. 32

*Long Island Care at Home, Ltd. v. Coke*,
551 U.S. 158 (2007)................................................................................................ 18, 20

*Marsh v. J. Alexander's LLC*,
905 F.3d 610 (9th Cir. 2018) ........................................................................... *passim*

*Medina Cty. Env't Action Ass'n v. Surface Transp. Bd.*,
602 F.3d 687 (5th Cir. 2010) .......................................................................................... 33

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......................................................................................................... 13

*Nat'l Ass'n of Home Builders v. EPA*,
682 F.3d 1032 (D.C. Cir. 2012) .................................................................................... 32

*Nevada v. Dep't of Labor*,
218 F. Supp. 3d 520 (E.D. Tex. 2016).................................................................... 27, 28

*Off. of Commc'n of United Church of Christ v. FCC*,
707 F.2d 1413 (D.C. Cir. 1983) .................................................................................... 29

*O'Neal v. Denn-Ohio, LLC*,
No. 3:19-cv-0280, 2020 WL 210801 (N.D. Ohio Jan. 14, 2020) ................................ 31

*Rafferty v. Denny's, Inc.*,
13 F.4th 1166, 1179 (11th Cir. 2021) ................................................................ 8, 27, 31

*Roberson v. Texas Roadhouse Mgmt. Corp.*,
Civ. A. No. 19-0628, 2020 WL 7265860 (W.D. Ky. Dec. 10, 2020)................................ 8, 19

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997)................................................................................................ 17, 18

*Superior Oil Co. v. FERC*,
563 F.2d 191 (5th Cir. 1977) ........................................................................................ 29

*Tesfamichael v. Gonzales*,
411 F.3d 169 (5th Cir. 2005) ........................................................................................ 29

*Tex. Oil & Gas Ass'n v. EPA*,
161 F.3d 923 (5th Cir. 1998) .......................................................................... 13, 29, 30, 31

*United Servs. Auto Ass'n v. Perry*,
102 F.3d 144 (5th Cir. 1996) ........................................................................................ 17

*United States v. Mead Corp.*,
533 U.S. 218 (2001)................................................................................................ 13, 16

*W. Tex. LTC Partners, Inc. v. Dep't of Health & Human Servs.*,
    843 F.3d 1043 (5th Cir. 2016) ........................................................... 12

**Statutes**

5 U.S.C. § 706(2) ................................................................................ 12

29 U.S.C. § 203 ............................................................................ *passim*

29 U.S.C. § 206(a) .............................................................................. 3

29 U.S.C. § 213(a)(1) .................................................................... 27, 28

42 U.S.C. § 409(a)(10)(B) ................................................................. 25

Act of Sept. 23, 1966,
    Pub. L. No. 89-601, 80 Stat. 830 (1966) ................................. *passim*

Act of July 30, 1965,
    Pub. L. No. 89-97, 79 Stat. 286 (1965) ......................................... 25

Consolidated Appropriations Act, 2018,
    Pub. L. No. 115-141, 132 Stat. 348 (2018) .......................... 4, 22, 24

Fair Labor Standards Act of 1938,
    Pub. L. No. 75-718, 52 Stat. 1060, (1938) ...................................... 3

References to Act,
    Pub. L. No. 93-259, 88 Stat. 55 (1974) ..................................... 4, 24

**Regulations**

29 C.F.R. 531.57 ................................................................................ 28

29 C.F.R. § 531.56 ........................................................................ *passim*

Exec. Order No. 12,866, Regulatory Planning and Review,
    58 Fed Reg. 51,735 (Oct. 4, 1993) ........................................ 31, 32

Exec. Order No. 13,563, Improving Regulation and Regulatory Overview,
    76 Fed. Reg. 3,821 (Jan. 18, 2011) ........................................ 31, 32

Tip Regulations Under the Fair Labor Standards Act,
    85 Fed. Reg. 86,756 (Dec. 30, 2020) ............................................ 8

Tip Regulations Under the Fair Labor Standards Act (FLSA): Delay of Effective Date,
    86 Fed. Reg. 11,632 (Feb. 26, 2021) ............................................ 9

Tip Regulations Under the Fair Labor Standards Act (FLSA); Delay of Effective Date,
86 Fed. Reg. 22,597 (Apr. 29, 2021)........................................................................... 9

Tip Regulations Under the Fair Labor Standards Act (FLSA); Partial Withdrawal,
86 Fed. Reg. 32,818 (June 23, 2021) ......................................................................... 9

Tip Regulations Under the Fair Labor Standards Act; Partial Withdrawal,
86 Fed. Reg. 60,114 (Oct. 29, 2021)................................................................... *passim*

Wage and Hour Division, Dep't of Labor,
32 Fed. Reg. 13,575 (Sept. 28, 1967) ..................................................................... 4, 5

## Legislative Materials

S. Rep. No. 89-1487 (1966) .......................................................................... 3, 23, 24

S. Rep. No. 93-690 (1974) ......................................................................... 22, 25, 34

H.R. Rep. No. 89-1366 (1966)................................................................................ 3

## Other Authorities

*Occupation*, Black's Law Dictionary (10th ed. 2014) ............................................ 20

National Restaurant Association, *Tips on Tipping* (May 13, 2021),
https://perma.cc/9QU6-6HYD ................................................................................ 8

WHD Opinion Letter FLSA-895 (Aug. 8, 1979)...................................................... 5

WHD Opinion Letter WH-502 (Mar. 28, 1980) ...................................................... 5

WHD Opinion Letter FLSA-854 (Dec. 20, 1985) ................................................. 5, 6

WHD Field Operations Handbook  Rev. 563 § 30d00(e)........................................... 6

WHD Opinion Letter FLSA 2018-27 (Nov. 8, 2018)................................................ 7

WHD FOH Rev. 767 (Feb. 15, 2019)...................................................................... 7

**INTRODUCTION**

The Fair Labor Standards Act charges the Department of Labor with ensuring that America's workers receive the wages to which they are lawfully entitled. Tipped employees, such as restaurant servers and bartenders, are among the most vulnerable workers that the Department protects, in large part because of the manner in which they may be paid. Employers can pay tipped employees a reduced direct wage of as little as $2.13 per hour and use a portion of the tips that the employee earns from customers as a credit towards the federal minimum wage, which is $7.25 per hour. This common practice is referred to as the employer taking a "tip credit." The tip credit is available to an employer only when an employee is "engaged in an occupation" in which the employee customarily and regularly earns tips as part of their income. 29 U.S.C. § 203(t).

Without regulation, the tip credit can be abused. Were employers to assign tipped employees non-tipped work that is not part of their tipped occupation—such as having a server clean bathrooms—those employees would lack the opportunity to earn tips during that time. Permitting an employer to take a tip credit for that time would effectively allow the employer to appropriate the tips that the tipped employee earns doing the work of their tipped occupation to subsidize reduced direct wages for other work. For example, rather than paying the full minimum wage to a janitor to clean the bathrooms, an employer could instead pay a server $2.13 per hour to do so and take a credit for the minimum-wage difference using the tips that the server earns at other times when the server is waiting tables.

In response to this potential for abuse, three decades ago, the Department of Labor issued guidance explaining that employers could take a tip credit only when tipped employees are performing duties that are part of their tipped occupation. That guidance created a tolerance— limited to twenty percent of the workweek—for the amount of related, non-tipped duties that tipped employees could perform before the employer would lose the ability to take a tip credit for

such duties. The guidance, which became known as the "80/20 Rule" (even though it was not actually promulgated as a regulation), has been overwhelmingly upheld by courts as an appropriate implementation of the FLSA. Then, in 2018, the Department of Labor issued updated guidance rescinding the 80/20 guidance, which met with near-universal rejection by federal courts. In 2020, the Department finalized a rule codifying its rescission of the 80/20 guidance. In 2021, however, the Department delayed that rescission and ultimately withdrew it. In its place, the Department finalized a new tip rule that essentially reestablishes by regulation the 80/20 guidance, but clarifies it and adds additional protections. This rule went into effect on December 28, 2021.

Plaintiffs brought this case and sought a preliminary injunction against the tip rule's enforcement, which the Court denied. Plaintiffs have appealed that order. Plaintiffs now move for summary judgment arguing that the tip rule is contrary to law and arbitrary and capricious. The Court should deny the motion and enter summary judgment for Defendants. Like the longstanding 80/20 guidance, the current tip rule—this time promulgated after notice and the consideration of extensive comments—is a sound exercise of the Department of Labor's authority and discretion to establish when an employee is "engaged in an occupation" in which one regularly receives tips, which is the only time an employer may take a tip credit. 29 U.S.C. § 203(t). The rule also comports with the overall purpose of the FLSA, particularly its more recent protections ensuring that employers do not appropriate employees' tips. *Id.* § 203(m). And the Department provided rational reasons for the rule: it prevents employers from abusing the tip credit by paying their employees a reduced direct cash wage when those employees are not engaged in a tipped occupation. Plaintiffs' argument that the rule is arbitrary ignores rather than confronts those reasons and fails as a result.

## BACKGROUND

### A.    Statutory Background

Congress enacted the FLSA in 1938 to correct and eliminate what it found to be "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general wellbeing of workers." Fair Labor Standards Act ("FLSA"), Pub. L. No. 75-718, § 2, 52 Stat. 1060, 1060 (1938). A key provision of the FLSA requires employers to pay their employees a minimum wage. *Id.* § 6(a), 52 Stat. at 1062 (codified as amended at 29 U.S.C. § 206(a)).

The FLSA originally exempted several industries from its minimum-wage requirements. Pub. L. No. 75-718, § 13, 52 Stat. at 1067. In 1966, however, Congress amended the FLSA to extend its protections to additional employees, including many in the restaurant industry. Pub L. No. 89-601, § 201, 80 Stat. 830, 833 (1966). In doing so, Congress confronted the question of whether tips received by certain restaurant workers from a source other than their employers (i.e., from customers) should be counted as wages and credited toward the employers' minimum-wage obligation. *See* S. Rep. No. 89-1487, at 12–13 (1966); H.R. Rep. No. 89-1366, at 19–20 (1966).

Congress's answer to this question was to permit employers to take only a partial credit toward the minimum-wage requirement with the tips received by tipped employees. Thus, the amended version of the FLSA allows an employer to pay a "tipped employee" a direct wage of only $2.13 per hour and take a credit of up to $5.12 per hour if the employee's tips are sufficient to fulfill the remainder of the current $7.25 minimum wage. *See* 29 U.S.C. § 203(m)(2)(A). The statute defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." *Id.* § 203(t). The statute does not define the term "occupation," nor does it specify what it means to be "engaged" in an

occupation. Congress authorized the Department of Labor to implement these amendments through regulations. Pub L. No. 89-601, § 602, 80 Stat. at 844.

Since 1966, the FLSA has been further amended with protections to ensure that tipped employees receive the value of the tips they earn. For example, in order to take the tip credit, an employer must inform its tipped employees of the FLSA's applicable wage provisions and ensure that "all tips received by such employee have been retained by the employee" (except where there is a permissible pooling arrangement among tipped employees). Pub. L. No. 93-259, § 13, 88 Stat. 55, 65 (1974) (codified at 29 U.S.C. § 203(m)(2)(A)(ii)). Further, since 2018, whether taking a tip credit or not, an employer of tipped employees "may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips." Pub. L. No. 115-141, § 1201(a), 132 Stat. 348, 1148 (2018) (codified at 29 U.S.C. § 203(m)(2)(B)).

### B.    Regulatory Background

#### 1.    *The 1967 Rule*

The Department of Labor's Wage and Hour Division first promulgated regulations implementing the FLSA's tip provisions the year after they were enacted. 32 Fed. Reg. 13,575 (Sept. 28, 1967). As early as that first rulemaking, the Department sought to address the problem of an employee who is "employed in a dual job"—in other words, the employee does work for which they do receive tips (such as waiting tables) and work for which they do not receive tips (such as maintenance). *Id.* at 13,580. This initial regulation stated that such an employee "is a tipped employee only with respect to his employment as a waiter" and that "no tip credit may be taken for his hours of employment in his occupation as a maintenance man." *Id.* at 13,580–81. The Department distinguished this situation from that where a server "spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes and glasses,"

concluding that such "related duties" need not themselves be "directed toward producing tips." *Id.* at 13,581 (codified at 29 C.F.R. § 531.56(e) (2020)).

Between 1979 and 1985, the Department of Labor issued three opinion letters interpreting and applying the 1967 dual jobs regulation. First, in 1979, it considered whether a restaurant employer could take a tip credit for time that a server spent preparing vegetables for the salad bar. JA001, WHD Opinion Letter FLSA-895 (Aug. 8, 1979). The Department opined that, although servers are generally employees who customarily and regularly receive tips, the employer could not take a tip credit for the specific hours when the server performed "salad preparation activities" because those activities "are essentially the activities performed by chefs." JA001.

Second, in 1980, the Department of Labor addressed a situation in which servers performed non-tipped duties such as storing condiments in a cooler, cleaning and resetting tables (including filling salt and pepper shakers), cleaning and stocking a server station, and vacuuming the carpet after the restaurant closed. JA002–03, WHD Opinion Letter WH-502 (Mar. 28, 1980). The Department concluded that, "[i]nsofar as the after-hours cleanup [described] are assigned generally to the waitress/waiter staff, we believe that such duties constitute tipped employment within the meaning of the regulation." JA 003. The Department noted, however, that it "might have a different opinion if the facts indicated that specific employees were routinely assigned, for example, maintenance-type work such as floor vacuuming." JA003.

Finally, in 1985, the Department of Labor opined about whether an employer could take a tip credit for various "salad bar and dining room set-up duties" assigned to one of two to four servers on a daily shift. JA004–06, WHD Opinion Letter FLSA-854 (Dec. 20, 1985). Citing its 1979 letter, the Department reiterated that "salad preparation activities are essentially the activities performed by chefs and no tip credit may be taken for the time spent in preparing vegetables for

the salad bar." JA005. It also reiterated, as indicated by the 1980 letter, that the "tip credit could be taken for non-salad bar preparatory work or after-hours clean-up if such duties are incidental to the waiter or waitress regular duties and are assigned generally to the waiter/waitress staff." JA005. Under the facts presented, however, the Department determined that the employer could not take a tip credit for the time spent setting up the dining room because (1) "only one waiter or waitress is assigned to perform all preparatory activities," (2) the "opening waiter or waitress' responsibilities extend to the entire restaurant rather than to the specific area or customers which they serve," and (3) "the activities performed prior to the opening of the restaurant consume a substantial portion of the waiter or waitress' workday." JA006.

In 1988, the Department of Labor's Wage and Hour Division updated its Field Operations Handbook to incorporate and refine the policy established by these three opinion letters. As revised, the Handbook permitted a tip credit for time spent in duties "related to the tipped occupation, even though such duties are not by themselves directed toward producing tips," so long as those related, non-tipped duties are "incidental" and "generally assigned." JA007, WHD Field Operations Handbook ("FOH") Rev. 563 § 30d00(e). Critically, however, the Handbook stated that where "tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." JA007. This policy, though not a regulation, became known as the "80/20 Rule" and established a substantial but limited tolerance for related, non-tipped work, recognizing that if a tipped employee performs too much non-tipped related work, the employee is no longer engaged in a tipped occupation.

In the ensuing years, the 80/20 guidance survived repeat challenges to its lawfulness by the restaurant industry. Courts of appeals in the Eighth and the Ninth Circuits deferred to the 80/20

guidance, rejecting arguments that it was contrary to the dual jobs regulation and the underlying statute. *See Marsh v. J. Alexander's LLC*, 905 F.3d 610, 625 (9th Cir. 2018) (en banc) ("The [Department of Labor's] interpretation is consistent with nearly four decades of interpretive guidance and with the statute and the regulation itself."); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 879–81 (8th Cir. 2011) (concluding that Congress had granted the Department of Labor discretion to implement 29 U.S.C. § 203(t) by regulation and that "the 20 percent threshold used by the [Department] in its Handbook is not inconsistent with § 531.56(e) and is a reasonable interpretation of the terms 'part of the time' and 'occasionally' used in that regulation.") (cleaned up).

Then, in 2018 and 2019, the Department of Labor (under the prior administration) issued an opinion letter and updated handbook rescinding its longstanding 80/20 guidance. JA008–11, WHD Opinion Letter FLSA 2018-27 (Nov. 8, 2018); JA015–16, WHD FOH Rev. 767 (Feb. 15, 2019). Under this guidance, any duties listed in the Occupational Information Network ("O*NET")—a database of descriptive occupational information published by the Department of Labor's Employment and Training Administration—would be considered "directly related to the tip-producing duties" of an occupation, and no limitation would be placed on the amount of time employees spent performing those potentially non-tipped duties, so long as they were performed "contemporaneously with" or "for a reasonable time immediately before or after" the employee's duties involving direct service to customers. JA010–11, WHD Opinion Letter, FLSA2018-27 at 4.[1] The opinion letter did not specify what would constitute a "reasonable time."

---

[1]     The 2018 opinion letter reissued an opinion letter originally dated on January 16, 2009, which had briefly rescinded the 80/20 guidance. 86 Fed. Reg. 60,114, 60,117 (Oct. 29, 2021). The 2009 opinion letter was quickly withdrawn on March 2, 2009, and the Department of Labor returned to the 80/20 guidance until 2018. *Id.*

In private litigation by employees, courts largely refused to defer to the 2018 and 2019 guidance and instead continued to apply a twenty-percent tolerance to related duties, as set forth in the 80/20 guidance. *See Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1179 (11th Cir. 2021) (concluding that the 2018 opinion letter is not a reasonable interpretation of the 1967 regulation, declining to defer to it, and instead applying a twenty-percent limitation on the hours that a tipped employee may perform non-tipped related tasks); *Roberson v. Texas Roadhouse Mgmt. Corp.*, Civ. A. No. 19-0628, 2020 WL 7265860, at *6 (W.D. Ky. Dec. 10, 2020) (joining "the majority of other district courts in refusing to grant deference" to the 2018 opinion letter); *see also* Nat'l Rest. Ass'n, *Tips on Tipping* (May 13, 2021), https://perma.cc/9QU6-6HYD (noting that, even prior to the challenged rule, the "80/20 Rule" was applied to "prohibit[] restaurants from taking a tip credit for time an employee spends on side work tasks—such as rolling silverware or setting up for a shift—if that time exceeds 20% of the employee's working time").

## 2.    *The 2020 Rule*

In late 2020, and in the face of courts—almost without exception—refusing to defer to the 2018 and 2019 guidance, the Department of Labor finalized a regulation that would largely codify its opinion letter rescinding the 80/20 guidance. 85 Fed. Reg. 86,756 (Dec. 30, 2020). This 2020 final rule amended 29 C.F.R. § 531.56(e) to provide that

> an employer may take a tip credit for all non-tipped duties an employee performs that meet two requirements. First, the duties must be related to the employee's tipped occupation; second, the employee must perform the related duties contemporaneously with the tip-producing activities or within a reasonable time immediately before or after the tipped activities.

*Id.* at 86,767. The final rule also stated that a non-tipped duty would be presumed to be related to a tip-producing occupation if it is listed as a task of that occupation in O*NET. *Id.* at 86,771. The effective date for the final rule was March 1, 2021. *Id.* at 86,756.

8

3.     *The 2021 Rule*

After a change in administration, the Department of Labor extended the effective date of the 2020 rule to December 31, 2021. 86 Fed. Reg. 11,632 (Feb. 26, 2021) (extending the effective date to April 30, 2021); 86 Fed. Reg. 22,597 (Apr. 29, 2021) (extending the effective date for the dual jobs part of the rule again to December 31, 2021). On June 23, 2021, the Department issued a notice of proposed rulemaking to withdraw the 2020 rule and reaffirm limits on non-tipped work, with improvements to the prior 80/20 guidance. 86 Fed. Reg. 32,818 (June 23, 2021). The Department finalized that rule on October 29, 2021, after making significant adjustments in response to comments from the restaurant industry and others. 86 Fed. Reg. 60,114 (Oct. 29, 2021).

The 2021 final rule essentially reinstates and adds to the 80/20 guidance and clarifies its application through new examples. Prior to the 2021 rule, § 531.56(e) read in full as follows:

> **Dual jobs**. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56 (2020). The final rule retains the longstanding requirement that, when an individual is employed in both a tipped occupation and a non-tipped occupation, a tip credit is available to an employer only for the hours the employee spends working in the tipped occupation. The final rule also removes the exemplary tasks from subsection (e); revised examples are now included in and conform to a new subsection (f). The revised subsection reads in full as follows:

9

> **Dual jobs**. In some situations an employee is employed in dual jobs,
> as, for example, where a maintenance person in a hotel also works
> as a server. In such a situation if the employee customarily and
> regularly received at least $30 a month in tips, for the employee's
> work as a server, the employee is engaged in a tipped occupation
> only when employed as a server. The employee is employed in two
> occupations, and no tip credit can be taken for the employee's hours
> of employment in the occupation of a maintenance person.

86 Fed. Reg. at 60,157 (codified at 29 C.F.R. § 531.56(e)).

The final rule also adds subsection (f), which largely codifies the 80/20 guidance, adds a new 30-minute limitation, and clarifies the application of these provisions through new examples. Subsection (f) states that an employee is "engaged in a tipped occupation when the employee performs work that is part of the tipped occupation" and that an employer "may only take a tip credit for work performed by a tipped employee that is part of the employee's tipped occupation." 86 Fed. Reg. at 60,157 (codified at 29 C.F.R. § 531.56(f)). The subsection then defines "work that is part of the tipped occupation" as (1) work that "produces tips" and (2) work that "directly supports tip-producing work, provided the directly supporting work is not performed for a substantial amount of time." 86 Fed. Reg. at 60,157 (codified at 29 C.F.R. § 531.56(f)(1)).

The regulation broadly defines work that "produces tips" as "[a]ny work performed by a tipped employee that provides service to customers for which the tipped employee receives tips," and includes as examples a server "providing table service, such as taking orders, making recommendations, and serving food and drink" and a bartender "making and serving drinks, talking to customers at the bar and, if the bar includes food service, serving food to customers." 86 Fed. Reg. at 60,157 (codified at 29 C.F.R. § 531.56(f)(2)).

The regulation defines "directly supporting work" as work "performed by a tipped employee in preparation of or to otherwise assist tip-producing customer service work," and includes as examples the following tasks, "when they are performed in preparation of or to

10

otherwise assist tip-producing customer service work and when they do not provide service to customers": a server's "dining room prep work, such as refilling salt and pepper shakers and ketchup bottles, rolling silverware, folding napkins, sweeping or vacuuming under tables in the dining area, and setting and bussing tables" and a bartender "slicing and pitting fruit for drinks, wiping down the bar or tables in the bar area, cleaning bar glasses, arranging bottles in the bar, fetching liquor and supplies, vacuuming under tables in the bar area, cleaning ice coolers and bar mats, making drink mixes, and filling up dispensers with drink mixes." 86 Fed. Reg. at 60,157 (codified at 29 C.F.R. § 531.56(f)(3)).

As noted, an employer can take a tip credit for time spent on such directly supporting work so long as it is not performed for a substantial amount of time. The final rule defines a substantial amount of time as work that "exceeds 20 percent of the hours worked during the employee's workweek" or that "for any continuous period of time exceeding 30 minutes." 86 Fed. Reg. at 60,158 (codified at 29 C.F.R. § 531.56(f)(4)).

Finally, the rule states that work which is not part of a tipped occupation includes "any work that does not provide service to customers for which tipped employees receive tips, and does not directly support tip-producing work," including, for example, a server "[p]reparing food, including salads, and cleaning the kitchen or bathrooms" and a bartender "[c]leaning the dining room or bathroom." 86 Fed. Reg. at 60,158 (codified at 29 C.F.R. § 531.56(f)(5)). The final rule specifies that an employer may not take a tip credit for employee time spent on work that is not part of the tipped occupation. *Id.*

The final rule took effect on December 28, 2021. 86 Fed. Reg. at 60,114.

**C.      This Lawsuit**

The final rule was published on October 29, 2021. 86 Fed. Reg. 60,114. Plaintiffs brought this action more than one month later, on December 3, 2021. ECF No. 1. Several weeks after that, on December 20, 2021, Plaintiffs moved for a preliminary injunction, ECF No. 12, which the Court denied upon concluding that Plaintiffs failed to show irreparable harm, ECF No. 27. The Court noted that it was "skeptical of Plaintiffs' likelihood of success on the merits," but assumed for purposes of adjudicating the preliminary injunction motion that Plaintiffs were likely to succeed on the merits. *Id.* at 4 n.3. Plaintiffs have appealed that decision. ECF No. 28.

Plaintiffs filed their motion for summary judgment on April 22, 2022, largely repeating the merits arguments from their motion for a preliminary injunction.[2] Defendants now respectfully oppose that motion and cross-move for summary judgment.

**STANDARDS**

**A.      The Administrative Procedure Act**

Under the Administrative Procedure Act ("APA"), agency "actions, findings, and conclusions" must be sustained unless they are "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law' or 'unsupported by substantial evidence.'" *W. Tex. LTC Partners, Inc. v. Dep't of Health & Human Servs.,* 843 F.3d 1043, 1046 (5th Cir. 2016) (citation omitted); *see also* 5 U.S.C. § 706(2)(A)–(E).

Courts review an agency's interpretation of a statute that it administers under the two-step process set forth in *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837

---

[2]      There appear to be only three significant differences between the "likelihood-of-success" section in Plaintiffs' motion for a preliminary injunction and Part III of the argument section of their summary judgment brief: (1) the addition of two citations at the end of Part III.C.2 on page 20; (2) the addition of two paragraphs of material on pages 22 and 23; and (3) the addition of the first sentence of Part III.D.2.a.

(1984). In some cases, courts begin with what is called "step zero," which "asks whether Congress delegated authority to make interpretations carrying the force of law." *Exelon Wind 1, LLC v. Nelson*, 766 F.3d 380, 406 n.3 (5th Cir. 2014) (citing *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001)). At *Chevron* step one, a court must first "ask 'whether Congress has directly spoken to the precise question at issue," applying the "'traditional tools of statutory interpretation,' including 'text, structure, purpose, and legislative history.'" *BNSF Ry. Co. v. United States*, 775 F.3d 743, 751 (5th Cir. 2015) (first quoting *Chevron*, 467 U.S. at 842 n.8, then *Citizens Coal Council v. Norton*, 330 F.3d 478, 481 (D.C. Cir. 2003)). If Congress's intent is clear, "that is the end of the matter" and the Court "must give effect to the unambiguously expressed intent of Congress." *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013) (quoting *Chevron*, 467 U.S. at 842–43). "But 'if the statute is silent or ambiguous with respect to the specific issue," the analysis proceeds to step two, where "'the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" *Id.* (quoting *Chevron*, 467 U.S. at 843).

"An agency rule is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 933 (5th Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "If the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld." *Id.* at 934. A court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *State Farm*, 463 U.S. at 43 (citation omitted). "[T]he focal point

for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

### B.      Summary Judgment

Summary judgment is the appropriate mechanism to resolve cases brought under the APA. *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214–15 (5th Cir. 1996). "When asked to review an agency action or determination under the APA, the district court acts not as a fact finder, but reviews the record compiled before the administrative agency to determine whether the agency's action was arbitrary or capricious." *Garcia for Cong. v. Fed. Election Comm'n*, 22 F. Supp. 3d 655, 658 (N.D. Tex. 2014) (citation omitted). "[T]he administrative record is reviewed to determine whether the challenged action was arbitrary and capricious." *Harris v. United States*, 19 F.3d 1090, 1096 (5th Cir. 1994).

## ARGUMENT

Plaintiffs claim that the rule is both contrary to the FLSA (Count I), Compl, ¶¶ 108–13, ECF No. 1, and arbitrary and capricious (Count II), *id.* ¶¶ 114–20. Both claims fail.[3]

## I.      THE TIP RULE IS NOT CONTRARY TO LAW.

The FLSA defines a "tipped employee" for whom an employer may take a tip credit as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). Plaintiffs contend that the Department of Labor's 2021 tip rule is inconsistent with the plain language of this provision because its "application of

---

[3]      Plaintiffs' complaint also alleges that the tip rule violates constitutional separation-of-powers principles (Count III). Compl. ¶¶ 121–27. Plaintiffs have not, however, raised that claim in their summary judgment brief, nor did they raise it in their motion for a preliminary injunction. They have therefore waived the issue. *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008) ("A party waives an issue if he fails to adequately brief it.") (citation omitted)).

the tip credit depends upon whether specific job duties directly and immediately produce tips" rather than "the job as a whole." Pls.' Mot. for Summ. J. ("Pls.' Br.") at 15–16, ECF No. 36.[4] In Plaintiffs' view, so long as an employee's "job as a whole" is that of a tipped employee, the employer make take a tip credit for any work that employee performs. This reading would, for example, entitle a restaurant to take a tip credit for a server—paying that employee a direct cash wage as low as $2.13 an hour—even when the server works an entire shift cleaning bathrooms, mowing the lawn, and washing dishes, without performing any tipped work at all.

The plain text of the statute dictates no such thing. It broadly describes a "tipped employee" as one who is "engaged in an occupation" in which that employee receives the requisite threshold of tips. 29 U.S.C. § 203(t). Congress did not specify what it means to be "engaged in" the requisite "occupation." Instead, it provided the Department of Labor with the authority and discretion to promulgate regulations interpreting when an employee is engaged in a tipped occupation in a way that prevents abuse of that provision. Pub. L. No. 89-601, § 602, 80 Stat. at 844.

The Court should therefore reach step two of the *Chevron* analysis. The rule survives at that step because the Department of Labor acted well within the FLSA's terms—and in fulfillment of its purposes—in generally prohibiting employers from taking a tip credit for work that is not part of the tipped occupation and defining work that is part of the tipped occupation to include work that produces tips and work that directly supports tip-producing work so long as it is not substantial. It would defy any understanding of what it means to be "engaged in" an "occupation" that receives tips to construe that language in a way that would, as Plaintiffs' formulation does,

---

[4]     Page references to Plaintiffs' brief refer to the numbers at the bottom center of the pages, not to the page numbers generated by the ECF system.

deem a server to be so engaged when the server spends an entire shift cleaning, mowing, and dishwashing, while performing no duties that actually produce tips.

        1.     *The Secretary of Labor has authority to regulate tipped employment.*

Plaintiffs lead with the contention that Congress has not authorized the Secretary of Labor to promulgate any regulations whatsoever regarding the FLSA's provisions on tipped employees, which they primarily characterize as a *Chevron* "step zero" question. Pls.' Br. at 13–14. But clear statutory language authorizes the Secretary to do exactly that.

When Congress passed the FLSA amendments about tipped employees in 1966, it explicitly "authorized [the Secretary of Labor] to promulgate necessary rules, regulations, or orders with regard to [those] amendments." Pub. L. No. 89-601, § 602, 80 Stat. at 844. The Department of Labor cited this clearly applicable authority (among others) in promulgating the final rule at issue here. 86 Fed. Reg. at 60,157. Thus, Congress clearly "delegated authority to the agency generally to make rules carrying the force of law" and the final rule "was promulgated in the exercise of that authority." *Mead*, 533 U.S. at 226–27; *see also Marsh*, 905 F.3d at 621 (noting that "it is beyond question that the [Department of Labor] promulgated the dual jobs regulation, 29 C.F.R. § 531.56, in the exercise of its congressionally delegated authority" and citing Public Law No. 89-601). Plaintiffs inexplicably ignore this obvious source of authority, which forecloses their argument.

Plaintiffs' argument also confuses a so-called *Chevron* step-zero question for what is properly a *Chevron* step-two question. Plaintiffs highlight the Department of Labor's contention in the preamble of the final rule that Congress, by providing no specific definition, authorized the agency to determine what it means to be "engaged in an occupation" that customarily and regularly receives tips as part of their income. Pls.' Br. at 22 (citing 86 Fed. Reg. at 60,114). Plaintiffs argue

that the final rule does not in fact determine what it means to be "engaged in an occupation" that customarily and regularly receives tips, but instead determines what it means to be "engaged in a tipped occupation," which Plaintiffs believe to be a materially different concept. *Id.* at 14. At bottom, however, this is an assertion that the final rule is not "based on a permissible construction of the statute," which is a question addressed at the second step of the *Chevron* analysis, where deference is due to the agency. *See* 467 U.S. at 843.

Plaintiffs' argument is also textually untenable. The Department of Labor's use of the term "tipped occupation" in the regulation does not "supplant" the statutory definition with a "completely different term." Pls.' Br. at 14, 19–20. In fact, there is no material difference in meaning between the clause modifying the word "occupation" in the statute ("in which [an employee] regularly and customarily receives more than $30 a month in tips") and the participle adjective modifying the word "occupation" in the regulation ("tipped"). They are simply two different grammatical ways of expressing the same general concept—an occupation that involves the regular receipt of tips. Thus, Plaintiffs' cursory insistence—without any reasoned analysis— that the statute's grant of authority to regulate occupations "in which [an employee] customarily and regularly receives more than $30 a month in tips" somehow implicitly deprives the Department of authority to regulate "tipped" occupations is baseless.

2.      *The FLSA does not speak directly to the precise question of what it means to be engaged in a tipped occupation.*

Proceeding to step one of the *Chevron* analysis, the Court should first ask "whether Congress has directly spoken to the precise question at issue" or whether the statute is ambiguous. *Chevron*, 467 U.S. at 842. A statute is ambiguous if it is susceptible to more than one reasonable interpretation or more than one accepted meaning. *United Servs. Auto Ass'n v. Perry*, 102 F.3d 144, 146 (5th Cir. 1996). Statutory construction begins with the language of the statute, "the

specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). The Court may also consider the statute's purpose and its legislative history to ascertain Congress's intent. *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 739 (5th Cir. 2005).

As noted, there is no question that Congress has directly authorized the Department of Labor to promulgate regulations implementing the 1966 FLSA amendments regarding tipped employees. *See* Pub. L. No. 89-601, § 602, 80 Stat. at 844; *see also Marsh*, 905 F.3d at 621. In doing so, Congress empowered the Department to "work out the details" of the amendment's broad terms. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165 (2007) (interpreting effectively identical authorizing language in amendments made to the FLSA in 1974). Congress did not, however, speak directly to what it means to be "engaged in an occupation" that customarily and regularly receives the threshold amount of tips, 29 U.S.C. § 203(t); and it certainly did not do so in a way that compels the Department of Labor to disregard the actual duties performed by the employee and focus solely on the "job as a whole." This conclusion stems from the FLSA's "text, structure, purpose and legislative history.'" *BNSF Ry.*, 775 F.3d at 751 (quotation marks omitted).

    a.    Text

The text of the statute contains ambiguities that the Department of Labor is entrusted to clarify through regulation. Again, it broadly defines a "[t]ipped employee" as one who is "engaged in an occupation" that customarily and regularly receives the threshold amount of tips. 29 U.S.C. § 203(t). As numerous courts have recognized, the ambiguity in this statutory language requires deference to the Department of Labor's regulations setting boundaries on when an employee is and is not "engaged" in the requisite type of "occupation." *See Marsh*, 905 F.3d at 621–23 ("Neither the plain language of the statute nor its legislative history suggest—much less clearly

demonstrate—that section 203(t) is unambiguous."); *Fast*, 638 F.3d at 876–77 (noting that "occupation" is not defined in 29 U.S.C. § 203(t) and deferring to the Department of Labor's implementation of that provision in the prior version of 29 C.F.R. § 531.56(e)); *Roberson*, 2020 WL 7265860, at *4 ("Congress explicitly invited further regulation as to its new definition of the term 'tipped employee[.]'"); *Belt v. P.F. Chang's China Bistro, Inc.*, 401 F. Supp. 3d 512, 527 (E.D. Pa. 2019) ("Because the statute does not define 'engaged in an occupation,' Congress has not spoken to the precise question at issue and the statutory language is ambiguous.").

Notwithstanding the breadth of the statutory language—and against the weight of this authority—Plaintiffs insist that the words "engaged" and "occupation" in the statute unambiguously dictate that the Department of Labor permit employers to take a tip credit and pay an employee a reduced direct wage based solely on the employee's "job as a whole," while ignoring the "relative mix of specific tasks" performed by the employee. Pls.' Br. at 16.

The dictionary definitions offered by Plaintiffs do not come close to dictating that result. In fact, they fully support the Department of Labor's approach. The most applicable parts of the definitions of the word "occupation" are: "the principal business of one's life," App'x of Evid. ISO Pls.' Mot. for Summ. J., ECF No. 37 at 80,[5] "one's usual or principal work or business," *id.* at 85, "that which principally takes up one's time, thought, and energies; especially one's regular business or employment," *id.* at 90, and the "particular business, profession, trade, or calling which engages [an] individual's time and efforts, employment which one regularly engages or vocation of his life," *id*. These definitions establish the uncontroversial propositions that occupations are distinct—i.e., "particular"—and involve different sets of associated activities—i.e., "usual,"

---

[5]     Page numbers following an ECF docket number are to the page numbers generated by the ECF system.

"principal," or "regular" "work" or "business." Thus, contrary to Plaintiffs' argument, a specific "mix of tasks" (i.e., the "work" or "business") is key to defining an occupation. The en banc Ninth Circuit recognized as much in rejecting an argument highly similar to the one advanced by Plaintiffs here. *See Marsh*, 905 F.3d at 629 ("We find similarly unpersuasive Defendants' contention that the Guidance's focus on duties is 'patently inconsistent' with the dual jobs regulation's 'occupation-based analysis.' Defendants' argument rests on an artificial distinction between occupations and duties. One cannot define the former without some reference to the latter.") (citing *Occupation,* Black's Law Dictionary (10th ed. 2014) (defining "occupation" to mean "an activity or pursuit in which a person engages")).

The statute refers to a distinct type of "occupation": an occupation in which the employee customarily and regularly receives tips as part of their income. 29 U.S.C. § 203(t). And it specifies that an employee is not a "tipped employee" for which an employer may take a tip credit unless the employee is "engaged in" (i.e., "busy or occupied" with, ECF No. 37 at 84) such a tipped occupation. 29 U.S.C. § 203(t). The statute does not specify, however, the particular work associated with such an occupation. Nor does it clarify how to tell whether an employee is "engaged in" such work. Thus, the statute leaves it to the Department of Labor to "work out [these] details," *Long Island Care at Home*, 551 U.S. at 167, of precisely what it means to be "engaged in an occupation" where one regularly receives tips. And the plain meaning of the statute supports looking to specific job duties in making that determination.

In the final rule, the Department of Labor reasonably determined that an employee is engaged in an occupation in which that employee customarily and regularly receives tips is work that produces tips and work that directly supports tip-producing work, so long as the directly supporting work is not performed for a substantial amount of time. 86 Fed. Reg. at 60,157–58.

Defining a tipped occupation in terms of the actual work associated with a tipped occupation is fully in line with the dictionary definitions of "occupation" and "engaged." It specifies the "usual or principal work or business," ECF No. 37 at 85, of a tipped occupation and asks whether the employee is "busy or occupied," *id.* at 84, in that work or business for the time that the employer is taking a tip credit. The language of the statute supports this approach.

<blockquote>b.      Structure and Purpose</blockquote>

The structure and purpose of the FLSA also contradict Plaintiffs' reading of the statute and support the Department of Labor's approach in the tip rule. Under Plaintiffs' reading, the FLSA unambiguously entitles a restaurant employer to take a tip credit for any and all work that it instructs an employee whom it labels a tipped employee to perform, regardless of whether or not that work produces tips or directly supports tip-producing work. This would mean that a restaurant could use the tips earned by a server during one shift to subsidize a reduced direct cash wage to that server of as low as $2.13 an hour for a separate shift in which the employee works the entire time cleaning bathrooms, mowing the lawn, and washing dishes, without performing any tip-producing work at all.

Such a result would undermine a key purpose of the FLSA's tip provisions as a whole, which is to ensure that tipped employees who are paid a reduced direct wage receive the value of the tips they earn from tip-producing work and to forbid employers from appropriating tipped employees' tips for themselves. The FLSA specifically prohibits employers from relying upon a tip credit for a tipped employee "unless . . . all tips received by such employee have been retained by the employee," except where those tips are pooled with other traditionally tipped employees. 29 U.S.C. § 203(m)(2)(A). In other words, when an employer takes a tip credit and therefore pays a reduced cash wage to an employee engaged in a tipped occupation, the employer cannot use the

employee's tips to subsidize work performed by employees in non-tipped occupations.  This provision was added in 1974 upon a finding that "the tipped employee should have protection to ensure the fair operation" of the tip-credit provision and to "make clear the original Congressional intent that an employer could not use the tips of a 'tipped employee' to satisfy more than" the permitted amount of the FLSA's minimum wage. S. Rep. No. 93-690, at 42–43 (1974). Expanding these protections even further, a 2018 amendment to the FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, § 1201(a), 132 Stat. 348, 1148 (2018) (codified at 29 U.S.C. § 203(m)(2)(B)).

Plaintiffs' reading of the "tipped" employee definition would undermine the purpose of these statutory protections by allowing employers to effectively use the tips an employee earns while performing tip-producing work to subsidize reduced direct cash wages paid to that employee while performing extended work that neither produces tips nor directly supports tip-producing work. The Department of Labor's approach, by contrast, ensures that the FLSA's protections for tipped employees are fulfilled and that tipped employees do not have the value of their tips diluted by being paid a reduced direct wage while performing substantial work that does not produce tips.

Plaintiffs contend that the tip rule runs afoul of the FLSA's "structure and overall statutory scheme" because it would effectively eliminate the phrase "in which he customarily and regularly receives more than $30 a month in tips." Pls.' Br. at 11, 16 (quoting 29 U.S.C. § 203(t)). To the contrary, the Department of Labor's approach is consistent with that tip-related modification of the term "occupation." As explained above, the tip rule explains what it means to be "engaged" in an "occupation" that regularly receives tips. It provides that being engaged in such an occupation

means performing work that is part of the tipped occupation, including tip-producing work that provides service to customers for which the tipped employee receives tips and work that directly supports tip-producing work so long as it is not performed for a substantial amount of time. Plaintiffs' insistence that the phrase "in which he customarily and regularly receives at least $30 a month in tips" somehow demands a "binary" approach whereby a server, simply by virtue of sometimes working as a server, must always be deemed to be engaged in a tipped occupation—regardless whether they are actually performing the work of a tipped employee—finds no support in the statutory structure.

c.     Legislative History

In an attempt to buttress their atextual reading of that statute, Plaintiffs rely on Senate committee reports written in connection with the 1966 amendments to the FLSA, which added the definition of "tipped employee," and legislative history accompanying the 1974 amendments, which made no changes to the definition of "tipped employee" whatsoever. Notwithstanding Plaintiffs' arguments, and as one court has already held, "the FLSA's legislative history does not evince an unambiguous congressional intention to treat employees as tipped employees, regardless of their tasks or time spent on untipped tasks." *Marsh*, 905 F.3d at 622 (internal quotation marks omitted & citation omitted).

Plaintiffs first note that the Senate report accompanying the 1966 amendments states that the tip-credit provisions are "sufficiently flexible to permit the continuance of existing practices with respect to tips[]" and "provide enough flexibility to account for a practice as inconsistent as tipping." Pls.' Br. at 17 (citing S. Rep. No. 89-1487, at 12–13 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3002, 3014, 3015). But Plaintiffs ignore the context of these statements. The "existing practices" referred to in the report relate to the actual handling of tips, as shown by the

examples, not the payment of a reduced wage for work that is not part of a tipped occupation. Moreover, the sentiments expressed are antiquated. The report states that the amendments would sustain the practice of an employer confiscating all of an employee's tips as receipts and paying that employee a full minimum wage. But that is no longer permissible following the 2018 amendments, which prohibit an employer from keeping an employee's tips regardless of whether or not the employer takes a tip credit. Pub. L. No. 115-141, § 1201, 132 Stat. 348, 1148 (2018) (codified at 29 U.S.C. § 203(m)(2)(B)). The report also states that the 1966 amendment would broadly permit tipped employees to pool tips with other employees. S. Rep. No. 89-1487, at 12. But subsequent amendments require employers who take a tip credit to limit tip pools to employees who traditionally receive tips. *See* Pub. L. No. 93-259, § 13, 88 Stat. 55 (1974). And the "flexibility" mentioned does not refer to flexibility for an employer to take a tip credit for work outside the tipped occupation, but rather for an employee to receive the full minimum wage from an employer during periods where the employee's tips are insufficient to equal or exceed the full minimum wage. S. Rep. No. 89-1487, at 13.

Plaintiffs also note that the Senate report for the 1966 amendments describes the definition of a "tipped employee" as "analogous to the reporting requirement for a tipped employee under the provisions of the Social Security Act of 1965." Pls.' Br. at 18 (quoting S. Rep. No. 89-1487, at 12). Plaintiffs imagine that this cross-reference somehow demands a "binary" approach whereby employees with certain job titles must be deemed to be always "engaged" in a tipped "occupation," regardless of whether or not they are performing the work of a tipped occupation. But the reference to the Social Security Act does not support this conclusion; it simply acknowledges that the $20 monthly minimum tip threshold in the original definition of "tipped employee" is the same as the $20 monthly threshold for reportable cash tips in the Social Security Act. *Compare* Pub. L. No.

24

89-601, § 101(b), 80 Stat. 830, 830 (1966) (codified as amended at 29 U.S.C. § 203(t)) *with* Act of July 30, 1965, Pub. L. No. 89-97, § 313, 79 Stat. 286, 382 (1965) (codified at 42 U.S.C. § 409(a)(10)(B)).

The legislative history surrounding the 1974 amendments also fails to advance Plaintiffs' position. Plaintiffs first appear to claim that a Senate committee report defines an "occupation" in terms of a job title and not in terms of regular work or business activities. Pls.' Br. at 19. But the passage cited by Plaintiffs addresses which employees may participate in a traditional tip pool under provisions added to the FLSA in connection with that report, not how to determine whether an employee is a tipped employee for purposes of the tip credit. S. Rep. No. 93-690, at 43 (1974). For this reason, the Ninth Circuit has rejected Plaintiffs' distorted reading of this committee report. *See Marsh*, 905 F.3d at 622 (noting that "the legislation accompanying the 1974 report did not make any changes to [29 U.S.C. §] 203(t)").

### 3. *The rule is a permissible construction of the FLSA.*

At the second step of the *Chevron* analysis, the Court considers whether the rule "is based on a permissible construction of the statute." *City of Arlington*, 569 U.S. at 296 (quoting *Chevron*, 467 U.S. at 843). For all the reasons detailed above, it clearly is: It gives content to the statutory ambiguity about what it means to be "engaged in an occupation" in which one regularly receives tips. *See supra* pp. 18–21 (citing 29 U.S.C. § 203(t)). As the final rule recognizes, when a tipped employee performs a substantial amount of directly supporting work that does not itself produce tips, they cease to be "engaged" in a tipped "occupation." *See, e.g.,* 86 Fed. Reg. at 60,115. It also fits with the statutory purpose of ensuring that tipped employees who are paid a reduced direct wage receive the value of their tips and that employers do not keep an employee's tips "for any purposes." *See supra* pp. 21–23 (citing 29 U.S.C. § 203(m)(2)(B)).

25

Indeed, in previous cases, courts of appeals have upheld the Department of Labor's prior 80/20 guidance which, similar to the tip rule at issue here, is based on the idea that employers may only take a tip credit for work that is directed towards producing tips and for a quantitatively limited amount of other work related to the tipped occupation. First, in *Fast v. Applebee's International, Inc.*, the Eighth Circuit considered "whether servers and bartenders are 'engaged' in [tipped] occupations when Applebee's requires them to perform duties that do not directly result in a tip." 638 F.3d 872, 876 (8th Cir. 2011). Similar to Plaintiffs here, Applebee's argued that "the statute is focused on the occupation, not the specific duties performed, such that it can take the tip credit for the entirety of a server's or bartender's shift, as long as the employee receives sufficient tips during the shift to make up the difference between $2.13 per hour and $7.25 per hour, regardless of how much time the employee spends performing tip-producing duties." *Id.* The court roundly rejected that argument, concluding instead that the twenty-percent tolerance on related duties was a permissible construction of what it means to be "engaged in an occupation" that customarily and regularly receives tips. *Id.* at 879.

Next, *Marsh v. J. Alexander's LLC* was a group of fourteen consolidated cases in which servers and bartenders alleged that their respective employers "abused the tip credit provision by paying them the reduced tip credit wage and treating them as tipped employees when they were engaged in either (1) non-tipped tasks unrelated to serving or bartending, such as cleaning toilets; or (2) non-incidental tasks related to serving or bartending, such as hours spent cleaning and maintaining soft drink dispensers in excess of 20% of the workweek." 905 F.3d at 615. Like the Eighth Circuit in *Fast*, the en banc Ninth Circuit concluded that the Department of Labor's 80/20 guidance permissibly implemented the ambiguous term "occupation" in the definition of "tipped employee." *Id.* at 624. The court also observed that allowing employers to use the tip credit as the

Plaintiffs here seek to do "effectively makes tips—intended as gifts to servers for their service—payments to employers instead, who use these tips to minimize their obligations to pay employees the full minimum wage for time spent working in a non-tipped occupation." *Id.* at 615–16. That is precisely what the current tip rule prevents.

Finally, in the more recent case *Rafferty v. Denny's, Inc.*, a server claimed that her employer required her to perform duties unrelated to serving customers, like cleaning refrigerators and mopping, and duties related to serving tables but that do not produce tips, such as cleaning and stocking drink stations. 13 F.4th at 1170. At the time of the court's opinion, the Department of Labor had rescinded the 80/20 guidance with the 2018 opinion letter. *Id.* at 1176. The court declined to defer to the opinion letter, however, concluding that it conflicted with the version of the dual jobs regulation then in effect and that its dependence on O*NET—which simply "asks employees what duties their employers are requiring them to perform"— to ascertain duties related to tipped occupations "creates a risk that unlawful practices will become entrenched in high-violation industries." *Id.* at 1185 (citation omitted). The court then concluded that a twenty-percent tolerance on related, non-tipped duties was the most appropriate application of the statute and regulation, adding that "the dividing line between related and unrelated duties falls where untipped duties no longer directly support tipped duties," and applied this limitation to the case at hand. *Id.* at 1188–90.

Plaintiffs fail to address these highly relevant cases. Instead, against this tide of authority, Plaintiffs rely on a district court case that has nothing to do with tipped employees. Pls.' Br. at 21–22 (citing *Nevada v. Dep't of Labor*, 218 F. Supp. 3d 520 (E.D. Tex. 2016)). The *Nevada* case dealt with an overtime-pay provision, which exempts "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to

time by regulations of the Secretary [of Labor]).” 29 U.S.C. § 213(a)(1). The district court preliminarily enjoined a Department of Labor rule that it said defined such a capacity in a way that gave too much weight to the employee’s salary level, concluding that the words “executive, administrative, or professional” demanded principally a duties-based inquiry. *Nevada*, 218 F. Supp. 3d at 529. But whether the distinct rule in that case comported with the distinct statutory language at issue says nothing about the propriety of the rule challenged in this case.

Plaintiffs also rely on a two-judge dissent from the en banc opinion in *Marsh*, which they say sheds light on the definition of “tipped employee” in 29 U.S.C. § 203(t). Pls.’ Br. at 21. To the contrary, Judge Ikuta was not considering “the statutory term ‘occupation,’” *id.*; rather, she was discussing the term “occupation” as used in the prior dual jobs regulation and considering whether the Department of Labor’s twenty-percent tolerance, set forth in subregulatory guidance, was an interpretive rule based on that regulation or a legislative rule requiring notice and comment, *Marsh*, 905 F.3d at 645 (Ikuta, J., dissenting). In any event, the two-judge dissent is not persuasive, and its reasoning was convincingly rejected by the eleven-judge en banc majority, which—like every other circuit court to have considered the issue—concluded that the 80/20 guidance is an appropriate implementation of the FLSA. *Id.* at 624.

Finally, Plaintiffs argue that the statute’s $30 tip threshold indicates that Congress intended employers to avail themselves of the tip credit for employees who spend as little as “an hour or two” each month earning tips. Pls.’ Br. at 22. Plaintiffs refer to the requirement that a tipped employee be in an occupation “in which he customarily and regularly receives more than $30 a month in tips.” 29 U.S.C. § 203(t). This condition ensures that the tip credit may not be taken at all for employees for whom tips are not a sufficiently significant part of their income or who only occasionally receive tips—for instance, at Christmas. *See* 29 C.F.R. 531.57. But this threshold is

not all there is to the statute. It also plainly limits the tip credit to employees who are "engaged in an occupation" that receives the threshold of tips. If the $30 threshold were the full expression of Congress's intent, as Plaintiffs argue, there would be no need of the phrase "engaged in an occupation." The Court should read the statute in a way that gives meaning to all of its phrases. *See Tesfamichael v. Gonzales*, 411 F.3d 169, 175 (5th Cir. 2005) ("It is axiomatic that courts should strive to give operative meaning to every word in a statute.").[6]

## II.   THE TIP RULE IS NOT ARBITRARY AND CAPRICIOUS.

Plaintiffs also argue that the tip rule is arbitrary and capricious. Pls.' Br. at 23–29. *First*, they accuse the Department of failing to conduct "fact finding" regarding the "real-world duties" of occupations in which employees receive tips and whether or not the "the supposed problem" set forth in comments "actually exists." *Id.* at 23–24. Plaintiffs cite no legal authority associated with this argument; indeed, it is flawed as a matter of law. The Fifth Circuit recognizes that an agency "need not make findings of fact in the conventional sense in an [informal rulemaking]." *Superior Oil Co. v. FERC*, 563 F.2d 191, 200 (5th Cir. 1977); *see also Off. of Commc'n of United Church of Christ v. FCC*, 707 F.2d 1413, 1437 (D.C. Cir. 1983) ("In an informal rulemaking proceeding the Commission is not required to justify its cost-benefit analysis by citing to findings of fact in the record. The decision is more in the nature of a policy judgment that does not require, and indeed is not susceptible of, complete factual support."). Instead, the question is whether the "agency's reasons and policy choices conform to minimal standards of rationality," in which case they "must be upheld." *Tex. Oil & Gas Ass'n*, 161 F.3d at 934 (citation omitted).

---

[6]      Plaintiffs also speculate that Congress "obviously" would have been aware that servers are sometimes unable to earn tips because the service is slow and assume that Congress would have intended employers to nevertheless pay those servers a reduced cash wage during those hours. Pls.' Br. at 22–23. This reading is based entirely on Plaintiffs' rank speculation, not on any traditional tool of statutory construction.

The Department of Labor's reasons for this rule are eminently rational and are explained in detail in the preamble to the final rule, 86 Fed. Reg. at 60,126, which Plaintiffs largely ignore. In summary, because tipped employees can receive as little as $2.13 per hour in direct cash wages, they earn relatively low wages and "are among the most vulnerable workers that the Department protects." 86 Fed. Reg. at 60,120–21; *see also id.* at 60,124 ("[P]articularly where the FLSA permits employers to compensate their tipped employees as little as $2.13 an hour directly, providing protections to ensure that this reduced direct wage is only available to employers when employees are actually engaged in a tipped occupation within the meaning of section 3(t) of the statute is essential to prevent abuse."). The Department also received several comments from tipped employees explaining that they were required to perform non-tipped work for hours at a time while receiving reduced direct cash wages. *Id.* at 60,120, 60,122. In light of the "need to ensure that workers do not receive a reduced direct cash wage when they are not engaged in a tipped occupation, as well as the practical concerns of employers," *id.* at 60,121, the Department adopted a "functional test" to determine when an employee is engaged in a tipped occupation. *Id.* at 60,126. This test "applies to all manner of tipped occupations, a feat that would be difficult, if not impossible, to achieve with a fixed list of duties for particular tipped occupations," and it "allows for better flexibility and adaptability to categorize" new duties as they arise. *Id.* This, along with the additional explanation set forth in the preamble to the final rule, serves as a more than rational basis for the agency's policy choices. *See Tex. Oil & Gas Ass'n*, 161 F.3d at 934.

*Second*, Plaintiffs criticize the Department of Labor for not employing O*NET as a definitive list of the tasks the performance of which constitutes being "engaged in an occupation" in which one receives tips s part of one's income. Pls.' Br. at 24–25. Here again, the Department's policy choice easily surpasses "minimal standards of rationality." *Tex. Oil & Gas Ass'n*, 161 F.3d

at 934. As the Department explained, O*NET "only reflects what tipped employees are required to do [for] their employers, not the tasks that actually make up part of their tipped occupation, and is consequently not a helpful tool to use in determining whether an employee is engaged in their tipped occupation." 86 Fed. Reg. at 60,127. Multiple courts expressed this same concern in response to the 2018 opinion letter replacing the 80/20 guidance with an approach based on O*NET. *See Rafferty*, 13 F.4th at 1185 (concluding that use of the O*NET "creates a risk that unlawful practices will become entrenched in high-violation industries by setting up a fox-guarding-the-henhouse situation: simply by requiring tipped employees to perform untipped duties—whether those duties are, in fact, related or not to their tipped duties—employers effectively render the untipped duties 'related.'"); *O'Neal v. Denn-Ohio, LLC*, No. 3:19-cv-0280, 2020 WL 210801, at *7 (N.D. Ohio Jan. 14, 2020) ("If employers assign tipped employees duties traditionally performed by non-tipped employees, the O*NET definitions will reflect this and the protections established by the dual jobs regulation will erode. An interpretation of the dual jobs regulation that would allow employers to re-write the regulation without going through the normal rule-making process cannot be a reasonable one."). The Department also noted that its functional test would more quickly adapt to new and emerging duties in changing industries, whereas there would be a delay in updating O*NET. 86 Fed. Reg. at 60,126. Because the Department has offered a rational explanation for adopting a functional test over O*NET, the tip rule survives arbitrary-and-capricious review. *See Tex. Oil & Gas Ass'n*, 161 F.3d at 934.

*Third*, Plaintiffs fault the Department of Labor for relying on economic data from 2018 and 2019, prior to the COVID-19 pandemic. Pls.' Br. at 26–27. The Department used that data in a cost-benefit analysis pursuant to Executive Orders 12,866 and 13,563, which direct agencies to propose or adopt regulations only upon a reasoned determination that their benefits justify the

costs. 86 Fed. Reg. at 60,140 (citing Exec. Order No. 12,866, Regulatory Planning and Review, 58

Fed Reg. 51,735 (Oct. 4, 1993) and Exec. Order No. 13,563, Improving Regulation and Regulatory

Overview, 76 Fed. Reg. 3,821 (Jan. 18, 2011)). Courts in the Fifth Circuit "afford agencies

considerable discretion in conducting 'the complex . . . economic analysis typical in the regulation

promulgation process.'" *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 452 (5th Cir. 2021) (quoting

*Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1040 (D.C. Cir. 2012) (alteration in original)).

The Department acted well within its discretion here. The Department of Labor's decision

not to use pandemic-year cost data was eminently reasonable in this context. As part of its cost-

benefit analysis, the Department conducted a retrospective evaluation of changes in tipped-

employee wages following the 2018 and 2019 guidance withdrawing the 80/20 guidance to

account for potential changes in the opposite direction following the tip rule's reinstatement of a

modified version of the 80/20 guidance. 86 Fed. Reg. at 60,143–44. As part of this analysis, the

Department "chose not to examine data from 2020, as average hourly wages during that year

increased as low-wage workers in the leisure and hospitality industry were out of work due to the

COVID-19 pandemic, making meaningful comparisons difficult." *Id.* at 60,149. In other words,

because the Department's goal was to examine changes in wages caused by the 2018 to 2019

guidance, it appropriately excluded wage data from 2020 that would instead reflect changes

associated with the pandemic. The Court should defer to this sound reasoning, *see Huawei*, 2 F.4th

at 452, particularly where Plaintiffs have failed to even acknowledge—much less substantively

dispute—the Department's stated reasons for using data from 2018 to 2019.[7]

---

[7]    Plaintiffs also insist that Congress "would never have intended" the Department of Labor
to consider pre-pandemic data in estimating the rule's costs. Pls.' Br. at 27. But Plaintiffs cite no
statutory source supporting this supposition of what Congress "would" have intended. *Id.* Indeed,
unlike some statutes, the FLSA imposes no obligation on the Secretary of Labor to conduct a cost-
benefit analysis when regulating in this area.

Plaintiffs also highlight comments from the Small Business Administration's Office of Advocacy ("SBA Advocacy"), which took the position that the Department of Labor had underestimated compliance costs for small employers in the notice of proposed rulemaking. Pls.' Br. at 26–27. Plaintiffs make the conclusory assertion that the Department "ignored" these comments, *id.* at 27, but that is not true. As the Department explained, it made substantive adjustments to the content of the final rule to mitigate SBA Advocacy's cost concerns. 86 Fed. Reg. at 60,154. In particular, the Department clarified that its definition of tip-producing work is intended to be broadly construed. *Id.* at 60,143. It also provided additional examples, amended the definition of directly supporting work to clarify its scope, and modified the application of the 30-minute limitation for directly supporting work to make it easier to comply. *Id.*

The Department of Labor also established that the "minute to minute" tracking about which SBA Advocacy expressed concern, JA023–24, "is not required by the rule, and will also not be necessary to comply with the rule," 86 Fed. Reg. at 60,154; *see also id.* at 60,142 (noting that "if employers stop assigning work to tipped employees that will no longer be considered part of the tipped occupation under this rule, this will be a one-time change that does not necessitate ongoing monitoring[]"). In addition, the Department noted that some monitoring of duties would already have been in place as a result of the 2018 to 2019 guidance to ensure that employees did not perform duties unrelated to their tipped occupation. *Id.* at 60,142, 60,154.

Plaintiffs dispute none of this reasoning, instead falsely asserting that SBA Advocacy's concerns were simply ignored. This falls far short of meeting the burden to show that the Department's rule is arbitrary and capricious. *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010) (citation omitted) (noting that the party challenging a rule "has the burden of proving that the agency's determination was arbitrary and capricious").

Further, while SBA Advocacy indeed took the position that the Department of Labor's estimated adjustment and continuing managerial costs for the proposed (but not the final) rule should be higher, neither SBA Advocacy nor any other commentator provided any information or analysis on how to otherwise calculate those costs. 86 Fed. Reg. at 60,143. In the absence of an alternative, an agency is permitted to make estimates using the information available to it. *See FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1160 (2021) (upholding agency action where the agency "made a reasonable predictive judgment based on the evidence it had").

*Finally*, Plaintiffs argue that the rule is "internally inconsistent" in two ways. First, they contend that it improperly treats bussers and service bartenders as engaging in tip-producing work, even though they generally do not provide direct service to customers the way servers do. Pls.' Br. at 27–28. This treatment is not arbitrary; it recognizes that bussers and service bartenders "receive tips from other tipped employees such as servers because they are supporting their customer service, tip-producing work." 86 Fed. Reg. at 60,128 n.28. Contrary to Plaintiffs' characterization, this is not "ipse dixit." Pls.' Br. at 28. It is a reasoned explanation that is supported by the undisputed nature of the work that bussers and service bartenders perform and the means by which they receive tips. *See* S. Rep. No. 93-690, at 43 (recognizing "busboys" and "service bartenders" as "employee[s] . . . who 'customarily and regularly receive tips'").

Plaintiffs next argue that the rule is inconsistent because it treats the "same duties" differently "depending on context." Pls.' Br. at 28–29. Plaintiffs give the example of a bartender retrieving a particular beer for a customer, which would be tip-producing work, and the same bartender retrieving beer from a storeroom to restock the bar, which would be directly supporting work. *Id.* They also give the example of a server cleaning a spill for a customer, which would be tip-producing, and the same server cleaning a table between customers, which Plaintiffs believe

would be directly supporting. *Id.* But the Department's distinctions are sound. In defining what it means to be "engaged in a tipped occupation," it is entirely reasonable to treat "service to customers for which the tipped employee receives tips" differently from duties performed "in preparation for serving customers" for which employees do not receive tips. *See* 86 Fed. Reg. at 60,128. In the first task of each of Plaintiffs' examples—when a bartender retrieves a particular beer from the storeroom at the request of a customer sitting at the bar or when a server wipes down a spill on a customer's table—the employee is performing a task directly for a customer for which they will receive a tip. It makes sense for the Department to categorize these tasks as "tip-producing." When an employee performs work that does not produce tips but simply supports their direct customer service work—such as when a bartender retrieves a case of beer from the storeroom to stock the bar in preparation for serving customers or a server cleans a table during a lull in service—the Department properly categorizes those tasks as "directly supporting."[8]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' motion for summary judgment.

\*      \*      \*

---

[8] Plaintiffs also accuse the Department of Labor of incoherently categorizing "toasting bread as ***not*** 'food preparation' for purposes of the Final Rule." Pls.' Br. at 28–29. That is not a fair characterization. The Department made a rational distinction between "general food preparation," such as assembling a salad or slicing fruit and vegetables, and kitchen work "performed as part of the customer service work for which the . . . employee receives tips," which includes "toasting bread to accompany prepared eggs, adding dressing to pre-made salads, scooping ice cream to add to a pre-made dessert, ladling pre-made soup, placing coffee into the coffee pot for brewing, and assembling bread and chip baskets." 86 Fed. Reg. at 60,128.

Dated: May 13, 2022

Respectfully submitted,

BRIAN M. BOYTON
Principal Deputy Assistant Attorney General

BRAD P. ROSENBERG
Assistant Branch Director

 /s/ Johnny Walker
JOHNNY H. WALKER (D.C. Bar #991325)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, D.C. 20530
Tel.: (202) 514-3183 / Fax: (202) 616-8460
Email: johnny.walker@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused a true and correct copy of this filing to be served

on counsel of record by filing it with the Court's CM/ECF system.

Dated:  May 13, 2022

  /s/ Johnny Walker
JOHNNY H. WALKER
Trial Attorney
U.S. Department of Justice

*Attorney for Defendants*

36