**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| RESTAURANT LAW CENTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR, *et al.*, <br><br> Defendants. | Civil Action No. 1:21-cv-01106-RP |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

ANGELO I. AMADOR (admitted *pro hac vice*)
RESTAURANT LAW CENTER
2100 L. Street, N.W., Suite 700
Washington, D.C. 20036
Tel:   202.331.5913
Fax:   202.973.3952
AAmadaor@restaurant.org

GRETA RAVITSKY
EPSTEIN BECKER & GREEN, P.C.
700 Louisiana Street
Suite 3950
Houston, Texas 77002
Tel:   713.300.3215
Fax:   713.300.3235
GRavitsky@ebglaw.com

PAUL DECAMP (admitted *pro hac vice*)
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W, Suite 700
Washington, D.C.  20037
Tel:   202.861.1819
Fax:   202.861.3571
PDeCamp@ebglaw.com

KATHLEEN BARRETT (admitted *pro hac vice*)
EPSTEIN BECKER & GREEN, P.C.
227 West Monroe Street, Suite 3250
Chicago, Illinois 60606
Tel:   312.499.1400
Fax:   312.845.1998
KBarrett@ebglaw.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

**Page**

1. The Department of Labor has no authority to promulgate the Final Rule. ........................... 1

2. Congress spoke directly to the precise issue of the tip credit application by defining "tipped employee" using the unambiguous term "engaged in an occupation," and the Final Rule conflicts with this definition. .............................................. 3

3. *Fast*, *Marsh*, and *Rafferty* do not control this case. ............................................................ 6

4. The Final Rule is arbitrary and capricious. ........................................................................ 7

   a. The Department's rationale for implementing the Final Rule is unfounded. ................................................................................................................ 8

   b. The Department conducted no fact finding. ........................................................ 10

5. The 2018 amendment to the FLSA is irrelevant. ................................................................ 12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ................................................................................................3, 4, 6, 7

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.*,
   779 F.3d 258 (5th Cir. 2015) ................................................................................................4

*Hyder v. Keisler*,
   506 F.3d 388 (5th Cir. 2007) ................................................................................................6

*Long Island Care at Home, Ltd. v. Coke*,
   551 U.S. 158 (2007) ..........................................................................................................2, 3

*Marsh v. J. Alexander's LLC*,
   905 F.3d 610 (9th Cir. 2018) ............................................................................................6, 7

*Michigan v. EPA*,
   135 S. Ct. 2699 (2015) ..........................................................................................................6

*Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm*
   *Mutual Automobile Insurance Co.*,
   463 U.S. 29 (1983) ..........................................................................................................7, 10

*Nat'l Fed'n of Indep. Bus. v. OSHA*,
   No. 21A244, 2022 WL 120952 (U.S. Jan. 13, 2022) ...................................................1, 2, 3

*Nevada v. Dep't of Labor*,
   218 F. Supp. 3d 520 (E.D. Tex. 2016) ..................................................................................3

*Off. of Commc'n of United Church of Christ v. FCC*,
   707 F.2d 1413 (D.C. Cir. 1983) ..........................................................................................10

*Pub. Emps. for Env't Resp. v. Beaudreau*,
   25 F. Supp. 3d 67 (D.D.C. 2014) ..........................................................................................1

*Roussell v. Brinker Int'l, Inc.*,
   No. 05–3733, 2008 WL 2714079 (S.D. Tex. July 9, 2008) ..................................................9

*Schreve v. First Nat'l Collection Bureau, Inc.*,
   No. SA-14-CA-208-OLG, 2014 WL 12538689 (W.D. Tex. June 27, 2014) ........................7

*Shaffer v. Perry's Restaurants, Ltd.*,
   No. SA-16-CV-01193-FB, 2019 WL 2117639 (W.D. Tex. Apr. 3, 2019) ................................ 9

*Superior Oil Co. v. FERC*,
   563 F.2d 191 (5th Cir. 1977) .......................................................................................... 10

*Texas v. EPA*,
   829 F.3d at 42 ........................................................................................................... 11, 12

*Texas v. United States Envtl. Prot. Agency*,
   829 F.3d 405 (5th Cir. 2016) ..................................................................................... 10, 11

**STATUTES**

5 U.S.C. § 706 .......................................................................................................................... 13

Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201-219

   Section 3(m), 29 U.S.C. § 203(m) ........................................................................... 3, 9, 11

   Section 3(m)(2), 29 U.S.C. § 203(m)(2) ........................................................................... 11

   Section 3(t), 29 U.S.C. § 203(t) ......................................................................................... 4

   Section 13(a)(15), 29 U.S.C. § 213(a)(15) ......................................................................... 2

Pub. L. No. 115-141, § 1201(a), 132 Stat. 348, 1148 (2018) .................................................... 13

**OTHER AUTHORITIES**

29 C.F.R. § 531.56(e) ................................................................................................................ 9

29 C.F.R. § 531.59 .................................................................................................................. 11

82 Fed. Reg. at 57,395 ............................................................................................................ 13

S. Rep. No. 89-1487 (Aug. 23, 1966) ........................................................................................ 3

S. Rep. No. 93-690 .................................................................................................................... 6

Plaintiffs have demonstrated that the Department's Final Rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. The Department's motion for summary judgment and opposition to Plaintiffs' motion for summary judgment ("motion for summary judgement") (ECF 39) confirms that the Department improperly assumed legislative authority in promulgating the Final Rule, which imposes conditions on taking the tip credit found nowhere in the text of the FLSA. As shown below, Plaintiffs' motion for summary judgement (ECF 36) should be granted.[1]

**1.    The Department of Labor has no authority to promulgate the Final Rule.**

The Department attempts to defend the Final Rule by claiming that a general delegation of rulemaking authority coupled with undefined terms in a statute confer upon the Department virtually unfettered discretion to impose any requirements the Department chooses, no matter how removed those choices are from the statutory text. *See* ECF 39 at 21-24[2]. As the Supreme Court recently reminded the Secretary of Labor, that is not how the law works. *See Nat'l Fed'n of Indep. Bus. v. OSHA* (*"NFIB"*)*,* No. 21A244, 2022 WL 120952, at *3 (U.S. Jan. 13, 2022) (the Secretary of Labor lacked the authority to impose the vaccine mandate, which was promulgated without clear congressional authorization).

---

[1]    The Department asserts that Plaintiffs have waived their constitutional separation-of powers claim (Count III) because they did not raise it in their motion for preliminary injunction or motion for summary judgement. (ECF 39 at 20 n.3). The Department is incorrect. Plaintiffs have not waived their constitutional separation of powers claim, but rather have elected to not move for summary judgement on this claim. *Pub. Emps. for Env't Resp. v. Beaudreau*, 25 F. Supp. 3d 67, 129 (D.D.C. 2014) (citing *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 485 F. Supp. 1, 4 (D.D.C.1978)) (citing case law that a party does not abandon a claim by not briefing it in a partial motion to dismiss other claims and applying that case law in the summary judgment context).

[2]    All page references for filed documents are to the ECF-generated pagination rather than to original internal document pagination.

1

The Department's only source of authority for the Final Rule is a "miscellaneous" provision in the FLSA that generally authorizes the Department "to promulgate necessary rules, regulations or orders with regard to the" 1966 FLSA amendments that created the tip credit. *See* ECF 39 at 21-24 (citing Public Law 89-601, § 602). According to the Department, this provision supplies it with unlimited authority and discretion "to work out the details" of what the term "engaged in an occupation" means in the definition of "tipped employee." *Id*. at 23-25. That, however, is a question that Congress never asked the Department to answer. A case the Department cites in its opposition, *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), squarely shows the Department's lack of authority to promulgate the Final Rule and to interpret unambiguous terms of the FLSA that Congress never asked the Department to define. *See* ECF 39 at 24, 26.

In *Coke*, the Department of Labor had the authority to fill in gaps as to the scope and definition of statutory terms through a regulation when the text of the FLSA, section 13(a)(15), explicitly authorized the Department to define the statutory terms. 551 U.S. 158 at 162. Specifically, section 13(a)(15) exempts from the FLSA's minimum wage and maximum hours rules "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves **(as such terms are defined and delimited by regulations of the Secretary [of Labor])**." *See id.* (citing 29 U.S.C. § 213(a)(15) (emphasis added)). The Court concluded that the Department had the authority to promulgate a regulation that defined "domestic service employment" and "companionship services" because in the statutory language of section 13(a)(15) Congress "expressly instructs the agency to work out the details of those broad definitions." *Id*. at 167.

Unlike in *Coke*, Congress did not grant any authority to the Department in sections 3(m) and 3(t) of the FLSA to work out any details of the definition of "tipped employee" and the application of the tip credit. As *Coke* confirms, had Congress wanted to grant the Department authority to "work out the details" of the definition of "tipped employee" and the application of the tip credit, it would have done what it has done elsewhere—specifically delegate this authority to the Department in the statutory language in sections 3(m) and 3(t). Instead, without authority and in the guise of interpreting what it mischaracterizes as "ambiguous" terms of the statute, the Department creates a completely new test for when an employer can exercise its statutory right to take a tip credit that conflicts with the plain text of the FLSA. ECF 39 at 25-27. The Department has improperly assumed legislative authority that Congress never delegated to it and exceeded its power in promulgating the Final Rule. *See NFIB*, No. 21A244, 2022 WL 120952 at *3-4 ("Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided."). Thus, the Final Rule fails at *Chevron* step zero and is unlawful.

**2.      Congress spoke directly to the precise issue of the tip credit application by defining "tipped employee" using the unambiguous term "engaged in an occupation," and the Final Rule conflicts with this definition.**

Contrary to the Department's contention, the FLSA is not ambiguous with regard to the issue of the tip credit application. *See Nevada v. Dep't of Labor*, 218 F. Supp. 3d 520, 528 (E.D. Tex. 2016) ("A statute is ambiguous if it is susceptible to more than one reasonable interpretation or more than one accepted meaning."). When Congress first extended the FLSA to apply to restaurants in 1966, it designed the tip credit "to permit the continuance of existing practices with respect to tips." *See* S. Rep. No. 89-1487, at 12 (Aug. 23, 1966). The statutory concept is simple. Under section 3(m) of the FLSA an employer may take a tip credit with respect to a "tipped employee". 29 U.S.C. § 203(m). Congress then specifically defined "tipped employee" in section

3

3(t) as meaning "any employee **engaged in an occupation** in which he **customarily and regularly receives more than $30 a month in tips**." 29 U.S.C. § 203(t) (emphasis added). Thus, so long as the employee is engaged in an occupation from which he or she customarily and regularly receives tips in excess of $30 a month, the tip credit is available.

The Department claims that the tip credit application is ambiguous simply because the terms "occupation" and "engaged" are "undefined." *See* ECF 39 at 24-27. As Plaintiffs explained in their motion for summary judgment, undefined terms do not automatically render a statute ambiguous. *See* ECF 36 at 19. Instead, at the first step of the *Chevron* analysis, the Court must "give all undefined terms their ordinary meaning." *See* ECF 36 at 18-19 (citing *Contender Farms, L.L.P. v. USDA*, 779 F.3d 258, 269 (5th Cir. 2015)). The Department does not dispute that the Court should refer to contemporaneous dictionary definitions to determine the ordinary meaning of undefined terms. Plaintiffs' contemporaneous dictionary definitions define "engaged" (as "occupied; employed") and occupation (as "the principal business of one's life: a craft, trade, profession or other means of earning a living"). *See* ECF 36 at 21-23. There is nothing ambiguous about these terms. After reading the ordinary meanings together with the statute, it is clear Congress intended the term "engaged in an occupation" to mean the field of work and job as a whole, not the mix of specific tasks within a job or the elimination of the tip credit based on the time spent on different tasks. *Id*.

Rather than giving the terms "occupation" and "engaged" their ordinary meaning, however, the Department replaces these terms with its own new test in the Final Rule that it admits focuses on "the mix of tasks" and whether these duties directly and immediately produce tips. *See* ECF 39 at 24-26. In so doing, the Department stands the statutory text on its head: rather than attempting to determine what Congress meant by the term "occupation" as used in the FLSA for purposes

4

of identifying which employees regularly receive sufficient tips to qualify for the tip credit, the Department chooses to view the concept of an occupation through the extrastatutory distorting lens of what tasks do and do not supposedly lead to tips. Rather than giving "occupation" a normal and commonsense meaning consistent with the FLSA, the Department focuses on tips and works backwards, deconstructing every employee's job into a potential multitude of "occupations" based on each discrete task performed and its relation to tips. While such an endeavor might be an interesting frolic and detour in a graduate seminar on occupational engineering, it simply has nothing to do with the law Congress enacted. Nothing in the statute purports to limit the availability of the tip credit to whether or not an employee performs specific job duties or tasks that directly and immediately produce tips; if the employee regularly receives at least $30 a month in tips from his or her job, regardless of how or why the employee gets those tips, the employee is a "tipped employee," and the employer may take the tip credit under the plain text and ordinary meaning of the terms in the statute. That is the law Congress wrote, and it precludes the approach the Department has chosen in the Final Rule.

The Department's opposition confirms that the Final Rule is not based on the text, history, or purpose of the FLSA, but it is instead the Department's unlawful attempt to address the Department's own dissatisfaction with Congress allowing employers to pay tipped employees a reduced cash wage of $2.13 to satisfy a portion of their minimum wage obligations. *See* ECF 39 at 7, 27-29. The Department states that the Final Rule fits with the statutory purpose of ensuring "that tipped employees do not have the value of their tips diluted by being paid a reduced direct wage while performing substantial work that does not produce tips." *Id*. at 27-29, 32. However, this is not the purpose of the tip credit or the FLSA; instead, this is the Department's policy preference separate and apart from the statute, a preference that drove the adoption of the Final Rule, which

has no force and effect of law. *See Marsh v. J. Alexander's LLC*, 905 F.3d 610, 637-41, 645-50, 652 (9th Cir. 2018) (Ikuta, J., dissenting). In addition, nothing in any of the tip credit legislative history suggests a congressional intent to allow the tip credit for only certain duties, disallow the tip credit for certain side work duties if performed more than 20% of the workweek or for 30 continuous minutes, and disallow the tip credit for yet other side work duties.[3]

Here, the statutory language of the tip credit provision is clear and illustrates Congress's intent. The Final Rule's approach to the tip credit—limiting the tip credit based on whether duties directly and immediately produce tips—directly conflicts with the approach required by the ordinary meaning of the statutory definition of "tipped employee." As a result, the Final Rule fails *Chevron* step one and is unlawful.[4]

**3.      *Fast*, *Marsh*, and *Rafferty* do not control this case.**

The Department primarily relies on the majority decisions in *Fast*, *Marsh*, and *Rafferty* to support its new approach to the tip credit in the Final Rule. *See* ECF 39 at 13, 32-34. These rulings by the Eighth, Ninth, and Eleventh Circuits are not binding on a federal court sitting in Texas. *See, e.g.*, *Hyder v. Keisler*, 506 F.3d 388, 393 (5th Cir. 2007) (refusing to adopt the Ninth Circuit's

---

[3] The Department also argues that the legislative history surrounding the 1974 amendments to the FLSA supports its new test in the Final Rule. *See* ECF 39 at 28. As Plaintiffs argue in their motion for summary judgement, this legislative history demonstrates that consistent with the plain meaning of "occupation," an intent for the tip credit analysis to focus on the principal duties performed "over the entire workweek." ECF 36 at 26 (citing S. Rep. No. 93-690 at 43). The Final Rule, however, creates a directly contradictory analytic framework that eliminates the tip credit based on certain side work duties when performed for 30 continuous minutes, and further disallows the tip credit altogether for other duties that the Department labels as work that is not part of the tipped occupation. *Id.*

[4] As Plaintiffs argue in their motion for summary judgment, even if section 3(t) is ambiguous, the Department's Final Rule does not deserve deference at *Chevron* step two. *See* ECF 36 at 27-30. The Final Rule is not "based on a permissible construction of the statute" because it is contrary to clear congressional intent. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). The statutory term "occupation" does not mean how often a person performs a task. The Final Rule, however, bases the tip credit analysis entirely on whether tasks and duties directly and immediately produce tips, which is a completely different approach to the tip credit from what the FLSA requires. Because the Final Rule is contrary to the statutory text and Congress's intent, the Final Rule's tip credit approach is "not one that Congress would have sanctioned" and consequently fails *Chevron* step two. *See Chevron*, 467 U.S. at 845; *see also Michigan v. EPA*, 135 S. Ct. 2699, 2707-08 (2015) (even if some ambiguity exists in a statute, an agency's interpretation of a statute must stay within the boundaries of the words chosen by Congress).

interpretation of "crime involving moral turpitude" for purposes of applying cancellation of removal statute); *see also Schreve v. First Nat'l Collection Bureau, Inc.*, No. SA-14-CA-208-OLG, 2014 WL 12538689, at *6 (W.D. Tex. June 27, 2014) (refusing to adopt the Seventh Circuit's interpretation of the Fair Debt Collection Practices Act). In addition, Plaintiffs respectfully submit that the majority decisions in *Fast*, *Marsh*, and *Rafferty* are wrong, as the 20% limitation promulgated in the Department's subregulatory guidance at issue in those cases is inconsistent with the plain text of the FLSA. The Department's reliance on decisions upholding an unfounded departure from the plain text of the FLSA is not persuasive. The only opinion in these decisions that this Court should rely on is the dissent in *Marsh*, which engages in a thorough analysis of the Department's departure from the plain text of the FLSA that aligns with the Final Rule's fundamental flaws here. *See* ECF 36 at 27-30.

**4.      The Final Rule is arbitrary and capricious.**

Even if the Court were to accept the Department's *Chevron* step zero and step one argument, Plaintiffs demonstrated in their motion for summary judgment that the Final Rule is arbitrary and capricious, and thus fails *Chevron* step two. As the Supreme Court stated in *Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983), an agency rule is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

In the end, the Final Rule impermissibly leverages what it contends is ambiguity at the margins of tipped employment to justify wholesale regulation of the vast undisputed heartland of

7

tipped employment. There is zero evidence to suggest that Congress anticipated, or would have condoned, the Department's quixotic quest to root out instances where restaurant servers are not *really* servers, or where bartenders are not *really* bartenders. Under the Final Rule, employees who spend 100% of their working time engaged in tasks that by any measure are well within the scope of their occupations—whether as server, bartender, busser, or any other occupation—and who customarily and regularly receive sufficient tips, may nonetheless be entitled to receive a cash wage of at least the full minimum wage for some significant portion of their working time. Whatever statutory authority the Department may arguably have to regulate true "dual jobs," the Final Rule is a bridge too far, and no amount of contrived ambiguity in the original dual jobs regulation can justify the Department's overreach in the Final Rule. The Department's effort to deconstruct these straightforward and well-known occupations into multiple unspecified micro-occupations, some of which are tipped and some of which are not, is disconnected from the text of or policies underlying the FLSA.

      a.     **The Department's rationale for implementing the Final Rule is unfounded.**

In its motion for summary judgment, the Department argues that the plain and ordinary meaning of the terms "engaged in an occupation" would permit an employer to receive a tip credit even when the employee "works an entire shift cleaning bathrooms, mowing the lawn, and washing dishes, without performing any tipped work at all." ECF 39 at 21-22, 27. In particular, the Department is seemingly concerned with sham situations where, for instance, an employer nominally labels an employee a "server" but then forces that employee to perform tasks that do not traditionally belong to that of a server (e.g., mowing the lawn). *Id.* The Department's concern, however, is unfounded. First, there is no indication that in the 55 years since the Department first issued the dual jobs regulation a server has spent an entire shift mowing the law or performing any

8

other task that is clearly outside of the server occupation. It is simply an absurd example that ignores the parameters of a tipped employee's occupation.

Second, Plaintiffs do not argue that an employee who spends an entire shift mowing the lawn, cleaning restrooms, washing dishes, or performing duties that are not traditionally assumed by a tipped employee is necessarily a "tipped employee." In fact, such situations are adequately addressed in the Department's 1967 dual jobs regulation, which recognizes that an employee may hold more than one job for the same employer—i.e., dual jobs, one that generates tips and one that does not—and that the employee is entitled to the full minimum wage rate while performing the job that does not generate tips. *See* 29 C.F.R. § 531.56(e). To the extent that sham situations may arise, the courts are fully able to use the original dual jobs regulation to sort out whether an individual is a tipped employee or not. *See Roussell v. Brinker Int'l, Inc.*, No. 05–3733, 2008 WL 2714079, *12–13 (S.D. Tex. July 9, 2008) (concluding that employees who worked entire shift in Quality Assurance were not tipped employees eligible to be included in tip pool).

Lastly, the Department ignores the fact that even if tipped employees engage in duties outside of their tipped occupation (e.g., mowing the lawn), and as a result fail to receive sufficient tips to reach minimum wage, employers would nevertheless be responsible for making up the difference between the tip credit wage and the federal minimum wage. *Shaffer v. Perry's Restaurants, Ltd.*, No. SA-16-CV-01193-FB, 2019 WL 2117639, at *3 (W.D. Tex. Apr. 3, 2019) (citing 29 U.S.C. § 203(m)). Therefore, whatever occupation or duties an employee assumes, the FLSA ensures that that employee will receive at least minimum wage. 29 U.S.C. § 203(m).

At the end of the day, the Department seeks to resolve a problem that does not exist or that is already fully addressed by existing law. It is apparent that the Department's explanation for implementing the Final Rule is simply a ruse to grant itself extrastatutory authority to define what

tasks do and do not fall within the tipped occupation category. Because the Department's rationale for implementing the Final Rule runs counter to the evidence on which it relies, the Department's Final Rule is arbitrary and capricious and must be vacated. *See Motor Vehicle Manufacturers Association of the United States, Inc.*, 463 U.S. at 43.

### b. The Department conducted no fact finding.

The Department does not dispute that it conducted no evaluation of the real-world duties of occupations in which employees receive tips. *See* ECF 39 at 29. "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Manufacturers Association of the United States, Inc.*, 463 U.S. at 43. The Department, however, insists that it need not suffer the indignity of having to base its rulemaking in actual facts.[5] *See* ECF 39 at 35. By labeling the Final Rule a "policy judgment," the Department claims that it "need not make findings of fact in the conventional sense" and its decision does not require "complete factual support." ECF 39 at 35-36 (citing *Superior Oil Co. v. FERC*, 563 F.2d 191, 200 (5th Cir. 1977); *Off. of Commc'n of United Church of Christ v. FCC*, 707 F.2d 1413, 1437 (D.C. Cir. 1983)). The only facts the Department points to are "several" conclusory comments by tipped employees. *See id.* However, a cursory review of comments does not remedy the Department's failure to conduct any evaluation, study, survey, or data analysis of occupations in which employees receive tips to determine whether the problem it purports to address through the Final Rule even exists.[6] *See Motor Vehicle Manufacturers Association of the United States, Inc.*

---

[5] The Department also claims that Plaintiffs' argument is not supported by legal authority. *See* ECF 39 at 29. The Department is incorrect. Plaintiffs' motion for summary judgment expressly cites Fifth Circuit authority to support its argument that the Final Rule is arbitrary and capricious. *See* ECF 36 at 30 (citing *Texas v. EPA*, 829 F.3d 405, 425 (5th Cir. 2016)).

[6] Plaintiffs also establish in their motion for summary judgment that the Department's failure to engage in any fact-finding is particularly inexcusable here because the Department itself maintains "the nation's primary source of

The Department's reasons and choices for the Final Rule also do not conform to even minimal standards of rationality. *See* ECF No. 39 at 36. The Department states the reason for the Final Rule is "because tipped employees can receive as little as $2.13 per hour in direct cash wages, they earn relatively low wages" and, "to ensure that workers do not receive a reduced direct cash wage when they are not engaged in a tipped occupation." *Id*. This reason, however, is the Department's disingenuous attempt to connect the tip credit to the cause of low wages to justify the Final Rule, which flies in the face of the text of the FLSA. The tip credit does not operate to reduce an employee's pay below minimum wage, but instead recognizes as "wages" certain tips that employees earn for their work and credits those tips toward the minimum wage those employees must receive. *See* 29 U.S.C. § 203(m)). The FLSA also still requires employees for whom an employer takes a tip credit to receive at least minimum wage for all hours worked. *See* 29 U.S.C. § 203(m)(2); 29 C.F.R. § 531.59. If the employee's tips are insufficient, when added to the required cash wage, to satisfy the minimum wage, then the FLSA requires employers to pay additional wages to make up the difference. *Id*. Because there is no conceivable connection between the Final Rule and the wages earned by tipped employees, as tipped employees already receive the full protection of the federal minimum wage, the Final Rule is arbitrary and capricious. *See Texas v. EPA*, 829 F.3d at 425 (agency action is arbitrary and capricious if the agency "offered an explanation for its decision that runs counter to the evidence before the agency").

The Department also does not adequately consider the Final Rule's cost to employers. The Department acknowledges in its opposition that "the Department's goal was to examine changes

---

occupational information": the O*NET. *See* ECF 36 at 31-32. The Department defends its failure to consider O*NET by claiming that "O*NET only reflects what tipped employees are required to do for their employers, not the tasks that make up their tipped occupation" and there is "a delay in updating O*NET." ECF 39 at 36-37. These excuses do not justify the Department's deliberate decision to ignore its own real-world data showing the actual job duties of tipped employees, which conflict with how the Department has defined "tipped employees" in the Final Rule. This renders the Final Rule arbitrary and capricious.

11

in wages from 2018 to 2019 guidance whereas wage data from 2020 would obviously be distorted with the much more impactful changes associated with the pandemic[.]" ECF 39 at 38. But the Department did not try to account for these "impactful" pandemic changes, which the SBA Advocacy also expressed to the Department. *Id*. at 38-39. The Department's perfunctory attempt to consider important costs to employers render the Final Rule arbitrary and capricious. *See Texas v. EPA*, 829 F.3d at 42 (agency action is arbitrary and capricious if the agency "relied on factors which Congress has not intended it to consider").[7]

**5.      The 2018 amendment to the FLSA is irrelevant.**

In an attempt to support its argument that the structure and purpose of the FLSA contradicts Plaintiffs' reading of the statute (ECF 39 at 27-28), the Department relies on a 2018 amendment to the FLSA providing that an employer may not keep tips received by its employees. *Id.* (citing Pub. L. No. 115-141, § 1201(a), 132 Stat. 348, 1148 (2018) (codified at 29 U.S.C. § 203(m)(2)(B)). This amendment applies specifically to those employers that pay the full federal minimum wage to their tipped employees, and not to employers who receive a tip credit, as employees for whom an employer takes a tip credit already received that protection under the pre-

---

[7] Plaintiffs also argue in their motion for summary judgement that the Final Rule is arbitrary and capricious because the Final Rule is so internally inconsistent as to render its artificial distinction so unworkable as to be implausible. *See, e.g.*, ECF 36 at 34-35 (noting the irreconcilable treatment of bussers and service bartenders, who do not engage in any of the direct customer servicing work the Final Rule's test would consider to directly and immediately produce tips, yet who apparently remain properly tipped employees under the Final Rule). The Department's main response is: "it makes sense." *See* ECF 39 at 40-41. This is not a satisfactory explanation. Consider two scenarios. First, a restaurant could assign two employees, a server and a busser, each to work 20 hours per week, with the busser spending 100% of that time clearing tables after customers leave, and the server spending 100% of that time interacting with customers. Second, that same restaurant could assign a single employee, a server, to spend 40 hours in the week performing those same tasks, with 50% of the time spent on clearing tables and 50% spent on interacting with customers. Under the Final Rule, in the first situation, both employees would potentially be fully subject to the tip credit for all hours worked. In the second situation, the server would be subject to the tip credit for, at most, 50% of the working time. This outcome is utterly arbitrary: same tasks, same purpose, yet completely different treatment under the Final Rule.

2018 version of section 3(m). Nevertheless, the Department asserts that this amendment is somehow relevant to its argument that Congress intended for the Department to interpret "engaged in occupation" according to an employee's individual duties rather than the occupation as a whole. The Department's belief is misplaced. The reality is that the 2018 FLSA amendment was meant to address a 2017 notice of proposed rulemaking that sought to permit tip sharing with back-of-the-house employees who did not customarily and regularly receive tips, such as cooks and dishwashers. 82 Fed. Reg. at 57,395. Fearing that employers would misconstrue that proposed rule to allow managers and supervisors to participate in tip sharing, Congress amended section 3(m) of the FLSA to prevent employers from keeping "tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips." 29 U.S.C. § 203(m)(2)(B). Although this amendment aims to protect tipped employees, it bears no relevance to the question of whether the Department has the authority to override the plain and ordinary meaning of the terms "engaged in" and "occupation."

\* \* \*

For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for summary judgment, deny Defendants' motion for summary judgment, hold the 2021 Dual Jobs Final Rule unlawful, and vacate and set aside the Final Rule under 5 U.S.C. § 706.

Respectfully submitted,

By: /s/ Paul DeCamp

| | |
|---|---|
| ANGELO I. AMADOR (admitted *pro hac vice*) <br> RESTAURANT LAW CENTER <br> 2100 L. Street, N.W., Suite 700 <br> Washington, D.C.  20036 <br> Tel:  202.331.5913 <br> Fax:  202.973.3952 <br> AAmadaor@restaurant.org | PAUL DECAMP (admitted *pro hac vice*) <br> EPSTEIN BECKER & GREEN, P.C. <br> 1227 25th Street, N.W, Suite 700 <br> Washington, D.C.  20037 <br> Tel:  202.861.1819 <br> Fax:  202.861.3571 <br> PDeCamp@ebglaw.com |
| GRETA RAVITSKY <br> EPSTEIN BECKER & GREEN, P.C. <br> 700 Louisiana Street <br> Suite 3950 <br> Houston, Texas  77002 <br> Tel:  713.300.3215 <br> Fax:  713.300.3235 <br> GRavitsky@ebglaw.com | KATHLEEN BARRETT (admitted *pro hac vice*) <br> EPSTEIN BECKER & GREEN, P.C. <br> 227 West Monroe Street, Suite 3250 <br> Chicago, Illinois  60606 <br> Tel:  312.499.1400 <br> Fax:  312.845.1998 <br> KBarrett@ebglaw.com |

*Counsel for Plaintiffs*

May 27, 2022

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 27, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered users.

    /s/ Paul DeCamp