UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

RESTAURANT LAW CENTER, *et al.*,

*Plaintiffs,*

v.

U.S. DEPARTMENT OF LABOR, *et al.*,

*Defendants.*

Civil Action No. 21-1106 (RP)

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## <u>C O N T E N T S</u>

*Page*

INTRODUCTION ................................................................................................................1

ARGUMENT......................................................................................................................1

I.      THE TIP RULE IS NOT CONTRARY TO LAW. ............................................... 1

II.     THE TIP RULE IS NOT ARBITRARY AND CAPRICIOUS. ........................... 7

CONCLUSION..................................................................................................................11

# AUTHORITIES

*Page(s)*

## Cases

*Am. Wildlands v. Kempthorne,*
  530 F.3d 991 (D.C. Cir. 2008) ................................................................. 8

*Audler v. CBC Innovis Inc.,*
  519 F.3d 239 (5th Cir. 2008) ................................................................. 11

*Chevron, U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.,*
  467 U.S. 837 (1984) ............................................................................... 3

*Exelon Wind 1, LLC v. Nelson,*
  766 F.3d 380 (5th Cir. 2014) ................................................................. 2

*FCC v. Prometheus Radio Project,*
  141 S. Ct. 1150 (2021) ........................................................................ 8, 9

*Grenier v. Cyanamid Plastics, Inc.,*
  70 F.3d 667 (1st Cir. 1995) .................................................................. 11

*Huawei Techs. USA, Inc. v. FCC,*
  2 F.4th 421 (5th Cir. 2021) ................................................................... 10

*Long Island Care at Home, Ltd. v. Coke,*
  551 U.S. 158 (2007) ............................................................................ 3, 4

*Marsh v. J. Alexander's LLC,*
  905 F.3d 610 (9th Cir. 2018) ................................................................. 2

*Pub. Emps. for Envt'l Resp. v. Beaudreau,*
  25 F. Supp. 3d 67 (D.D.C. 2014) .......................................................... 11

*Rafferty v. Denny's, Inc.,*
  13 F.4th 1166 (11th Cir. 2021) ............................................................. 10

*Rest. Law Ctr. v. U.S. Dep't of Labor,*
  No. 21-cv-1106, 2022 WL 526243 (W.D. Tex. Feb. 22, 2022) ......................... 10-11

*Roussell v. Brinker Int'l, Inc.,*
  No. 05-3773, 2008 WL 2714079 (S.D. Tex. July 9, 2008) ............................. 8

*Superior Oil Co. v. FERC,*
  563 F.2d 191 (5th Cir. 1977) ................................................................. 9

*Tex. Oil & Gas Ass'n v. EPA,*
  161 F.3d 923 (5th Cir. 1998) ............................................................... 7, 9

*United States v. Mead Corp.*,
   533 U.S. 218 (2001) ........................................................................................ 2

## Statutes

29 U.S.C. § 203 ................................................................................... *passim*

Fair Labor Standards Amendments of 1966,
   Pub. L. No. 89-601, 80 Stat. 830 ................................................................ 1, 2

## Regulations

29 C.F.R. § 531.56 ............................................................................... 1, 2

Tip Regulations Under the Fair Labor Standards Act (FLSA); Partial Withdrawal,
   86 Fed. Reg. 32,818 (June 23, 2021) ........................................................ 6

Tip Regulations Under the Fair Labor Standards Act (FLSA); Partial Withdrawal,
   86 Fed. Reg. 60,114 (Oct. 29, 2021) .................................................. 1, 7, 8, 10

## Legislative Matierals

S. Rep. No. 89-1487 (1966) ...................................................................... 5

## Other Authorities

Cass R. Sunstein, *Chevron Step Zero*,
   92 Va. L. Rev. 187 (2006) .................................................................... 2

## INTRODUCTION

As explained in Defendants' cross-motion for summary judgment ("Defs.' Br."), the Department of Labor's 2021 rule governing when employers may take a tip credit is within the Department's authority, in line with the text of the Fair Labor Standards Act ("FLSA"), and easily surpasses the low-bar set by arbitrary-and-capricious review. Plaintiffs' opposition and reply brief ("Pls.' Opp'n & Reply") fails to cast doubt on Defendants' arguments. The Court should therefore enter summary judgment in favor of Defendants.

## ARGUMENT

## I.    THE TIP RULE IS NOT CONTRARY TO LAW.

Congress vested the Department of Labor with clear authority to promulgate regulations implementing the tipped employee provisions of the FLSA. Pub. L. No. 89-601, § 602, 80 Stat. 830, 844 (1966). And the Department has done so by, among other things, delineating when an employee is "engaged in an occupation," 29 U.S.C. § 203(t), in which one receives tips. 86 Fed. Reg. 60,114 (Oct. 29, 2021). This 2021 rule maintains a preexisting requirement that the tip credit be available to an employer only for the time that an employee performs work that is part of the tipped occupation. 29 C.F.R. § 531.56(e). It also largely codifies and adds to the agency's longstanding and judicially upheld 80/20 guidance by specifying that an employee is engaged in the work of a tipped occupation when she or he performs work that produces tips or that directly supports tip-producing work, provided the directly supporting work does not exceed 20 percent of the workweek or 30 continuous minutes. *Id.* at § 531.56(f). As explained in Defendants' opening brief, this rule appropriately implements an ambiguous statutory provision and is in no way contrary to law. Defs.' Br. at 14–29.

Plaintiffs' opposition arguments are without merit. Plaintiffs first maintain their insistence that the Department of Labor had "no authority" to promulgate the rule, Pls.' Br. at 1–3, despite

Congress explicitly stating that the Secretary of Labor is "authorized to promulgate necessary rules, regulations, or orders with regard to the amendments" that added the tipped employee provision to the FLSA in 1966, Pub. L. No. 89-601, § 602, 80 Stat. at 844.

Defendants pointed out in their opening brief that Plaintiffs' argument on this point confuses a *Chevron* step two inquiry for a "step zero" inquiry, Defs.' Br. at 16–17, and Plaintiffs' opposition and reply brief confirms that to be the case. The question at step zero is whether the *Chevron* framework should apply at all, which it most obviously does when Congress has "delegated authority to the agency generally to make rules carrying the force of law." *United States v. Mead Corp.*, 533 U.S. 218, 226 (2001); *see also Exelon Wind 1, LLC v. Nelson*, 766 F.3d 380, 406 n.3 (5th Cir. 2014) (describing the "step zero" inquiry as "whether Congress delegated authority to make interpretations carrying the force of law," which is answerable in part by looking to whether the agency has the "power to engage in notice-and-comment rulemaking"); Cass R. Sunstein, *Chevron Step Zero*, 92 Va. L. Rev. 187, 213 (2006) ("[T]he clearest cases for *Chevron* deference involve an exercise of delegated rulemaking authority."). Given the explicit language granting rulemaking authority to the Secretary of Labor in the 1966 FLSA amendments, Plaintiffs cannot plausibly contend that the Department of Labor is not generally authorized to make rules about tipped employment that carry the force of law. *See Marsh v. J. Alexander's LLC*, 905 F.3d 610, 621 (9th Cir. 2018) ("[I]t is beyond question that the [Department of Labor] promulgated the dual jobs regulation, 29 C.F.R. § 531.56, in the exercise of its congressionally delegated authority."). Instead, Plaintiffs contend that the interpretation of the FLSA reflected in the Department of Labor's regulation is "removed . . . from the statutory text." Pls.' Opp'n & Reply at 1. That contention, however, does not question whether Congress "delegated authority to the agency generally to make rules carrying the force of law," *Mead*, 533 U.S. at 226–27, which it

very clearly did. It instead asserts that the Department of Labor's regulation is not "based on a permissible construction of the statute," which is a question for *Chevron* step two. *Chevron, U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

In any event, whether it falls under step zero or two, Plaintiffs' argument is substantively flawed. Citing *Long Island Care at Home*, Plaintiffs contend that the Department of Labor lacks the authority to issue rules governing when an employee is engaged in a tipped occupation because Congress did not explicitly instruct it to define statutory terms, as did the statute at issue in that case. Pls.' Br. at 2–3 (citing *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007)). But it is a fundamental principal of administrative law that an agency may "fill any gaps left, *implicitly or explicitly*, by Congress," *Chevron*, 467 U.S. at 843; no explicit direction to define terms is necessary. As explained in Defendants' opening brief (and as other courts have held), Defs.' Br. at 17–25, the FLSA does not speak directly to what it means to be "engaged in an occupation" in which one regularly receives tips. The Department of Labor therefore properly excised its explicit rulemaking authority to fill that implicit gap.

At step one, Plaintiffs insist that the FLSA directly forecloses the Department of Labor's approach in the rule, Pls.' Opp'n & Reply at 3–6, but that conclusion does not flow from the text, purpose, or legislative history of the statute, Defs.' Br. at 17–25. Regarding the text, Plaintiffs make the conclusory assertion that "[a]fter reading the ordinary meanings together with the statute, it is clear Congress intended the term 'engaged in an occupation' to mean the field of work and job as a whole, not the mix of specific tasks within a job or the elimination of the tip credit based on the time spent on different tasks." Pls.' Br. at 4. But this is mere ipse dixit. As in their opening brief, Plaintiffs make no effort to explain in any detail how the plain meaning of the terms "engaged" and "occupation" dictate their conclusion.

Defendants, by contrast, have explained in detail that the relevant dictionary definitions show that an "occupation" is delineated not by reference to the mere title of a "job as a whole" but by the "usual," "principal," or "regular" "work" or "business" associated with that occupation. Defs.' Br. at 19–20 (quoting *Webster's Third New International Dictionary* 1560 (1961), ECF No. 37 at 80; *Random House Dictionary of the English Language* 996 (1967), ECF No. 37 at 85; and *Black's Law Dictionary* 1230 (4th Ed. 1957), ECF No. 37 at 90). And to be "engaged" in an occupation means to be "busy or occupied" with it. *Id.* at 20 (quoting *Random House Dictionary of the English Language* (1961), ECF No. 37 at 94). Thus, the plain meaning of these statutory terms supports the Department's approach of looking at the specific work that employees are busy or occupied with and whether that work is part of the tipped occupation. Plaintiffs apparently disagree with the Department of Labor's conclusion that the work of a tipped occupation is work that produces tips and a limited amount of work that supports tip-producing work, Pls.' Opp'n & Reply at 4–5, but nothing in the statute indicates that Congress understood otherwise. Because the statute does not specify what it means to be "engaged in an occupation," the Department of Labor is authorized to use its policy judgment to "work out [those] details." *Long Island Care at Home*, 551 U.S. at 167.

Plaintiffs also continue to insist that the sole criteria for meeting the statutory definition of a tipped employee is to "regularly receive[] at least $30 a month in tips." Pls.' Opp'n & Reply at 5. To be sure, the statute states that part of the definition of a tipped employee is one who "regularly receives more than $30 a month in tips," but it also says that a tipped employee must be "engaged in [such] an occupation," 29 U.S.C. § 203(t), and Plaintiffs' have no response to Defendants' argument that Plaintiffs have improperly read the latter phrase out of the statute. *See* Defs.' Br. at 28. Indeed, contradicting themselves, Plaintiffs seem to concede that there must be some further

4

limit to when an employee is engaged in a tipped occupation, indicating elsewhere in their brief that an employee who spends a single "shift" performing nontipped duties would *not* necessarily meet the statutory definition of a "tipped employee," Pls.' Opp'n & Reply at 9, apparently without regard to whether that employee otherwise earned $30 that "month" in tips. And elsewhere, Plaintiffs offer yet another contradiction, contending that the question is whether an employee generally performed tipped duties over the course of a "workweek," not a month. *Id.* at 6 n.3.

Nor does legislative history provide Plaintiffs any support. Plaintiffs continue to rely primarily on the statement in a Senate Report that the tipped employee provision of the FLSA is intended "to permit the continuance of existing practices with respect to tips." Pls.' Opp'n & Reply at 3 (quoting S. Rep. No. 89-1487, at 12 (1966)). Yet they do not dispute that the relevant language refers to "practices with respect to tips" themselves—specifically, confiscating tips as receipts and pooling tips broadly among all employees—not to the tasks associated with a tipped occupation. Defs.' Br. at 23–24.

Plaintiffs also fail to adequately rebut Defendants' showing that the tip rule suits the overall purpose of the FLSA, reaffirmed in recent amendments, to ensure that employees retain the value of their tips and that employers do not appropriate the value of those tips for their own benefit. Defs.' Br. at 21–23 (citing 29 U.S.C. § 203(m)(2)(A), (B)). Plaintiffs' response to this point seriously misreads the relevant statutory provision. First, they contend (citing no statutory language) that the amendment applies only "to those employers that pay the full federal minimum wage to their tipped employees, and not to employers who receive a tip credit." Pls.' Opp'n & Reply at 12. That is plainly wrong. The provision states in no uncertain terms that it applies "regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). Plaintiffs also insist (citing no legislative history), that the provision was intended only to provide that

managers and supervisors may not keep tipped employees' tips through a tip pool. Pls.' Opp'n & Reply at 12. But the plain text of the provision goes further, broadly stating that an employer "may not keep tips received by its employees *for any purposes*." 29 U.S.C. § 203(m)(2)(B) (emphasis added). Congress's purpose is clear from the statutory text: employees should retain the value of their tips, and the tip rule is in line with that general purpose. Plaintiffs' attempt to show a contrary purpose is unsupported by authority and directly contradicted by the language of the statute.

Finally, Plaintiffs brush aside the ample case law contradicting their position as "not binding" and "wrong," while neglecting to meaningfully address the persuasive reasoning underlying those decisions. Pls.' Opp'n & Reply at 6–7. For their part, Plaintiffs notably fail to cite even a single opinion by any court adopting their reading of the statute, even though the Department of Labor's tip regulation and guidance have been hotly litigated over the years. *See* 86 Fed. Reg. 32,818, 32,829 n.44 (June 23, 2021) (listing nine district court decisions deferring to the Department of Labor's interpretation of the dual jobs regulation); *id.* at 32,822 & n.3 (listing fourteen other district court decisions declining to defer to the Department of Labor's 2018 and 2019 guidance rescinding the 80/20 guidance). Plaintiffs continue to point the Court only to the two-judge dissent from the nine-judge majority in *Marsh*, Pls.' Opp'n & Reply at 7, but they do not address Defendants' showing that the dissenting opinion in that case is not directly on point because it did not address the meaning of the statutory phrase "engaged in an occupation," Defs.' Br. at 28.

In sum, Plaintiffs' reading of the statute is untethered to the text, purpose, and legislative history; incoherent; and against the tide of judicial authority. Their claim that the Department of Labor's rule runs contrary to law should therefore be rejected.

## II.    THE TIP RULE IS NOT ARBITRARY AND CAPRICIOUS.

The Department of Labor's tip rule also easily meets the "minimal standards of rationality" necessary to satisfy arbitrary-and-capricious review. *Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 934 (5th Cir. 1998). The rationale for the tip rule is fully set forth in the final rule's preamble and summarized in Defendants' briefing. The purposes of the rule are "to ensure that workers do not receive a reduced direct cash wage when they are not engaged in a tipped occupation" and to address "the practical concerns of employers" in complying with the rule's requirements. Defs.' Br. at 30 (quoting 86 Fed. Reg. at 60,126). The Department accomplished these purposes by adopting a "functional test" that explains when an employee is engaged in a tipped occupation, is applicable to all manner of tipped occupations, and allows more flexibility to categorize new duties as they arise. *Id.*

Plaintiffs insist that the Department's concern underlying the rule is "unfounded" because there is no evidence that a server has ever spent an "entire shift mowing the lawn or performing any other task that is clearly outside of their server occupation." Pls.' Opp'n & Reply at 8–9. This is a straw man. The rule is intended to protect tipped employees from receiving a reduced direct wage anytime they are not engaged in a tipped occupation, not simply when they spend an entire shift not so engaged. 86 Fed. Reg. at 60,126.[1] And the Department's actual concern is clearly well-founded. Several employee commenters noted that they are required to perform non-tipped work

---

[1]      In mischaracterizing the Department's rationale, Plaintiffs refer not to the rationale as set forth in the rule's preamble and Defendants' brief, but to Defendants' arguments against Plaintiffs' construction of the tipped employee provision of the FLSA. Defendants noted that Plaintiffs' reading would permit restaurants to "use the tips earned by a server during one shift to subsidize a reduced direct cash wage to that server of as low as $2.13 an hour for a separate shift in which the employee works the entire time cleaning bathrooms, mowing the lawn, and washing dishes, without performing any tip-producing work at all." Defs.' Br. at 21. But at no point has the Department or its litigation counsel asserted this to be the sole rationale for the final rule.

for hours at a time while receiving reduced direct cash wages. 86 Fed. Reg. at 60,120, 60,122. The rule addresses that problem.

Plaintiffs also insist without exposition that the 1967 dual jobs regulation was sufficient to address situations where employees spend an entire shift doing work that is not part of their tipped occupation. Pls.' Br. at 9. Again, the rationale for the rule is not limited to employees who spend an entire shift performing work that is not part of a tipped occupation; it is to ensure that employees do not receive a reduced wage any time they are not engaged in a tipped occupation and to address the practical concerns of employers. The 2021 rule accomplished that by codifying, adding to, and clarifying through multiple examples the guidance surrounding the 1967 regulation.[2] In any event, the rationality standard of review does not invite courts to "substitute [their] own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). While Plaintiffs may prefer the prior dual jobs rule to the newer, more specific version, it is not the role of courts to "direct the agency in a choice between rational alternatives." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1000 (D.C. Cir. 2008) (citations omitted).

Finally, Plaintiffs note that the FLSA ensures that tipped employees must receive at least the minimum wage of $7.25 per hour through a combination of direct cash wages and tips, implying that the 2021 regulation (and its predecessors) is unnecessary. Pls.' Opp'n & Reply at 9, 11. The FLSA, however, does not mandate only that tipped employees receive the minimum wage,

---

[2]     Plaintiffs insist that courts were "fully able" to "sort out whether an individual [was] a tipped employee or not" using the 1967 dual jobs regulation and surrounding guidance. *See* Pls.' Opp'n & Reply at 9 (citing *Roussell v. Brinker Int'l, Inc.* No. 05-3773, 2008 WL 2714079, *12–13 (S.D. Tex. July 9, 2008) (applying the 1967 regulation and 80/20 guidance)). Plaintiffs forget, however, that the 2021 rule did not replace the 1967 rule; it replaced the 2020 rule that rescinded the 80/20 guidance that had been consistently relied upon by courts in implementing the 1967 rule. Thus, the 2021 rule largely reinstates (with additions and further clarifications) the regime that Plaintiffs extol as effective.

it also specifies that an employer may take a tip credit only with an employee is "engaged in an occupation" that receives tips. 29 U.S.C. § 203(t). Since that provision was first enacted, the Department of Labor has appropriately imposed limits on when an employer may take a tip credit, notwithstanding that an employee ultimately must receive at least the minimum wage in direct cash wages and tips.

Plaintiffs also continue to complain that the Department of Labor did not conduct "fact finding" to ascertain whether "the problem it purports to address . . . even exists." Pls.' Opp'n & Reply at 10. But Plaintiffs do not meaningfully dispute Defendants' showing, Defs.' Br. at 30, that the Department of Labor articulated reasons for its policy choices that far exceed "minimal standards of rationality," which is the appropriate standard on arbitrary-and-capricious review, *Tex. Oil & Gas Ass'n*, 161 F.3d at 934. Further, Plaintiffs fail to undermine the binding authority cited by Defendants that formal fact finding is not a required part of informal rulemaking. Defs.' Br. at 29 (citing *Superior Oil Co. v. FERC*, 563 F.2d 191, 200 (5th Cir. 1977)).

In any event, the "facts" that Plaintiffs insist the Department should have studied are the "real-world duties" of various tipped occupations. Pls.' Opp'n & Reply at 10. At bottom, this argument reflects not a procedural deficiency in the Department's rulemaking process, but Plaintiffs' preference that the rule define the work of a tipped occupation solely by reference to whatever tasks employers assign their employees to perform (as reflected by O*NET), rather than whether or not those tasks actually produce tips or support tip-producing work. *See* Pls.' Opp'n & Reply at 10 & n.6. This, however, is simply a policy difference that is not subject to review under the APA. *Prometheus Radio Project*, 141 S. Ct. at 1158. Further, the Department rationally explained why it rejected such an approach: O*NET "only reflects what tipped employees are required to do [for] their employers, not the tasks that actually make up part of their tipped

occupation, and is consequently not a helpful tool to use in determining whether an employee is engaged in their tipped occupation." 86 Fed. Reg. at 60,127; *see also Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1185 (11th Cir. 2021) (concluding that use of the O*NET "creates a risk that unlawful practices will become entrenched in high-violation industries by setting up a fox-guarding-the-henhouse situation: simply by requiring tipped employees to perform untipped duties—whether those duties are, in fact, related or not to their tipped duties—employers effectively render the untipped duties 'related'").

Lastly, Plaintiffs argue that the rule does not adequately consider the cost to employers because it excluded pandemic-year data from its cost-benefit analysis. Pls.' Opp'n & Reply at 11–12. Plaintiffs do not dispute Defendants' showing that it was entirely appropriate for the Department to exclude pandemic-year data from its assessment of the potential financial impacts of the rule, given the need for comparison data that is not distorted by the pandemic's impacts. Defs.' Br. at 32. They nevertheless insist that the Department should have accounted for the pandemic in some unspecified way. But this unspecific assertion does not suffice to overcome the Department's "considerable discretion" in conducting a cost-benefit analysis. *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 452 (5th Cir. 2021). Moreover, the concern articulated by the SBA Advocacy letter that Plaintiffs highlight was based on a perception that compliance with the proposed rule would require costly "minute-to-minute" tracking. JA023–24. But Plaintiffs do not dispute Defendants' showing that the Department made changes to the final rule that addressed these concerns. Defs.' Br. at 33. Indeed, this Court has already observed that "revisions to the Rule following notice and comment make clear that the Rule does not require the level of detailed monitoring of which Plaintiffs warn." *Rest. Law Ctr. v. U.S. Dep't of Labor*, No. 21-cv-1106, 2022

10

WL 526243, at *3 (W.D. Tex. Feb. 22, 2022). Accordingly, Plaintiffs have failed to show that anything about the Department's cost-benefit analysis renders the rule arbitrary and capricious.

## CONCLUSION

The Court should grant Defendants' motion for summary judgment. [3]

Dated: June 13, 2022

Respectfully submitted,

BRIAN M. BOYTON
Principal Deputy Assistant Attorney General

BRAD P. ROSENBERG
Assistant Branch Director

  /s/ Johnny Walker
JOHNNY H. WALKER (D.C. Bar #991325)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, D.C. 20530
Tel.: (202) 514-3183 / Fax: (202) 616-8460
Email: johnny.walker@usdoj.gov

*Attorneys for Defendants*

---

[3]     As noted in Defendants' opening brief, Plaintiffs' motion for summary judgment fails to address—and therefore abandons—their claim that the tip rule violates constitutional separation-of-powers principles. Defs.' Br. at 14 n.3. That is because "[a] party waives an issue if he fails to adequately brief it." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008). Plaintiffs nevertheless insist that the opposite is true: that they have not abandoned their separation-of-powers claim despite having failed to even mention it in their summary judgment papers. Pls.' Br. at 1 n.1. In support of this assertion, they rely entirely on a single case from the United States District Court for the District of Columbia. But that case did not, as Plaintiffs imply, hold that a party may maintain a claim that it declines to brief on summary judgment. Precisely the opposite, the court "deem[ed] [unadvanced] aspects of the plaintiffs' . . . claim abandoned." *Pub. Emps. for Env't Resp. v. Beaudreau*, 25 F. Supp. 3d 67, 129 (D.D.C. 2014). And while it may be true that a "party does not abandon a claim by not briefing it in a *partial motion to dismiss*," *id.* (emphasis added), this is not a motion to dismiss. It is summary judgment, and "an issue raised in the complaint but ignored *at summary judgment* may be deemed waived." *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) (emphasis added). Thus, Plaintiffs have abandoned their separation-of-powers claim, and the Court should enter judgment on that claim in favor of Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused a true and correct copy of this filing to be served on counsel of record by filing it with the Court's CM/ECF system.

Dated:  June 13, 2022

 /s/ Johnny Walker
JOHNNY H. WALKER
Trial Attorney
U.S. Department of Justice

*Counsel for Defendants*