UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

RESTAURANT LAW CENTER, *et al.*,

*Plaintiffs,*

v.

U.S. DEPARTMENT OF LABOR, *et al.*,

*Defendants.*

Civil Action No. 21-1106 (RP)

## **JOINT APPENDIX**

Pursuant to the scheduling order entered on April 4, 2022, ECF No. 34, the

parties respectfully submit this joint appendix of cited materials in the administrative record.

\*     \*     \*

Respectfully submitted,

  /s/ Paul DeCamp
PAUL DECAMP (admitted *pro hac vice*)
EPSTEIN, BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C.  20037
Tel:  202.861.1819
Fax: 202.861.3571
PDeCamp@ebglaw.com

KATHLEEN BARRETT (admitted *pro hac vice*)
EPSTEIN, BECKER & GREEN, P.C.
227 West Monroe, Suite 3250
Chicago, Illinois 60606
Tel:  312.499.1400
Fax: 312.827.9562
KBarrett@ebglaw.com

ANGELO I. AMADOR (admitted *pro hac vice*)
RESTAURANT LAW CENTER
2100 L Street, N.W., Suite 700
Washington, D.C.  20036
Tel:  202.331.5913
Fax: 202.973.3952
AAmador@restaurant.org

GRETA RAVITSKY
EPSTEIN, BECKER & GREEN, P.C.
Two Houston Center
909 Fannin, Suite 3838
Houston, Texas  77010
Tel:  713.300.3215
Fax: 713.300.3235
GRavitsky@ebglaw.com

*Counsel for Plaintiffs*

Dated: June 13, 2022

BRIAN M. BOYTON
Principal Deputy Assistant Attorney General

BRAD P. ROSENBERG
Assistant Branch Director

  /s/ Johnny Walker
JOHNNY H. WALKER (D.C. Bar #991325)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, D.C. 20530
Tel.: (202) 514-3183 / Fax: (202) 616-8460
Email: johnny.walker@usdoj.gov

*Counsel for Defendants*

2

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2022, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification of such filing to all registered users.

  /s/Johnny Walker
JOHNNY H. WALKER
Trial Attorney
United States Department of Justice

*Attorney for Defendants*

# <u>CONTENTS</u>

WHD Opinion Letter FLSA–895 (August 8, 1979)............................................................JA01

WHD Opinion Letter WH–502 (March 28, 1980) ..........................................................JA02

WHD Opinion Letter FLSA–854 (December 20, 1985) ....................................................JA04

Field Operations Handbook Chapter 30d00(d) and (e), Revision 563 (December 9, 1988) ...JA07

WHD Opinion Letter FLSA2018–27 (November 8, 2018) .................................................JA08

Field Assistance Bulletin 2019–2 (February 15, 2019) ......................................................JA12

Field Operations Handbook Chapter 30d00(f), Revision 767 (February 15, 2019) ..............JA15

SBA Advocacy, Comment Letter (Aug. 20, 2021) ...........................................................JA17

**FLSA-895**

August 8, 1979

This is in reply to your letter of July 16, 1979, asking if the tip credit provision of the Fair Labor Standards Act may be used when compensating a waitress for time spent performing certain activities in a restaurant.

Regarding the restaurant in question, the waitresses report to work two hours before the doors are opened to the public to prepare the vegetables for the salad bar. You state the time spent by the waitresses in preparing the vegetables constitutes the work of a waitress, even though 10% or less of the vegetables are used in the kitchen for sandwich preparation and meal garnishments. You state this amount of vegetables used in the kitchen should not affect our opinion, as it should be considered de minimis. Also this preparatory work is analogous with the work performed by a barber or beautician before their actual performance of work on a customer. Thus, as the waitresses each receive "customarily and regularly" $30 a month in tips, you believe the time in question may be paid for, in part, by tips.

We disagree. Section 531.56(e) of the enclosed copy of 29 CFR Part 531, deals with tipped employees who are performing dual jobs. As explained in that section, where a maintenance man in a hotel also serves as a waiter, the tip credit is available only for the hours worked as a waiter, if he is a "tipped employee" within the meaning of section 3(t) of the Act. (Part 531 is presently being revised to take into account amendments to the FLSA relating to the tip credit since the interpretations therein were last issued.)

The Congressional Record (in particular page 43 of Senate Report No. 93-960, February 22, 1974) indicates that employees who "customarily and regularly" receive tips are waiters, bellhops, waitresses, countermen, busboys and service bartenders. It also indicates that janitors, dishwashers, chefs and laundry room attendants are not tipped employees. Accordingly, since it is our opinion that salad preparation activities are essentially the activities performed by chefs, no tip credit may be taken for the time spent in preparing vegetables for the salad bar.

Sincerely,

Herbert J. Cohen
Assistant Administrator

Enclosures

5-3508

MAR 28 1980

79774/79.745

This is in reply to your letter of October 30, 1979,
asking if certain duties performed by tipped employees
in a restaurant after closing hours are considered to
be tipped employee duties under the Fair Labor Standards
Act.

You state the tipped employees clean the salad bar,
place the condiment crocks in the cooler, clean and
stock the waitress station, clean and reset the tables
(including filling cheese, salt and pepper shakers) and
vacuum the dining room carpet, after the restaurant is
closed.  It is your position that since the dining area
is the domain of the waitresses and waiters, they are
responsible for the duties described above.  Accordingly,
you believe the employer may use the tip credit provision
when compensating the tipped employees for the time
expended performing these duties.

As you know, section 531.56(e) of 29 CFR Part 531, deals
with tipped employees who are performing dual jobs.
This section explains that a waitress who spends part
of her time cleaning and setting tables, toasting bread,
making coffee and occasionally washing dishes or glasses
is not employed in two occupations.  Further, such
related duties in an occupation that is a tipped occupation
need not by themselves be directed toward producing
tips.  As indicated, however, where there is a clear
dividing line between the types of duties performed by
a tipped employee, such as between maintenance duties
and waitress duties, no tip credit may be taken for the
time spent by a waitress performing maintenance duties.

WH-592

(1)

WH-19-III tipped employee defined.

JA002

- 2 -

Insofar as the after-hours clean-up you describe are
assigned generally to the waitress/waiter staff, we
believe that such duties constitute tipped employment
within the meaning of the regulation.  We might have a
different opinion if the facts indicated that specific
employees were routinely assigned, for example,
maintenance-type work such as floor vacuuming.

Sincerely,

Henry T. White, Jr.

Henry White
Deputy Administrator

WH-502                                                    (2)

JA003

**U.S. Department of Labor**   Wage and Hour Division
Washington, D.C. 20210



WHD-OL-1985-0053  *** FLSA-854 ***

December 20, 1985

This is in response to your letter of June 20 in which you request an opinion as to whether salad bar and dining room set-up are duties related to a tipped occupation within the meaning of section 3(m) of the Fair Labor Standards Act (FLSA). We regret the delay in responding to your inquiry.

As outlined in your letter and in a conversation with a member of my staff on November 26, **Name\*** owns and operates several **Name\*** restaurants throughout the Unites States. **Name\*** regularly open to the public at 11 a.m. Generally, you state, two to four waiters or waitresses work each day in each restaurant. One waiter or waitress is assigned with opening responsibilities from 9:00 or 9:30 a.m. to 11:00 a.m. These opening responsibilities are as follows:

    (1)    Inspect dining room including windows and sills.
    (2)    Check dining room lights.
    (3)    Set thermostat.
    (4)    Check tables and align table bases.
    (5)    Check high chairs/booster sets.
    (6)    Set tables.
    (7)    Set table arrangers.
    (8)    Clean and fill shakers.
    (9)    Clean/replace ashtrays.
    (10)    Stock waitress station with glasses, cups, mugs, and pitchers.
    (11)    Check supplies of napkins, sugar, straws, etc.
    (12)    Check supply and cleanliness of plates, salad plates and silverware.
    (13)    Set up three (3) compartments, glass washing sink.
    (14)    Check beverage dispensers.
    (15)    Prepare tea.
    (16)    At opening, prepare coffee.
    (17)    Cut and clean vegetables for salad bar.
    (18)    Clean and sanitize sneeze shield on salad bar.
    (19)    Fill salad bar crocks with refrigerated and dry items.
    (20)    Place vinegar and oil cruets at end of salad bar.
    (21)    Place parmesan shaker on salad bar.
    (22)    If iced salad bar, fill ice bin.

You state that typically the waiter or waitress with opening responsibilities works until 2 p.m. Any other waitresses working the lunch shift do not report until 10:30 or 11:00 a.m.

You state that a small portion of the 1.5 to 2 hour set-up time is spent in preparing vegetables for the salad bar. You state that the salad bar preparation is a related duty in a tipped occupation. you cite opinion Letter No. 1554 (WWH-502) in which the Administrator of the Wage and Hour Division found that duties such as cleaning and restocking the waitress station, refilling shakers, cleaning and resetting tables and vacuuming the carpet as performed by waitresses after hours constitute tipped employment within the meaning of Regulations 29 CFR Part 531.

In support of your position you also cite section 531.56(e) of 29 CFR Part 531. You compare the preparation of the salad bar to the preparation of short orders as performed by counter persons.

The FLSA is the Federal law of most general application concerning wages and hours of work. Under FLSA all covered and nonexempt employees must be paid not less than the minimum wage rate of $3.35 an hour for all hours worked and not less than one and one-half times their regular rates of pay for all hours worked over 40 in a workweek.

As explained in section 3(m) of FLSA, tips received by tipped employees may be counted by an employer in an amount up to 40% of the applicable minimum wage. A "tipped employee" is defined in section 3(t) of FLSA as an employee engaged in an occupation in which he or she regularly receives not less than $30 a month in tips.

Section 531.56(e) deals with tipped employees who are performing dual jobs. As explained in this section, when an individual is involved in a tipped occupation and a nontipped occupation, the tip credit is available only for the hours spent in the tipped occupation. For example, when a maintenance person in a hotel also serves as a waiter or waitress, the tip credit is available only for the hours worked as a waiter or waitress.

The legislative history of the 1974 amendments of FLSA (in particular, page 43 of Senate Report No. 93-960, February 22, 1974) indicates that employees who "customarily and regularly" receive tips are waiters, waitresses, bell persons, counter persons, bus help, and service bartenders. It also indicates that janitors, dishwashers, chefs, and laundry room attendants are not tipped employees. It is our opinion that salad preparation activities are essentially the activities performed by chefs and no tip credit may be taken for the time spent in preparing vegetables for the salad bar. Enclosed is a copy of an opinion letter which contains a detailed discussion of this position.

Also as explained in section 531.56(e), the tip credit may be taken for time spent in duties related to the tipped occupation even though such duties need not by themselves be directed toward producing tips. For example, a waiter or waitress who spends part of his or her time cleaning and setting tables, toasting bread, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though the duties listed above are not tipproducing. Therefore, tip credit could be taken for non-salad bar preparatory work or after-hours clean-up if such duties are incidental to the waiter or waitress regular duties and are assigned generally to the waiter/waitress staff. However, where the facts indicate that specific employees are routinely assigned to maintenance-type work or that tipped employees spend a substantial

amount of time in performing general preparation work or maintenance, we would not approve a tip credit for hours spent in such activities.

In the situation you describe, only one waiter or waitress is assigned to perform all preparatory activities. The opening waiter or waitress' responsibilities extend to the entire restaurant rather than to the specific area or customers which they serve. Furthermore, the activities performed prior to the opening of the restaurant consume a substantial portion of waiter or waitress' workday. Although you have stated that waiter or waitress may work an eight-hour shift, typically they work a five-hour shift from 9 a.m. to 2 p.m. The 1.5 to 2 hours of preparatory time constitutes 30% to 40% of the employee's workday.

Therefore, based on the information you have provided, it is our opinion that no tip credit may be taken for the hours spent by an assigned waiter or waitress in opening responsibilities.

We trust that the above is responsive to your inquiry.

Sincerely,


Herbert J. Cohen
Deputy Administrator

Enclosure

*Note: The actual name(s) was removed to protect privacy in accordance with 5 U.S.C. § 552(b)(7).

**JA006**

**30d     TIPS AND TIPPED EMPLOYEES**

**30d00   Underline Underline.**

(a)   A "tipped employee", as defined in section 3(t) of FLSA, is any employee engaged in an occupation in which the individual customarily and regularly receives more than $30.00 a month in tips.

(b)   Section 3(m) of FLSA makes clear the intent of Congress to place on the employer the burden of proving the amount of tips received by "tipped employees", and the amount of tip credit, if any, which the employer may claim. Since Sec 3(m) is not an exemption from the MW, but merely allows the employer to claim up to 40 percent of the MW as tip credit, the employer is responsible for ascertaining that the MW provisions are complied with in compensating "tipped employees".

(c)   (1)   The tip provision applies on an individual employee basis. Thus, an employer may claim the tip credit for some employees even though the employer cannot meet the requirements for others.

       (2)   In establishments where employees perform a variety of different jobs, an employee's status as one who "customarily and regularly receives tips" will depend on the total fact situation and will be determined on the basis of such employee's activities over the entire w/w.

(d)   When an individual is employed in a tipped occupation and a non-tipped occupation (dual jobs), the tip credit is available only for the hours spent in the tipped occupation. Also, such employee must customarily and regularly receive at least $30 a month in tips.

(e)   Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

**30d01   Retention of tips by employee.**

(a)   Pursuant to Sec 3(m), all tips received (i.e., given to or designated for the employee by a patron) by a "tipped employee" must be retained by the employee except to the extent that there is a valid pooling arrangement.

JA007

**U.S. Department of Labor**       Wage and Hour Division
                                   Washington, DC 20210



**FLSA2018-27**

November 8, 2018

Dear **Name***:

This letter responds to your request that the Wage and Hour Division ("WHD") reissue Opinion
Letter FLSA2009-23.  On January 16, 2009, then-Acting WHD Administrator Alexander J.
Passantino signed the opinion letter as an official statement of WHD policy.  On March 2, 2009,
however, WHD withdrew the opinion letter "for further consideration" and stated that it would
"provide a further response in the near future."

We have further analyzed Opinion Letter FLSA2009-23.  From today forward, this letter, which
is designated FLSA2018-27 and reproduces below the verbatim text of Opinion Letter
FLSA2009-23, is an official statement of WHD policy and an official ruling for purposes of the
Portal-to-Portal Act, 29 U.S.C. § 259.  Please note, however, that since the letter was originally
issued in 2009, (1) the applicable federal minimum wage has increased to $7.25 per hour, (2) the
website cited in the letter is now available at https://www.onetonline.org/link/summary/35-
3031.00, and (3) then-section 30d00(e) of the Field Operations Handbook is now section
30d00(f), and the language therein was modified.

I thank you for your inquiry.

Bryan L. Jarrett
Acting Administrator

Dear **Name***:

This is in response to your request that we clarify our Field Operations Handbook (FOH) section
30d00(e),[1] which explains the Wage and Hour regulation at 29 C.F.R. § 531.56(e) interpreting
the definition of a "tipped employee" in section 3(t) of the Fair Labor Standards Act, 29 U.S.C.

---

[1] Unless otherwise noted, any statutes, regulations, opinion letters, or other interpretive material cited in this letter
can be found at ww.wagehour.dol.gov.

**JA008**

§ 203(t).  We agree that the current FOH sections addressing the tip credit have resulted in some confusion and inconsistent application and, as a result, may require clarification.  It is our intent that FOH § 30d00(e) be construed in a manner that ensures not only consistent application of the Act and a level of clarity that will allow employers to determine up front whether their actions are in compliance with the Act, but also the paramount goal that all affected workers receive the full protections of the Act.

The tip credit provision in section 3(m) of the FLSA, 29 C.F.R. § 203(m), permits an employer to pay its tipped employees not less than $2.13 per hour in cash wages and take a "tip credit" equal to the difference between the cash wages paid and the federal minimum wage, which is currently $6.55 per hour.  The tip credit may not exceed the amount of tips actually received and under the current minimum wage may not exceed $4.42 per hour ($6.55 − $2.13).[2]  A "tipped employee" is defined in FLSA section 3(t) as any employee engaged in an *occupation* in which he or she customarily and regularly receives not less than $30 a month in tips (emphasis added).

Recognizing that there are situations in which employees have more than one occupation, some of which may meet the tip credit requirements and some of which may not, the regulations provide that in such "dual jobs," the tip credit may only be applied with respect to the time spent in the tipped job.

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter.  In such a situation the employee, if he customarily and regularly receives at least $20 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter.  He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man.

29 C.F.R. § 531.56.  The regulations further recognize that some occupations require both tip-generating and non-tip-generating duties, but do not constitute a dual job that necessitates the allocation of the tip credit to the tipped occupation only.

> Such a situation [i.e. one involving a dual job] is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses.  It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group.  Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

*Id*.

The dividing line between "dual job" and "related duties" is not always clear, however.  To give enforcement guidance on this issue, we issued FOH § 30d00(e), which states:

---

[2] Section 3(m) also requires that an employer that elects the tip credit (1) inform its tipped employees of the tip credit provisions in FLSA section 3(m), and (2) that all tips received by such employees be retained by the employees.

JA009

Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities).  For example a waiter/waitress, who spends some time cleaning and setting table, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers.  However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

Section 30d00(e) attempts to ensure that employers do not evade the minimum wage requirements of the Act simply by having tipped employees perform a myriad of nontipped work that would otherwise be done by non-tipped employees.  Admittedly, however, it has created some confusion.  For instance, in *Fast v. Applebee's Int'l, Inc.*, 502 F.Supp.2d 996 (W.D. Mo. 2007), the court construed § 30d00(e) to not only prohibit the taking of a tip credit for duties unrelated to the tip producing occupation, but also to prohibit the taking of a tip credit for duties related to the tip producing occupation if they exceed 20 percent of the employee's working time.  Moreover, the court determined that what constitutes a related and non-related duty is a jury determination.

In contrast, in *Pellon v. Business Representation Int'l, Inc*, 528 F.Supp.2d 1306 (S.D. Fla. 2007), *aff'd*, 291 Fed. Appx. 310 (11th Cir. 2008), the court rejected the *Fast* court's reading of FOH § 30d00(e), holding, in part, that the 20 percent limitation does not apply to related duties.  The court further held that under the *Fast* ruling, "nearly every person employed in a tipped occupation could claim a cause of action against his employer if the employer did not keep perpetual surveillance or require them to maintain precise time logs accounting for every minute of their shifts."  *Pellon*, at 1314.  Such a situation benefits neither employees nor employers.

We do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties and all other requirements of the Act are met.  We also believe that guidance is necessary for an employer to determine on the front end which duties are related and unrelated to a tip-producing occupation so that it can take necessary steps to comply with the Act.  Accordingly, we believe that the determination that a particular duty is part of a tipped occupation should be made based on the following principles:

- Duties listed as core or supplemental for the appropriate tip-producing occupation in the in the Tasks section of the Details report in the Occupational Information Network (O*NET) http://online.onetcenter.org or 29 C.F.R. § 531.56(e) shall be considered directly related to the tip-producing duties of that occupation.[3]  No limitation shall be

---

[3] WHD recognizes that there will be certain unique or newly emerging occupations that qualify as tipped occupations under the Act, but for which there is no O*NET description.  *See e.g*., Wage and Hour Opinion Letter FLSA2008-18 (Dec. 19, 2009) (itamae-sushi chefs and teppanyaki chefs).  For such tipped occupations for which

JA010

placed on the amount of these duties that may be performed, whether or not they involve direct customer service, as long as they are performed contemporaneously with the duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties.[4]

- Employers may not take a tip credit for time spent performing any tasks not contained in the O*NET task list. We note, however, that some of the time spent by a tipped employee performing tasks that are not listed in O*NET may be subject to the de minimis rule contained in Wage and Hour's general FLSA regulations at 29 C.F.R. § 785.47.

These principles supersede our statements in FOH § 30d00(e). A revised FOH statement will be forthcoming.

This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issues addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.

We trust that this letter is responsive to your inquiry.

Sincerely,



Alexander J. Passantino
Acting Administrator

**\*Note: The actual name(s) was removed to protect privacy in accordance with 5 U.S.C. § 552(b)(7).**

---

there is no O*NET description, the duties usually and customarily performed by employees in that specific occupation shall be considered "related duties" so long as they are consistent with the duties performed in similar O*NET occupations. For example, in the case of unique occupations such as teppanyaki chefs, the related duties would be those that are included in the tasks set out in O*NET for counter attendants in the restaurant industry.

[4] *See* Wage and Hour Opinion Letter WH-502 (Mar. 28, 1980) (concluding that a waitperson's time spent performing related duties (vacuuming) after restaurant was closed was subject to tip credit).

JA011



**UNITED STATES DEPARTMENT OF LABOR**
WAGE AND HOUR DIVISION
Washington, DC 20210



February 15, 2019

FIELD ASSISTANCE BULLETIN No. 2019-2

MEMORANDUM FOR:     Regional Administrators
                    Deputy Regional Administrators
                    Directors of Enforcement
                    District Directors

FROM:               Keith E. Sonderling
                    Acting Administrator

SUBJECT:            Dual jobs and related duties under Section 3(m) of the Fair Labor
                    Standards Act (FLSA)

This Field Assistance Bulletin (FAB) provides guidance on a recent change to Field Operations Handbook (FOH) 30d00(f), which contains the Wage and Hour Division's (WHD) interpretation concerning whether tipped employees are working "dual jobs." Specifically, this FAB explains that, consistent with WHD Opinion Letter FLSA2018-27 (Nov. 8, 2018), WHD will no longer prohibit an employer from taking a tip credit based on the amount of time an employee spends performing duties related to a tip-producing occupation that are performed contemporaneously with direct customer-service duties or for a reasonable time immediately before or after performing such direct-service duties. Employers remain prohibited from keeping tips received by their employees, regardless of whether the employer takes a tip credit under the FLSA. In addition, employers electing to use the tip credit provision must ensure tipped employees receive at least the minimum wage when direct (or cash) wages and the tip credit amount are combined. If an employee's tips combined with the employee's direct (or cash) wages do not equal the minimum hourly wage of $7.25 per hour, the employer must continue to make up the difference. WHD has updated FOH 30d00(f) accordingly.

**Background**

The FLSA generally requires covered employers to pay employees at least a federal minimum wage, which is currently $7.25 per hour. *See* 29 U.S.C. § 206(a)(1). Under Section 3(m) of the Act, an employer may pay a tipped employee[1] a lower direct cash wage and count a limited amount of the employee's tips as a partial credit to satisfy the difference between the direct cash wage and the federal minimum wage (known as a "tip credit"). *See* 29 U.S.C. § 203(m)(2)(A).

When an employer employs a worker in both a tipped and non-tipped occupation, such as a server job and a maintenance job, the tip credit is available only for the hours the employee works in the tipped occupation. In this dual job scenario, the employer may take a tip credit for the time that the tipped

---

[1] The FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

JA012



**UNITED STATES DEPARTMENT OF LABOR**
WAGE AND HOUR DIVISION
Washington, DC 20210



employee spends performing duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips. For example, a server who also cleans and sets tables, makes coffee, and occasionally washes dishes or glasses is engaged in duties related to a tipped occupation, even though the server is not tipped for these related duties. *See* 29 C.F.R. § 531.56(e).

**Revisions to FOH 30d00(f)**

Section 531.56(e), and 29 U.S.C. § 203(m), which it interprets, allow employers to take a tip credit based on whether the employee's "job" or "occupation" is tipped. However, WHD's previous interpretation of § 531.56(e) in FOH 30d00(f) focused on whether the employee's "duties" were tipped. The previous FOH 30d00(f) excluded from the tip credit any time that an employee in a tipped occupation spent performing related, non-tipped duties in excess of 20 percent in the workweek. This prior interpretation created confusion for the public about whether § 531.56(e) requires certain related, non-tipped duties to be excluded from the tip credit. In fact, § 531.56(e) includes non-tipped duties in the tip credit unless they are unrelated to the tipped occupation or part of a separate, non-tipped occupation in a "dual job" scenario.

Accordingly, an employer may take a tip credit for any duties that an employee performs in a tipped occupation that are related to that occupation and either performed contemporaneous with the tip-producing activities or for a reasonable time immediately before or after the tipped activities. To clarify this, the Department has issued WHD Opinion Letter FLSA2018-27—formally rescinding its previous interpretation setting a 20 percent limit on related, non-tipped duties—and revised FOH 30d00(f) to reflect WHD's interpretation of 29 C.F.R. § 531.56(e) as provided in the opinion letter.

Under the revised FOH 30d00(f), WHD staff will determine whether a tipped employee's non-tipped duties are related to the tipped occupation by using the following principles:

- Non-tipped duties listed as examples in 29 C.F.R. § 531.56(e), and non-tipped duties listed as core or supplemental for the appropriate tip-producing occupation in the Tasks section of the Details report in the Occupational Information Network (O*NET) [https://www.onetonline.org/], are related duties.[2]

---

[2] Some newly emerging occupations will qualify as tipped occupations under the Act but will not have an O*NET description. *See, e.g.,* WHD Opinion Letter FLSA2008-18 (Dec. 19, 2008) (itamae-sushi chefs and teppanyaki chefs). For such occupations, duties usually and customarily performed by employees are "related duties" as long as they are included in the list of duties performed in similar O*NET occupations. For example, in the case of teppanyaki chefs, related duties would be those duties included in O*NET's list of core and supplemental tasks for counter attendants in the restaurant industry.



**UNITED STATES DEPARTMENT OF LABOR**
WAGE AND HOUR DIVISION
Washington, DC 20210



- An employer may take a tip credit for any amount of time that an employee spends on related, non-tipped duties performed contemporaneously with the tipped duties—or for a reasonable time immediately before or after performing the tipped duties—regardless whether those duties involve direct customer service.[3]

- Employers may not take a tip credit for time spent performing any tasks that are not contained in 29 C.F.R. 531.56(e), or in the O*NET task list for the employee's tipped occupation, or—for a new occupation without an O*NET description—in the O*NET task list for a similar occupation. We note, however, that some of the time that a tipped employee spends performing these tasks—which are unrelated to the employee's tipped occupation—may be subject to the *de minimis* rule in 29 C.F.R. § 785.47.

The revised FOH 30d00(f) incorporates these principles. WHD staff should apply them in investigations involving non-tipped duties performed by tipped employees on or after November 8, 2018. As a matter of enforcement policy, WHD staff should also follow the revised guidance in FOH 30d00(f) in any open or new investigation concerning work performed prior to the issuance of WHD Opinion Letter FLSA2018-27 on November 8, 2018.[4]

---

[3] *See* WHD Opinion Letter WH-502 (Mar. 28, 1980) (concluding that a server's time spent performing related duties (*e.g.*, vacuuming) after restaurant closing is subject to the tip credit).
[4] WHD will update its website and other materials to reflect the information above. Questions should be directed to the Division of Enforcement Policy and Procedures, FLSA / Child Labor Branch, through regular channels.

3

b.    <u>Non-3(m) deductions when the employer does not claim an FLSA 3(m) tip credit</u>

Non-3(m) deductions may only be made from a tipped employee's wages when the employer does not claim an FLSA 3(m) tip credit *and* pays a direct wage in excess of the minimum wage. For example, if an employee receives $10.00 per hour in cash wages, the employer cannot claim an FLSA 3(m) tip credit, and the employer may take up to $2.75 ($10.00 - $7.25 = $2.75) in non-3(m) deductions from the employee's hourly wage. *See* 29 CFR 531.37.

(5)    *Other laws*

Where the FLSA and a state or local law regulating wages for tipped employees are concurrently applicable, it is the employer's responsibility to comply with the more protective wage standard.

**(f)**    **Dual jobs**

(1)    When an individual is employed in a tipped occupation and a non-tipped occupation—for example, as a server and janitor (*i.e.*, dual jobs)—the tip credit is available only for the hours the employee spends working in the tipped occupation, provided the employee customarily and regularly receives more than $30.00 a month in tips. *See* 29 CFR 531.56(e).

(2)    29 CFR 531.56(e) permits the employer to take a tip credit for any time the employee spends in duties related to the tipped occupation, even though such duties are not themselves directed toward producing tips.

(3)    WHD staff will consult the Occupational Information Network (O*NET), an online source of occupational information, and 29 CFR 531.56(e) to determine whether duties are related or unrelated to the tip-producing occupation. Duties will be considered related to the tipped occupation when listed as "core" or "supplemental" under the "Tasks" section of the "Details" tab for the appropriate tip-producing occupation in O*NET.

a.    An employer may take a tip credit for any amount of time that an employee spends on related, non-tipped duties performed contemporaneously with the tipped duties—or for a reasonable time immediately before or after performing the tipped duties—regardless whether those duties involve direct customer service. *See* WHD Opinion Letter WH-502 (March 28, 1980), which concludes that a server's time spent performing related duties (*e.g.*, vacuuming) after restaurant closing is subject to a tip credit. For example, the core tasks currently listed in O*NET for waiters and waitresses (*see* the O*NET Summary Report for waiters and waitresses) include: cleaning tables or counters after patrons have finished dining; preparing tables for meals, which encompasses setting up items such as linens, silverware, and glassware; and stocking service areas with supplies such as coffee, food, tableware, and linens. In addition, O*NET lists garnishing and decorating dishes in preparation for serving as a supplemental task for waiters and waitresses. An employer may take a tip credit for any amount of time a

waiter or waitress who is a tipped employee spends performing these related duties.

b.      The WHD recognizes that there will be unique or newly emerging occupations that qualify as tipped occupations under the FLSA for which there is no O*NET description.  *See, e.g.,* WHD Opinion Letter FLSA2008-18 (December 19, 2008) regarding itamae-sushi chefs and teppanyaki chefs. For such tipped occupations, the duties usually and customarily performed by employees in that specific occupation shall be considered related duties as long as they are consistent with the related duties performed in similar O*NET occupations.  For example, in the case of unique occupations such as teppanyaki chefs, the related duties would be those that are included in the tasks set out in O*NET for counter attendants in the restaurant industry.

(4)     An employer may not take a tip credit for the time an employee spends performing any tasks not contained in 29 CFR 531.56(e), or in the O*NET task list for the employee's tipped occupation, or—for a new occupation without an O*NET description—in the O*NET task list for a similar occupation.  Some of the time spent by a tipped employee performing tasks that are not related to a tipped occupation, however, may be subject to the *de minimis* rule in 29 CFR 785.47.

*See* WHD Opinion Letter FLSA2018-27 (November 8, 2018).

[12/15/2016, 02/15/2019]

## 30d01      Retention of tips by employee.

**(a)      General**

As noted above, tips are the property of the tipped employee who receives them, regardless of whether or not the employer claims a tip credit.  All tips received (*i.e.*, given to or designated for the employee by a patron) by a tipped employee must be retained by the employee, and the employer may only utilize the employee's tips as a partial credit against its wage payment obligations or in furtherance of a valid pooling arrangement.  An employer and employee cannot agree to waive such employee's right to retain all tips received.  An employer's use of an employee's tips for any other purpose will be treated as a deduction from the employee's wages and would be an FLSA violation to the extent that it reduces total compensation below what the Act requires.  *See* WHD Opinion Letter FLSA (October 26, 1989).

Tips in excess of the FLSA 3(m) tip credit may not be credited toward an employer's minimum wage obligations.  Where an employer has claimed an FLSA 3(m) tip credit, it has paid the employee only the federal minimum wage for any hours in a non-overtime workweek, regardless of the amount of tips received by the employee in excess of the tip credit amount.

**(b)      3(m) requirements not observed**

Where an employer does not strictly observe the provisions of section 3(m) (the employer fails to provide adequate notice of the use of the tip credit, the employer does not pay a cash or direct wage of at least $2.13 per hour, the tips received by the employee are less than the amount of tip credit claimed and the employer does not make up the difference during the pay



August 20, 2021

VIA ELECTRONIC SUBMISSION

The Honorable Martin J. Walsh
Secretary
U.S. Department of Labor
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

Amy DeBisschop
Director
Division of Regulations, Legislation, and Interpretation
Wage and Hour Division
U.S. Department of Labor
Frances Perkins Building
200 Constitution Avenue, NW
Room S-3502
Washington, DC 20210

Re: Tip Regulations Under the Fair Labor Standards Act (FLSA); Partial Withdrawal, 86 Fed. Reg. 32818

Dear Secretary Walsh and Ms. DeBisschop:

The U.S. Small Business Administration's Office of Advocacy (Advocacy) submits the following comments to the Department of Labor's Wage and Hour Division (DOL) on its proposed rule, which adds restrictions to the use of the tip credit under the Fair Labor Standards Act (FLSA).[1]

Advocacy is concerned that the DOL's certification that the rule will not have a significant economic impact on a substantial number of small entities lacks an adequate factual basis.  DOL

---

[1] Tip Regulations Under the Fair Labor Standards Act (FLSA); Partial Withdrawal, 86 Fed. Reg. 32818 (June 23, 2021) (hereinafter "2021 Proposed Rule").



JA017

improperly certified this proposed rule because it omitted some and underestimated other compliance costs of this rule for small employers.   Small businesses have told Advocacy that the proposed rule will be costly and burdensome to implement in their busy restaurants, hotels, nail salons and other workplaces, as it will require businesses to track their workers' tasks minute to minute to utilize the tip credit wage.  Small businesses have commented that these new restrictions for the use of the tip credit are complex and unworkable for small operations, who are already facing staff shortages and are just recovering from pandemic losses.

Advocacy recommends that DOL prepare and make available for public comment an Initial Regulatory Flexibility Analysis (IRFA) that adequately assesses the small business compliance costs from this regulation and includes consideration of significant alternatives that would accomplish the objectives of the regulation while minimizing the economic impacts to small entities.

## I.    Background

### A. The Office of Advocacy

Congress established Advocacy under Pub. L. 94-305 to represent the views of small entities before Federal agencies and Congress. Advocacy is an independent office within the U.S. Small Business Administration (SBA); as such the views expressed by Advocacy do not necessarily reflect the views of the SBA or the Administration.  The Regulatory Flexibility Act (RFA),[2] as amended by the Small Business Regulatory Enforcement Fairness Act (SBREFA),[3] gives small entities a voice in the rulemaking process.  For all rules that are expected to have a significant economic impact on a substantial number of small entities, the RFA requires federal agencies to assess the impact of the proposed rule on small entities and to consider less burdensome alternatives.

The Small Business Jobs Act of 2010 requires agencies to give every appropriate consideration to comments provided by Advocacy.[4] The agency must include, in any explanation or discussion accompanying the final rule's publication in the *Federal Register*, the agency's response to these written comments submitted by Advocacy on the proposed rule, unless the agency certifies that the public interest is not served by doing so.[5]

Advocacy's comments are consistent with Congressional intent underlying the RFA, that "[w]hen adopting regulations to protect the health, safety, and economic welfare of the nation, federal agencies should seek to achieve statutory goals as effectively and efficiently as possible without imposing unnecessary burdens on the public." [6]

---

[2] 5 U.S.C. §601 et seq.

[3] Pub. L. 104-121, Title II, 110 Stat. 857 (1996) (codified in various sections of 5 U.S.C. §601 et seq.).

[4] Small Business Jobs Act of 2010 (PL. 111-240) §1601.

[5] *Id*.

[6] 5 U.S.C. Sec. 601 note.

## B.  The Proposed Rule

The FLSA generally requires employers to pay employees at least the federal minimum wage, which is currently $7.25 per hour.[7]   Section 3(m) of the FLSA allows an employer that meets certain requirements to count a limited amount of the tips earned by tipped employees as a credit towards its federal minimum wage obligation, known as a tip credit.[8]

DOL has issued various guidance documents and rulemakings for over 30 years to deal with the "dual jobs" provision of the tip credit under the FLSA, seeking to address a situation where a tipped employee performs multiple jobs.  The FLSA discusses one situation where an individual works in two occupations, as a maintenance man performing non-tipped work in a hotel while also serving as a waiter performing tipped work.  This is distinguished from a situation where a worker performs multiple tasks in one occupation, such as tip-producing work and work related to tip-producing work. This is a situation where a "waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses."[9]

In 1988, DOL released sub-regulatory guidance (often referred to as the 80/20 guidance) which explained "that an employer could continue to take a tip credit for the time an employee spent performing duties that are related to the employee's tipped occupation but that do not produce tips, but only if that time did not exceed 20 percent of the employee's workweek."[10]   In 2018, DOL released guidance rescinding the 80/20 guidance.   In 2018 and 2019, the Department issued new sub-regulatory guidance "providing that the department would no longer prohibit an employer from taking a tip credit for the time a tipped employee performs related, non-tipped duties, as long as those duties are performed contemporaneously with, or a reasonable time immediately after, tipped duties."[11]   On December 30, 2020, DOL published the 2020 Tip final rule incorporating this guidance, and it stated that it would also use the Occupational Information Network (O*Net) to determine whether a tipped employee's duties are related to their tipped occupation.[12] In the December 2020 final rule, DOL explained that the 80/20 guidance "has proved difficult to enforce and resulted in widespread compliance issues; it has also generated extensive, costly litigation." [13]   In 2021, DOL released multiple rulemakings extending the effective date of this final rule.[14]

---

[7] 29 U.S.C. § 206 (a)(1).

[8] *See* 29 U.S.C. § 203(m)(2)(a).

[9] 29 U.S.C. § 531.56 (e).

[10] *See* WHD Field Operations Handbook (FOH) 30d00(e), Revision 563 (Dec. 9, 1988).

[11] *See* WHD Opinion Letter FLSA 2018-27 (Nov. 8, 2018); Field Assistance Bulletin (FAB) 2019-2 (Feb. 15, 2019); FOH 30d00(f) (2018-2019 guidance).

[12] Tip Regulations Under the Fair Labor Standards Act (FLSA); 85 Fed. Reg. 86771 (June 23, 2021) (hereinafter "2020 Tip Final Rule").

[13] *See* 2020 Tip Final Rule, at 85 Fed. Reg. at 86761.

[14] *See* 86 Fed. Reg. 11632, 86 Fed. Reg. 15811, 86 Fed. Reg. 22597.

JA019

On June 23, 2021, DOL released a proposed rule that rescinds the "dual jobs" portion of the 2020 Tip Final Rule; and adopts a new version of the prior 80/20 guidance, with an additional restriction of a 30-minute limit.[15]  The new "dual jobs" provision in this proposed rule states that an "employee is engaged in a tipped occupation when they either perform work that produces tips or perform work that directly supports the tip-producing work, provided that the directly supporting work is not performed for a substantial amount of time."  The proposal provides examples of tasks that are considered tip-producing work, directly supporting tip-producing work and non-tipped work.  "Substantial amount of time" is defined as work that: 1) exceeds 20 percent of the hours worked during the employee's workweek or 2) any continuous period of time that exceeds 30 minutes.

## II.  Advocacy is Concerned that the Proposed Rule Will Have a Significant Economic Impact on a Substantial Number of Small Businesses; DOL Should Revise Its Cost Estimates and Produce an Initial Regulatory Flexibility Analysis with Regulatory Alternatives

The Regulatory Flexibility Act (RFA) requires that regulatory agencies either certify that a proposed regulation will not have a significant economic impact on a substantial number of small entities or prepare an Initial Regulatory Flexibility Analysis (IRFA) to accompany every proposed rule.[16]  If an agency certifies the rule, it must provide a statement providing a factual basis for this certification.   An agency's certification is subject to judicial review.[17]

A proper IRFA must describe the impact of the proposed rule on small entities and contain the following information:  (1) a description of the reasons why the agency's action is being considered; (2) a succinct statement of the objectives of, and the legal basis for, the proposed rule; (3) a description of small entities to which the rule will apply; (4) a description of the projected reporting, recordkeeping, and other compliance requirements of the proposed rule; and (5) an identification, to the extent practicable, of all relevant federal rules that may duplicate, overlap, or conflict with the proposed rule.[18]

Agencies must present significant alternatives for regulatory relief as part of an IRFA as required by § 603(a). At a minimum, the agency should consider: (1) the establishment of different compliance or reporting requirements for small entities; (2) clarification, consolidation, or simplification of compliance and reporting requirements for small entities; (3) use of performance rather than design standards; and (4) exemption for certain or all small entities from coverage of the rule, in whole or in part.[19]

Advocacy is concerned that the DOL's certification lacks an adequate factual basis.  DOL's certification is improper because the agency omitted some and underestimated other compliance

---

[15] *See* 2021 Proposed Rule, 86 Fed. Reg. 32818.

[16] 5 U.S.C. § 603, 605.

[17] 5 U.S.C. § 611.

[18] 5 U.S.C. § 603.

[19] *Id.*

JA020

costs of this rule.  DOL must complete an IRFA to reassess and update their estimates to fully reflect the economic impact of this rule on small entities and consider significant regulatory alternatives.  DOL should also consider significant alternatives proposed by stakeholders whose comments are published on the proposed rule's public docket.

DOL's examination of these higher cost burdens and significant regulatory alternatives will hopefully lead the agency to adopt an alternative that will accomplish the stated objectives of applicable statutes while minimizing the proposed rule's economic impact on small entities.

According to the Census Bureau's Statistics of U.S. Businesses, a vast majority of businesses in industries that utilize the tip credit provision are small businesses, including over 98 percent of restaurants and drinking places and nail salons, and 83 percent of hotels.[20]  Advocacy held a virtual Small Business Roundtable with participation by DOL officials to obtain public feedback on this rule, attended by over 75 small businesses representatives from 21 states and one territory.  This roundtable included representatives from small restaurants, small hotels, bars, catering companies, passenger vessel operators, and the beauty industry.  The following comments are reflective of the issues raised in this roundtable and in subsequent conversations.

### A.    DOL Should Assess Changes to Wage Costs in an IRFA

The Department's RFA analysis provides this estimate:

> The Year 1 per-entity cost for small employers is $477.56, which is the regulatory familiarization cost of $50.60 (1 hour of time), plus the adjustment cost of $50.60 (1 hour of time), plus the management cost of $376.36 (10 minutes per week).  For each subsequent year, costs only consist of the management cost.[21]

Advocacy believes that DOL's certification is flawed because it fails to estimate small business compliance costs for increased wages under this regulation. DOL has omitted these employer wage costs that are listed in another section of the rule: "the Department believes that this proposed rule would result in transfers from employers to employees, but at a fraction of the upper bound of transfers [$714 million]."[22]   DOL must analyze these compliance costs in an IRFA for this rule.  Small businesses at Advocacy's Roundtable detailed potential wage costs from this rule, such as not being able to utilize the tip credit at all and paying the full minimum wage, extra wage costs from the 30-minute increments of non-tipped work, and extra staffing needed to cover non-tipped wages.   Small businesses were also concerned that the onerous requirements in the proposed rule will result in employers not being able to utilize the tip credit.

---

[20] SBA Size Standards, at 13 C.F.R. § 121.201 (2017).  Restaurants include Full-Service Restaurants, Limited Service Restaurants, Snack and Nonalcoholic Beverage Bars, and Drinking Places.

[21] *See* 2021 Proposed Rule, at 86 Fed. Reg. at 32839. (Regulatory Flexibility Act Section).

[22] 2021 Proposed Rule, 86 Fed. Reg. at 32838.

JA021

Switching tipped employees into minimum wage employees may also result in both reduced income for employees and costs to the employer.

For example, Advocacy spoke to a passenger vessel operator in Kentucky with 35 tipped workers.  This business stated that they will not be able to use the tip credit under this proposed rule and will pay their tipped workers the Kentucky minimum wage of $7.25 instead of the tipped wage of $2.13.  This will cost the business over $286,000 in one year.  In another example, a restaurant owner in Maine with 58 tipped workers (40 waiters and 18 bartenders) believes that they may have two possible options under this proposed rule.  In one scenario, the tipped workers will spend two hours a day on non-tipped work; the business will spend almost $150,000 a year to pay for these hours.  In another scenario, the tipped workers will make the Maine minimum wage of $12.15 for every hour they work instead of the tipped wage; the business will spend over $500,000 a year to cover the difference.[23]

### B.     DOL Has Underestimated the Costs of Regulatory Familiarization

Advocacy believes that DOL underestimates the regulatory familiarization costs of this rule, which is the direct cost for the small business to review and understand this new regulation.[24] The proposed rule is complex, and most small businesses do not have human resources staff or in-house attorneys to help understand these regulations.  Advocacy recommends that DOL take into consideration the full small business compliance cost for familiarization in an IRFA.  Small business owners during Advocacy's roundtable on this rule reaffirmed that more time would be needed than the hour estimated to read and become familiarized with the rule.

Small businesses at Advocacy's Roundtable were particularly concerned about the rigidity of DOL's three classifications of workers' tasks—*tipped* work, work that *directly supports* tipped work and *non-tipped* work.  These categories do not represent the reality of busy environments such as a restaurant.  The proposed rule lists a waiter's only tip-related task as waiting on tables. Other work that directly supports tipped work that would have to be limited (to less than 20 percent and under 30 minutes) are cleaning tables, preparing for new customers, folding napkins, preparing silverware, and garnishing plates.  A representative from the National Retail Federation commented that it would take the level of understanding of a wage and hour attorney to understand how to categorize these tasks correctly, but the agency expects small businesses

---

[23]  In the Kentucky example, a passenger vessel operator has 35 staff members who work 8 hours a day, 5 days a week, 40 weeks per year.  They currently earn a tip wage of $2.13 per hour but under the new regulation would earn $7.25 per hour; the restaurant will have to spend an extra $286,720 a year.  The Maine restaurant has 58 tipped staff members who work 7 hours per day, 5 days a week, 50 weeks per year; 40 are waiters who make $6.08 per hour and 18 are bartenders who make $9 per hour. Paying each minimum wage for 2 hours each day would increase wage costs by $149,750 per year: [40 waiters * ($12.15 minimum wage - $6.08 tipped wage) + 18 bartenders * ($12.15 minimum wage - $9 tipped wage)] * 2 hours * 5 days * 50 weeks.  Increasing this from 2 to 7 hours per day leads to an increase of $524,125.

[24]  *See* 2021 Proposed Rule, at 86 Fed. Reg. at 32840.

JA022

and their staff to make these determinations and track these activities throughout their hectic workday.

One owner of a small passenger vessel with dinner service stated that "all hands were on deck" when a waitress or bartender comes in for their busy shift, as everything they do is part of customer service and part of their tip-making income.  Employees trying to classify these tasks in real time may take away from providing customers the best experience possible, which may decrease their tips.

Small businesses also point out that there are employees who perform tipped work and directly supporting tipped work simultaneously, such as a bartender serving drinks and cleaning and stocking the bar area.  Restaurant operators also point out that DOL is providing inconsistent guidance between different occupations such as waiter, bartender, and busser; some tasks such as cleaning tables and preparing food and garnishes can be considered a tipped job, directly supporting tipped work, or a non-tipped job depending on the employee's job type.  Working out the differences between current systems of work classifications and DOL's proposed classifications, as well as resolving ambiguities and inconsistencies in the rule and guidance from DOL, will cost well in excess of the estimate provided by DOL.

`     **C.**     **DOL Should Revise Its Estimate of Adjustment Costs**

To utilize the tip credit, employers will have to monitor employees' activity to ensure that at least 80 percent of a worker's duties are tipped duties, and no more than 20 percent of the duties are directly supporting tipped duties, and that employees spend no more than 30 minutes at a time performing these duties.   DOL lists these adjustment tasks that it believes businesses can complete in one hour in its preamble:  changing schedules to minimize extra wage costs, categorizing and tracking employee tasks, re-assigning duties to non-tipped staff, adjusting payroll software to account for these changes and training their managers and staff to learn about the changes and how to implement them.  Small businesses at Advocacy's roundtable have commented that the cost to adjust their business practices will be in the thousands of dollars.  Advocacy recommends that DOL reassess their estimates for these costs.

Small businesses have told Advocacy that this type of minute-to-minute tracking is onerous and not realistic in such businesses as restaurants, bars, hair salons and nail salons.  The National Federation of Independent Business commented that "small businesses need flexibility in using their relatively small number of employees, including tipped employees, to accomplish the work that makes the business a success."[25]  Small restaurants commented that a typical workday there may include a wave of customers, followed by a slowdown.  It is difficult to imagine how a busy waiter or bartender would be able to track how many minutes they were waiting on customers vs. wiping off tables or a myriad of other tasks.  As DOL noted in its preamble, small businesses

---

[25] Comment letter from the National Federation of Independent Business to the U.S. Department of Labor (July 21, 2021).

would have to provide many hours of training to their managers and staff to learn about and implement these changes to their workflow.

A wage and hour attorney at the roundtable commented that this rule does not provide certainty or clarity, but just adds extra burdens and liability. She noted that only larger employers can purchase sophisticated time-keeping software programs that costs thousands of dollars to differentiate these tasks, but even this would not be a perfect system because employees would still have punch in and punch out of this system.

A representative for the National Restaurant Association commented that larger restaurants have more staff to change schedules and re-assign duties to non-tipped staff, but a smaller restaurant has less staff and has fewer staffing options to adapt and adjust to these rule changes. A representative from the Virginia Beach Restaurant Association, that represents 150 restaurants, stated that restaurants are current facing major staffing issues and many restaurants have cut days and hours of service. This lack of available staff increases the difficulty of compliance with this regulation and imposes extra costs. Small business also commented that this was a difficult time to add these additional costs and burdens, as their operations were just surviving from pandemic financial losses.

### D.      DOL Should Revise Its Estimate of Management Costs

Advocacy believes that DOL underestimates the costs for small businesses in management costs at $376.36 per entity a year or 10 minutes per week. The agency also states that this management cost will be incurred for each subsequent year. Advocacy believes that the cost is much higher than estimated and recommends that DOL analyze these costs in an IRFA. As noted above, the proposed rule states that to take a tip credit, managers will have to make sure that their tipped employees are not spending more than 20 percent of their time on directly supporting work per workweek or more than 30 minutes continuously performing such duties. The analysis states that "the Department does not believe that these costs will be substantial, because if employers are able to make upfront adjustments to scheduling, there is no need for ongoing monitoring."[26]

Due to the lack of adequate staffing, it may be difficult for managers at small establishments to have a fixed staff schedule and they may have to make schedules every week and perform ongoing monitoring of staff schedules. A roundtable participant stated that while it may be possible to set aside 30 minutes at the beginning or end of a shift for non-tipped work with adequate or extra staffing, it will be hard to control or monitor the other hours of the day to minimize costs. Small restaurants stated that these restrictions would also affect the level of customer service at their restaurant, if their employees were constantly limited in the tasks they could perform to help their customers. An HR manager for a restaurant group estimated at least 15 hours a week for restaurant managers to comply with this regulation. She commented, "The majority of our costs would be spent in auditing, correcting and backpay when servers and utility

---

[26] *See* 2021 Proposed Rule, at 86 Fed. Reg. at 32833.

JA024

staff do not clock in and out correctly by job task.  This would open us up to litigation and fines quickly."

## III.    Conclusion

Advocacy is concerned that the DOL's certification lacks an adequate factual basis.  DOL's certification is improper because the agency omitted some and underestimated other compliance costs of this rule.  DOL must complete an Initial Regulatory Flexibility Analysis (IRFA) to reassess and update their estimates to fully reflect the economic impact of this rule on small entities and consider significant regulatory alternatives.  Small businesses have told Advocacy that it will be difficult and confusing for employers and employees to make minute-to-minute determinations and track job tasks in busy restaurants, hotels, nail salons and other workplaces. DOL's examination of these higher cost burdens and significant regulatory alternatives will hopefully lead the agency of adopting an alternative that accomplish the stated objectives of applicable statutes while minimizing the proposed rule's economic impact on small entities.

If you have any questions or require additional information, please contact me or Assistant Chief Counsel Janis Reyes at (202) 619-0312 or by email at Janis.Reyes@sba.gov.

Sincerely,


//s//
Major L. Clark, III
Acting Chief Counsel
Office of Advocacy
U.S. Small Business Administration


//s//
Janis C. Reyes
Assistant Chief Counsel
Office of Advocacy
U.S. Small Business Administration


Copy to:      Sharon Block, Acting Administrator
              Office of Information and Regulatory Affairs
              Office of Management and Budget

**JA025**